REEL 2 3 7 4 PAGE 0 6 1 2

Shoney's #1270
805 Eastern Bypass
Montgomery, Alabama

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (the "Assignment") dated February 20, 2002, (the "Effective Date"), by and between **Shoney's, Inc.** (successor in interest to TPI Restaurants, Inc , formerly known as Shoney's South, Inc.), a Tennessee corporation, doing business at 1727 Elm Hill Pike, Nashville, Tennessee 37210 (the "Assignor"), and **MAC East, LLC**, an Alabama limited liability company, with its principal place of business located at 2777 Zelda Road, Montgomery, Alabama 36106 (the "Assignee").

WITNESSETH:

**WHEREAS,** Assignor leases certain property municipally known as 805 Eastern Bypass, Montgomery, Alabama (the "Property"), which is more particularly described in that certain Lease dated April 13, 1979 by and between Wylie P. Johnson and wife, Lurene H. Johnson (collectively, the "Landlord") and Assignor, a copy of which is attached hereto as **Exhibit "A"** and incorporated herein by reference (the "Lease"), upon which Assignor formerly operated a restaurant, together with the rights, privileges and easements appurtenant thereto; and

**WHEREAS,** Assignor wishes to assign all of its right, title and interest in and to the Lease to Assignee (except as otherwise provided herein), and Assignee wishes to accept such assignment and to assume the liabilities, duties and obligations of Assignor under the Lease as set forth herein;

**NOW, THEREFORE,** for valuable consideration and the mutual covenants herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1.    (a) Except as otherwise provided herein, Assignor hereby assigns all of its right, title and interest in and to the Lease to Assignee. Assignee hereby accepts such assignment and assumes, effective as of February 20, 2002 (the "Effective Date"), for the benefit of Landlord and Lessee, the payment of the rent payable to Landlord first arising from and after the Effective Date, and the performance of all liabilities first arising from and after the Effective Date, and each and every duty and obligation as the lessee under the Lease first arising from and after the Effective Date, and hereby agrees to be bound by all of the covenants, agreements, terms, provisions and conditions of the Lease on the part of the lessee thereunder to be performed or observed first arising from and after the Effective Date, including, without limitation, the restrictions and limitations set forth in the Lease with respect to the permissible uses of the Property.

This Assignment does not include the sale or transfer, or the right of Assignee or the permission of Assignor to use, any of Assignor's names, service marks, trademarks, trade names, logos, symbols, indicia or other forms of advertising used in connection with the operation of a

EXHIBIT

A

REEL 2 3 7 4 PAGE 0 6 1 3

Shoney's restaurant (collectively, the "Shoney's Identification") or of any goodwill associated therewith.

(b) During the term of the Lease (as described in Paragraph 4 of the Lease), Assignee shall pay, without offset or other deduction, to Landlord as is required pursuant to Paragraph 4 of the Lease (the "Minimum Rent"), each payment of which shall be payable to Landlord on the first day of a month, according to the rent schedule set forth in Paragraph 4 of the Lease. Assignee shall also pay all other sums payable by the lessee under the Lease from and after the Effective Date, including, without limitation, taxes, insurance and all costs and expenses of every kind and nature relating to the use and operation of the Property and the improvements located thereon.

2.    Assignor's leasehold estate established by the Lease is hereby assigned to Assignee, and assumed by Assignee, subject to real estate taxes and assessments, both general and special, for the current year and subsequent years; any state of facts that would be disclosed by an accurate survey or independent inspection of the Property (and the improvements thereon); any and all leases, easements, rights-of-way, encumbrances, conditions, covenants, restrictions, reservations and exceptions affecting the Property; any security interests arising under the Lease or by operation of law; and all applicable building and zoning ordinances, laws, regulations and restrictions by municipal or other governmental authority. EXCEPT AS OTHERWISE SET FORTH IN SECTION 11 OF THE ASSET SALE AGREEMENT DATED September 28, 2001, BETWEEN ASSIGNOR AND ASSIGNEE, ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE CONDITION OF THE PROPERTY (OR THE IMPROVEMENTS LOCATED ON THE PROPERTY), INCLUDING, WITHOUT LIMITATION, THE HABITABILITY, CONDITION OR FITNESS THEREOF FOR ANY PARTICULAR USE OR PURPOSE. ASSIGNEE AGREES THAT THE PROPERTY (AND THE IMPROVEMENTS LOCATED ON THE PROPERTY) ARE ACCEPTED BY ASSIGNEE IN AN "AS-IS, WHERE-IS AND WITH ALL FAULTS" CONDITION. Notwithstanding any reference to acreage or square footage contained in the description of the Property, Assignor hereby expressly disclaims any representation or warranty, express or implied, as to the exact amount of acreage or square footage in the Property. Assignor further expressly disclaims any representation or warranty, express or implied, with respect to the ownership of the oil, gas or other minerals located on, under or within the Property.

3.    Upon the expiration of the term of the Lease, or upon the termination of the Assignee's right to possession of the Property pursuant to the Lease or this Assignment, Assignee will at once surrender and deliver up to the Property and the Leasehold Improvements, together with all improvements thereon, to Landlord or Assignor (at Assignor's direction) in good condition and repair, reasonable wear and tear excepted; conditions existing because of Assignee's failure to perform maintenance, repairs or replacements as required of Assignee under the Lease shall not be deemed "reasonable wear and tear." Said improvements shall include all plumbing, lighting, electrical, heating, cooling and ventilating fixtures and equipment

REPY 2 3 7 4 PAGE 0 6 1 4

and other articles of personal property used in the operation of the Property (as distinguished from operations incident to the business of Assignee). Assignee shall surrender to Landlord or Assignor (at Assignor's direction) all keys to the Property and make known to Landlord and Assignor the combination of all combination locks which Assignee is permitted to leave on the Property. All alterations in or upon the Property made by Assignee shall become a part of and shall remain upon the Property upon such termination without compensation, allowance or credit to Assignee; provided, however, that Assignor shall have the right to require Assignee to remove any alterations made by Assignee, or portion thereof. Said right shall be exercisable by Assignor's giving written notice thereof to Assignee on or before thirty (30) days prior to such expiration or on or before twenty (20) days after such termination. Assignee shall also remove any alterations made by Assignee, or portion thereof, which Landlord may require Assignor to remove, pursuant to the terms of the Lease. In any such event, Assignee shall restore the Property to its condition prior to the making of such alteration, repairing any damage occasioned by such removal or restoration. If Assignor or Landlord requires removal of any alteration made by Assignee, or a portion thereof, and Assignee does not make such removal in accordance with this paragraph, Assignor may remove the same (and repair any damage occasioned thereby), and dispose thereof, or at its election, deliver the same to any other place of business of Assignee, or warehouse the same. Assignee shall pay the costs of such removal, repair, delivery and warehousing on demand.

4.      Assignee shall have no right to make any changes, remodelings, refurbishings, additions or alterations in and to the Property or the Leasehold Improvements except in accordance with the Lease and with the prior written consent of Assignor, which Assignor shall not unreasonably withhold. Any such changes shall comply with all applicable laws, rules and regulations, including without limitation, the Americans with Disabilities Act. Assignee shall not, under any circumstances, have the power to subject the Property to any mechanics, or materialmen's liens or other liens of any kind. Except as provided in paragraph 3 above, all changes, remodelings, refurbishings, additions or alterations to the Property shall immediately become the property of Assignor and shall remain upon and be surrendered with the Property as a part thereof at the expiration or earlier termination of the Lease

5.      Assignor, Landlord and their respective agents or representatives shall have the right to enter into and upon any part of the Property during reasonable hours to inspect the same as they may deem necessary or desirable, provided, however, that such inspections shall be performed in a manner so as not to interfere unreasonably with Assignee's conduct of business on the Property. Assignor shall give Assignee twenty-four (24) notice prior to any inspection by Assignor except in an emergency.

6.      Assignee hereby represents, warrants and covenants to Assignor that: (a) Assignee shall not treat, use, store, release or dispose of any Hazardous Material (as defined below) in, on or about the Property; (b) Assignee shall use and occupy the Property in compliance with all Environmental Laws (as hereinafter defined); (c) Assignee shall obtain all

G:\Closed Stores\Alabama\1270-Eastern Bypass-Montgomery\K5 - Assignment February 18 2002.DOC
Page 3

licenses, permits and other governmental or regulatory actions necessary for Assignee's use and occupancy of the Property to comply with all Environmental Laws; and (d) Assignee shall give Assignor and Landlord prompt written notice if Assignee receives any notice with respect to a Hazardous Material (as hereinafter defined) on, from or affecting the Property. Assignee shall indemnify, defend and hold Assignor harmless from and against all losses, expenses (including, but not limited to, reasonable attorneys, fees) and claims of every kind suffered by or asserted against Assignor as a result of the failure by Assignee to comply fully with the terms and provisions of this paragraph 6; provided, however, that Assignee shall have no obligation to indemnify, defend and hold Assignor harmless with respect to any losses, expenses or claims resulting from any condition existing on the Property prior to the Effective Date. For purposes of this Assignment, "Hazardous Material" means polychlorinated biphenyls, petroleum and petroleum products, flammable explosives, radioactive materials, asbestos and any hazardous, toxic or dangerous waste, substance or material defined as such in (or for purposes of) the Environmental Laws or listed as such by the United States Environmental Protection Agency or any comparable state agency or department. "Environmental Laws" means any current or future federal, state or local governmental law, regulation or ruling applicable to environmental conditions on, under or about the Property including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act, the Resource Conservation and Recovery Act, the Superfund Amendment and Reauthorization Act of 1986, the Toxic Substances Control Act, the Clean Air Act and the Clean Water Act. ASSIGNEE ACKNOWLEDGES AND AGREES THAT ASSIGNOR SHALL HAVE NO LIABILITY OR OBLIGATION TO ASSIGNEE WHATSOEVER FOR THE PRESENCE OF ANY HAZARDOUS MATERIAL ON OR WITHIN THE PROPERTY.

7.    Assignee shall comply with all present or future applicable laws, ordinances, rules, regulations and restrictive covenants relating to the use, condition or occupancy of the Property (including, without limitation, the Americans With Disabilities Act), and with any and all easements, rights-of-way, conditions, covenants, restrictions, reservations and exceptions of record. Assignor has made no representations or warranties with respect to the Property's compliance with such matters.

8.    Assignee covenants that in its use and occupancy of the Property, it shall comply with the covenants and restrictions of the Lease that first arise from and after the Effective Date applicable to Assignor as tenant thereunder so as to not cause a default by the lessee under any provision of the Lease (a "Master Lease Default"), or cause to be done any act or thing which would, after the giving of notice or a lapse of time, or both, constitute a Master Lease Default. Assignee shall indemnify, protect, defend and hold harmless Assignor and it's "Affiliates" (as hereinafter defined) and their employees, agents, representatives, successors and assigns from and against any and all loss, cost, liability, damage or expense (including reasonable attorneys' fees) arising as a result of any breach by Assignee of any covenant set forth in this paragraph. In the event of any conflict between the obligations imposed by the Lease and the provisions hereof, as between Assignor and Assignee, the provisions of this Assignment shall govern and

G:\Closed Stores\Alabama\1270-Eastern Bypass-Montgomery\K5- Assignment February 18 2002 DOC
Page 4

REEL2 3 7 4 PAGE 0 6 1 6

prevail. Assignee's obligations under this paragraph shall survive the expiration or earlier termination of the Lease. For purposes of this Assignment, the term "Affiliate" shall mean, with respect to any person or entity, any person or entity that controls, is controlled by or is under common control with such person or entity, together with its and their respective partners, venturers, members, directors, officers, stockholders, agents and employees.

9.    In the event of a fire or other casualty affecting the Property ("Casualty"), the terms and provisions of the Lease shall control. If the Lease imposes on Assignor the obligation to repair or restore leasehold improvements or alterations, Assignee shall be responsible for repair or restoration of leasehold improvements or alterations; Assignee shall make any insurance proceeds resulting from the loss which Assignor is obligated to repair or restore available to Assignor and shall permit Assignor to enter the Property to perform the same. Assignor shall have the right to exercise the option to terminate the Lease pursuant to paragraph 10 thereof.

10.    Upon the occurrence of a Master Lease Default by Assignee, Assignor shall be entitled to the remedies granted to the Landlord in case of a default included in the Lease. Assignee acknowledges that Assignor may have remained liable under the Lease (notwithstanding this Assignment) and therefore a default under the Lease by Assignee may cause Assignor to be liable to Lessor. Therefore, the parties agree that Assignor shall also be entitled to the following additional remedies:

i.    Assignor shall have the right to terminate this Assignment by giving written notice of termination to Assignee, in which event Assignee shall immediately surrender the Property and all improvements located thereon (collectively, the "Restaurant") to Assignor. If Assignee fails to so surrender the Restaurant, then Assignor may, without prejudice to any other remedy it has for possession of the Restaurant or arrearages in rent or other damages, re-enter and take possession of the Restaurant and expel or remove Assignee and any other person occupying the Restaurant or any part thereof, in accordance with applicable law;

ii.    Assignor may re-enter and take possession of the Restaurant without terminating the Lease or the Assignee's obligations under this Assignment in accordance with applicable law, and relet the Restaurant. No such reletting is to be considered an acceptance of Assignee's surrender of the Restaurant unless Assignor so notifies Assignee in writing. Assignee shall be liable for all such expenses incurred in connection with such reletting including alteration and preparation of the Restaurant for new tenants, brokers commissions, attorneys fees and all other expenses incurred by Assignor in connection with same;

G:\Closed Stores\Alabama\1270-Eastern Bypass-Montgomery\K5- Assignment February 18 2002.DOC
Page 5

iii.     Assignor may cure such default by Assignee and such amount expended by Assignor in connection with such cure shall be added to rent and all other charges due by Assignee hereunder and under the Lease together with interest on such amounts at the rate of eighteen percent (18%) per annum. The self-help option is for the sole protection of Assignor, and its existence shall not release Assignee from its obligation to perform the terms, provisions, covenants and conditions herein provided to be performed by Assignee or deprive Assignor of any legal rights which it may have by reason of any such default by Assignee.

iv.     Assignor shall have any and all other rights and remedies under the law of the jurisdiction in which the Restaurant is located, including without limitation the right to accelerate rent and all other charges payable under the Lease. All remedies of Assignor shall be cumulative and concurrent. In the event of any conflict between the rights and remedies referenced herein and the rights and remedies referenced in the Lease, the rights and remedies herein shall control with respect to Assignee and Assignor. Nothing herein shall modify the rights and remedies between Landlord and Assignor with respect to the Lease.

11.     Assignor shall continue to be responsible for and shall defend, indemnify and hold Assignee harmless from and against any and all losses, liabilities, damages, injuries, penalties, fines, costs, expenses and claims of any and every kind whatsoever (including, without limitation, reasonable attorneys' fees and expenses) paid, incurred or suffered by, or asserted against, Assignee (and his heirs, successors and permitted assigns) that (a) relate to (i) the Lease, (ii) Assignor's occupancy of the Property or the improvements thereon, or (iii) Assignor's use of any appurtenances, easements, rights and privileges belonging to the Property, and (b) relate to events occurring or liabilities or obligations accruing prior to the Effective Date (except for events occurring or liabilities or obligations accruing as a result of inspections of the Property or the improvements thereon by Assignee or its agents or representatives).

12.     Assignee shall be responsible for and shall defend, indemnify and hold Assignor harmless from and against any and all losses, liabilities, damages, injuries, penalties, fines, costs, expenses and claims of any and every kind whatsoever (including, without limitation, reasonable attorneys' fees and expenses) paid, incurred or suffered by, or asserted against, Assignor (and its successors and assigns) that (A) (a) relate to (i) the Lease, (ii) Assignee's occupancy of the Property or the improvements thereon, or (iii) Assignee's use of any appurtenances, easements, rights and privileges belonging to the Property, and (b) relate to events occurring or liabilities or obligations accruing on or after the Effective Date, or (B) relate to events occurring or liabilities or obligations accruing as a result of inspections of the Property or the improvements thereon by Assignee or its agents or representatives.

REEL 2 3 7 4 PAGE 0 6 1 8

13.    This Assignment shall be construed and interpreted in accordance with the laws of the State in which the Property is located.

14.    This Assignment shall inure to the benefit of the heirs, successors and permitted assigns of the parties hereto.

15.    Assignee hereby covenants and agrees with Assignor that it shall not enter into any amendment or modification of the Lease that increases, extends or alters any liabilities, duties or obligations of the lessee under the Lease without the prior written consent of Assignor, which consent shall not be unreasonably withheld; provided, however, that if Assignor has been released, in writing, by Lessor, Assignee, and their respective successors in interest under the Lease and the Assignment, from further liability under the Lease, then Assignor's consent shall not be required. Notwithstanding the foregoing, a termination of the Lease may be entered into between Assignee and Landlord without the written consent of Assignor, as long as an effect of the termination is to relieve Assignor from any further liability under the Lease.

16.    Assignee hereby covenants and agrees with Assignor that any notices required under the terms of the Lease to be given by Assignee shall be sent to Assignor at the same time and in the same manner to the address of Assignor set forth above or to such other address that Assignor may designate by written notice to Assignee in the manner set forth in the Lease. Assignee hereby covenants and agrees with Assignor to send to Assignor copies of any notices received by Assignee under the terms of the Lease immediately upon Assignee's receipt thereof to the address of Assignor set forth above or to such other address that Assignor may designate by written notice to Assignee in the manner set forth in the Lease.

17.    Assignee shall cause Assignor to be named as an additional insured on its liability insurance policies to be maintained by Assignee pursuant to the Lease, and to provide to Assignor insurance certificates demonstrating compliance with the Lease and providing that such liability insurance policies shall not be canceled or modified without not less than thirty (30) days' prior written notice to Assignor. Assignee also shall cause Assignor to be named as a loss payee, as its interest may appear, on the all-risk, fire and casualty insurance policies to be maintained by Assignee pursuant to the Lease, and to provide to Assignor insurance certificates demonstrating compliance with the insurance requirements in the Lease and providing that such all-risk, fire and casualty insurance policies shall not be canceled or modified without not less than thirty (30) days' prior written notice to Assignor.

18.    Assignee shall not grant a mortgage, deed of trust or other lien against Assignee's interest in the Lease or against the leasehold estate created under the Lease without the prior written consent of Assignor, which consent shall not be unreasonably withheld; provided, however, that if Assignor has been released, in writing, by Landlord, Assignee (and Lessor, if required by the Lease), and their respective successors in interest under the Lease and the Assignment, from further liability under the Lease, then Assignor's consent shall not be required.

ALEX 2 3 7 4 PAGE 0 6 1 9

19.    Assignee shall not enter into any assignment or sublease of any portion of the Property or the improvements thereon without the prior written consent of Assignor (and Lessor, if required by the Lease), which Assignor may withhold in its sole discretion. Notwithstanding the foregoing, Assingee may enter into an assignment or sublease to an entity controlled by Joel D. McClinton without the consent of Assignor thereto; provided, however, that in no case shall such an assignment or sublease relieve Assignee of its obligations hereunder, and Assignee and the entity with which Assignee may enter into an assignment or sublease shall be jointly and severally liable for the obligations under this Assignment and the Lease.

20.    This Assignment may be executed in any number of counterparts, each of which shall be deemed an original hereof and all of which together shall constitute but one Assignment. In the event of any conflict between the terms of this Assignment and the terms of the Lease, the terms of this Assignment shall govern and shall be controlling.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

WITNESSES:

Print Name: _A.L. Schwartz_

Print Name: _Green Boore_

ASSIGNOR:

SHONEY'S, INC.,
a Tennessee corporation

By: _____
    Jeff Hammers
    Vice President – Real Estate

State of Tennessee
Davidson County

I, _Pamela Tidwell Notary_, in and for said County, in said State, hereby certify that Jeff Hammers whose name as Vice President – Real Estate of Shoney's, Inc., a Tennessee corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me in this day that, being informed of the contents of the conveyance, he/she, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this the 18th day of February 2002.

_____
Signature of Notary Public

_Pamela Tidwell_
Print, type or stamp commissioned name of Notary
Public; Personally known to me _____ OR
Produced Identification _____
Type of Identification Produced
_____

G:\Closed Stores\Alabama\1270-Eastern Bypass-Montgomery\K5- Assignment February 18 2002.DOC

REEL 2 3 7 4 PAGE 0 6 2 1

WITNESSES:

_Letitia R. Henson_
Print Name: __Letitia R. Henson__

_Heather Hutto_
Print Name: __Heather Hutto__

ASSIGNEE:

MAC East, LLC
an Alabama limited liability company

By: _Joel D. McClinton_
        Joel D. McClinton, Manager

State of Alabama
__Montgomery__ County

I, __Jeffrey W. Blitz, Notary Public__ in and for said County, in said State, hereby certify that Joel D. McClinton whose name as Manager of MAC East, LLC, an Alabama limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me in this day that, being informed of the contents of the conveyance, he/she, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.
__limited liability company.__     __Manager__ JWB
JWB            Given under my hand this the __20th__ day of __February__ 2002.

_Signature_
Signature of Notary Public

_____
Print, type or stamp commissioned name of Notary
Public; Personally known to me _____ OR
Produced Identification _____
Type of Identification Produced _____
_____

G:\Closed Stores\Alabama\1270-Eastern Bypass-Montgomery\K5- Assignment February 18 2002.DOC

08/28/2001 12:10 FAX 615 231 2889          SHONEY'S REAL ESTATE          RE 2 3 7 4 PAGE 0 6 2 2          ☒004

# EXHIBIT "A"

## L E A S E

THIS LEASE, made and entered into this 13th day of April, 19 79, by and between Wylie P. Johnson and wife, Lurene H. Johnson, hereinafter referred to as "Lessor", and Shoney's, Inc., a Tennessee corporation, hereinafter referred to as "Lessee".

WITNESSETH:

1. PREMISES. For and in consideration of the covenants and agreements herein made, Lessor does hereby lease and demise unto the Lessee, and Lessee does hereby take and rent from the Lessor, all that land or real property (hereinafter sometimes referred to as the "Premises") described as follows:

Lot "G", Plat No. 6 of Carol Villa Commercial subdivision as same is recorded in the office of the judge of Probate of Montgomery County, Alabama; and located at 900 East Boulevard South, Montgomery, Alabama 36117;

and more particularly described in Exhibit "A" attached hereto and made a part hereof, together with all appurtenances, easements, rights and privileges thereunto belonging including all right, title and interest of the Lessor in and to any streets and ways adjoining said property, subject only to the zoning ordinances and restrictions of the City of Montgomery, Alabama and easements of record.

TO HAVE AND TO HOLD the said premises unto the Lessee, its successors and assigns, for the term and upon the conditions and provisions herein set forth.

2. TERM. The initial term of this lease shall be for a period of Twenty (20) years, commencing on the 1st day of April, 1979, unless extended or sooner terminated as hereinafter provided.

3. RENEWAL. Lessee shall have and is hereby given Four (4) separate options to renew and extend the term hereof for Four (4) successive periods of Five (5) years each. All such renewal terms shall be on the same terms and conditions as herein set forth except that the rentals shall be as hereinafter specifically provided. Unless the Lessee shall give written notice to the

08/28/2001 12:10 FAX 615 231 2889    SHONEY'S REAL ESTATE    2374 PAGE 0623    ☒005

Lessor not later than three (3) months prior to the expiration of the initial term or the preceding renewal term, as the case may be, of its intention not to exercise any of the same, all such renewal options shall be deemed to have been automatically exercised by the Lessee and this lease thereby renewed and extended without the execution of any other or further instrument. Lessee may, at any time during the initial or any renewal term, waive its right to not exercise one or more of the said renewal options by notice in writing to the Lessor, which waiver shall then be binding and the term of this lease thereby extended for all purposes. As hereinafter used, all references to the term of this lease shall include such additional period or periods of time for which the same may be extended as herein provided.

4. RENTAL. Lessee shall pay and Lessor will accept as rental for the premises net rents payable monthly in advance on the first day of each month of the term hereof beginning on August 1, 1979, and payable at such place as the Lessor shall designate as follows:

(a) During the first ten (10) years, Sixteen Thousand and no/100 ($16,000.00) Dollars per annum, payable in monthly installments of One Thousand Three Hundred Thirty-three and 33/100 ($1,333.33) Dollars.

(b) During the eleventh through fifteenth years, Nineteen Thousand Two Hundred and no/100 ($19,200.00) Dollars per annum payable One Thousand Six Hundred and no/100 ($1,600.00) Dollars per month.

(c) During sixteenth through twentieth years, Twenty-one Thousand One Hundred Twenty and no/100 ($21,120.00) Dollars per annum payable One Thousand Seven Hundred Sixty and no/100 ($1,760.00) Dollars per month.

(d) During first through fourth renewal periods of five (5) years each, the rents shall be negotiable; however, rent increases, if any, for the upcoming term shall not exceed 125% of the rent for the term then ending.

5. INTENT. This is a long term ground lease vesting an estate for years in the Lessee. All buildings and improvements constructed or placed on the premises, subleases and other tenancies, licenses, and rights with respect thereto, and all other matters regarding the use and operation thereof shall be negotiated, contracted for, done and accomplished by the Lessee for its own

account, except as may be otherwise specifically provided herein. The rents hereinabove set out shall be net to the Lessor, and all costs and expenses of every kind and nature relating to the use and operation of the premises, whether or not specifically referred to herein, shall be paid by the Lessee during the term of this lease; provided that Lessee shall not pay any leasing commissions or brokerage fees on this lease and such costs, if any, shall be paid by Lessor.

6. TAXES. (a) Lessee will pay, as the same become due and before the delinquency date thereof, all taxes, water rents, sewer charges and other governmental charges and impositions of any kind levied or assessed against the premises during the term hereof by any and all taxing authorities, including ad valorem taxes, special assessments and liens for public improvements against the premises or any building or improvement located thereon; provided that all such taxes and charges shall be apportioned pro rata between Lessor and Lessee for the years in which the term of this lease commences and terminates. In the event any of said taxes or charges are payable in installments, Lessee may pay the same as such installments fall due. Lessor shall pay all special assessments made or becoming a lien against the premises prior to the commencement of the term hereof. If any special assessment made after the commencement of the term hereof shall be payable in installments, Lessee shall pay only the installments that become due and payable during the remaining term hereof. Lessee will upon request deliver to Lessor copies of receipted bills or other evidence of payment satisfactory to Lessor for all such taxes and charges. Lessor will promptly forward to Lessee, within five days after receipt thereof, any and all tax, assessment and related notices or bills that may be received by Lessor.

(b) Nothing contained in this paragraph or elsewhere in this lease shall obligate the Lessee to pay any income tax that may be imposed upon or assessed against Lessor, or any successor of Lessor, with respect to the premises or the rents and income derived from this lease, under any law now of force or hereafter enacted; nor shall Lessee be obligated to pay any inheritance, estate, succession, gift or any form of property transfer tax which may be assessed or levied against Lessor, Lessor's estate or other successor of Lessor, it being understood that Lessee's obligation to pay taxes is limited to taxes generally known as real estate taxes.

06/28/2001 12:12 FAX 615 231 2889      SHONEY'S REAL ESTATE    REPLY 2 3 7 4 PAGE 0 6 2 5 007

625

(c)  Lessee, at its sole cost and expense, shall have the right to protest or otherwise contest the amount, enforceability or legality of any tax, assessment, or other charge which it is obligated to pay, and to make application for the reduction thereof, or of any assessment upon which the same may be based.  Lessor shall, at the request of Lessee, execute or join in the execution of any instruments or documents necessary in connection with such contest or application, but Lessor shall incur no cost or obligation thereby.  If Lessee shall make any such protest, contest or application, it will prosecute the same with reasonable diligence and continuity, and after final determination thereof will promptly pay the amount of any such tax, assessment, or charge as so determined, together with any interest, penalities and costs which may be payable in connection therewith.  Lessee shall nevertheless immediately make any payment necessary to protect the premises or any part thereof from foreclosure of any lien resulting from any tax, assessment or charge which Lessee may elect to contest as herein provided.

7.  INSURANCE.  Lessee at its expense shall take out and maintain, at all times during the term hereof, insurance protecting all buildings and improvements placed or constructed on the premises by Lessee which are of an insurable nature, against loss or damage by fire, windstorm or other casualty, under what is commonly known as a "fire and extended coverage" policy, in amounts not less than eighty (80%) percent of the full, fair insurable value thereof.  Lessee will upon request deliver to the Lessor copies of all such policies or certificates evidencing the coverage thereof, and Lessee will also upon request furnish Lessor evidence of the payment of all premiums thereon.  All insurance coverage shall be placed in good and responsible companies authorized to do business in the state wherein the premises are located and acceptable to the lending institutions, if any, holding a mortgage or mortgages covering any part of the premises.

8.  REPAIRS AND ALTERATIONS.  Lessor shall not be called upon to make any repairs or improvements whatsoever during the term of this lease. Lessee shall, from time to time, at its expense, make such repairs, that it as a prudent owner would make and may make at its own expense, replacements, additions, improvements, alterations, or changes as it may deem necessary or appropriate for its use of the premises.

08/28/2001 12:12 FAX 615 231 2888     SHONEY'S REAL ESTATE REV 2 3 7 4 PAGE 0 6 2 6    Ⓩ008

9.  USE AND IMPROVEMENTS.  The premises may be used for any lawful purpose.  Lessee shall maintain the premises in compliance with all laws, ordinances and governmental regulations relating to the use and occupancy thereof; but Lessee, at its sole expense, may contest the application or legality of any such law, ordinance or regulation, provided that it shall protect and save harmless the Lessor from any claim or expense in connection therewith.  Lessee may from time to time during the term hereof clear, grade and otherwise prepare the premises for its intended use or uses thereof, construct or place buildings or other improvements thereon, and demolish, modify or alter any building or other structure in such manner and as often as Lessee may deem beneficial to the development and use of the premises. Lessor shall, upon request, join with Lessee in the application for any zoning change or variance or for any building or other permit required in connection with any such improvement or use, but Lessor shall incur no cost or obligation thereby.  All buildings and other improvements constructed or placed on the premises by the Lessee, including all equipment, machinery and fixtures therein or thereon, shall, notwithstanding annexation to the land, remain and be the property of Lessee until the termination of this lease and Lessee shall have the right to remove any such improvements provided Lessee be not then in default, until such termination.  Lessee, however, s shall not be required to remove any such alterations, additions or improvements and Lessee's failure to do so after the termination of this Lease shall be deemed to be an abandonment thereof, whereby, the same shall be and become part of the land with title thereto vesting in the Lessor.  In case of the removal by Lessee of any improvement on the premises prior to the termination of this lease, Lessee shall remove all foundations and facilities below grade and level the area occupied by any such improvement so removed.  Lessee shall, of its sole expense, repair all damages caused by removal of Lessee's trade fixtures, machinery and equipment from buildings remaining on the premises at the termination of this lease.

10.  DAMAGE OR DESTRUCTION.  In the event any building or improvement on the premises shall be damaged by fire or other casualty for which insurance will be payable, Lessee shall repair, restore or replace the damaged or destroyed buildings or improvements with such changes in the use of the

06/28/2001 12:13 FAX 615 251 2889          SHONEY'S REAL ESTATE   2 3 7 4  PAGE 0 6 2 1     @000

premises or in the design, type or character of the buildings and improvements as Lessee may deem desirable; provided that the value of the replacement or new buildings and improvements shall be at least equal to that existing immediately prior to such fire or other casualty. There will be no abatement of rent during the period required for such repair, restoration or construction.

11. INDEMNITY. (a) Lessee covenants that it will indemnify and save Lessor harmless from and against any and all losses, liabilities, damages, costs, expenses, suits, judgments and claims arising from injury or damage during the term hereof to person or property occasioned by any act or acts, omissions or comissions of Lessee, or of any of its agents, employees, or contractors with respect to, or growing out of, the use and occupancy of the premises, including any such liability of Lessor by virtue of its ownership of the premises.

(b) Lessee at its expense shall take out and maintain during the term hereof a policy or policies of insurance in the form generally known as public liability coverage in good and responsible companies covering the premises with minimum limits of $100,000.00 for injury or death to one person, $500,000.00 with respect to any one occurance, and $50,000.00 for property damage. Copies of all such policies or certificates evidencing the coverage thereof shall upon request be delivered to the Lessor, and all such policies shall contain a provision that Lessor shall be notified at least five days in advance of any cancellation or modification thereof.

12. UTILITY BILLS. Lessee shall pay or cause to be paid all bills for water, gas, electricity, power, light and other utilities or similar services used on or furnished to the premises during the term hereof.

13. DEFAULT. (a) In the event of a default on the part of Lessee in the payment of any rents, taxes or assessments, as herein provided, and if Lessor shall execute and deliver to Lessee and each mortgagee entitled to notice, as hereinafter provided, written notice specifying such default and setting out the amount of unpaid rent, taxes or assessments claimed by Lessor to be due, as the case may be, and the default thus specified shall continue for a period of thirty (30) days from and after the date that such notice is delivered to Lessee and each mortgagee, Lessor shall have the right at its election to enter upon the premises and take immediate possession thereof (subject to the

PAGE 374 PAGE 0628

rights of any leasehold mortgagee and subtenants as hereinafter provided, and this lease and all rights of Lessee hereunder shall thereupon terminate, without prejudice to the right of Lessor to bring suit for, and collect all rents, taxes, assessments, advances, payments or other amounts payable by Lessee which may have accrued up to the time of such entry.

(b)  In the event of a default by Lessee under any of the covenants or agreements of this lease set forth to be performed or observed by Lessee other than failure to pay said rents, taxes or assessments, and if Lessor shall execute and deliver to Lessee and any mortgagee entitled to notice, as hereinafter provided, written notice specifying such default in reasonable detail, then unless within ninety (90) days from and after the date that such notice is delivered to Lessee and each mortgagee, Lessee or any mortgagee shall have commenced to remove or cure such default and shall thereafter proceed with reasonable diligence to completely remove or cure such default, Lessor shall have the right at its election to exercise the right of entry and termination set forth in subparagraph (a) above; provided, however, that if the mortgagee of Lessee's interest under this lease shall in good faith and with the exercise of reasonable diligence be unable to obtain such possession of the premises by foreclosure or otherwise as will permit it to commence to cure any default covered by this subparagraph (b) within the 90-day notice period, and such mortgagee within the said 90-day period shall notify Lessor of its inability to do so, then the time within which said mortgagee may commence to cure such default shall be extended until in the exercise of good faith and with reasonable diligence such mortgagee can obtain such possession, and provided further, that during such interim the Lessee or any mortgagee shall pay or cause to be paid all rents, taxes, assessments and other amounts payable by the Lessee under the terms of this lease.

(c)  If Lessee makes a general assignment for the benefit of creditors or files a voluntary petition in bankruptcy, or if a decree is entered involuntarily adjudicating Lessee a bankrupt and such decree is not dissolved within ninety (90) days, or if a receiver shall be appointed for all the property of Lessee and shall not be discharged within ninety (90) days, then, any such action shall constitute a default by the Lessee and, subject to the notice requirements set out in subparagraph (b) above and the rights of a mortgagee

REEL 2 3 7 4 PAGE 0 6 2 9

as provided in this lease, Lessor may give such notice and terminate this lease; provided, however, that no such act or event shall constitute a default hereunder or permit the termination of this lease as long as the payment of all rents and the other obligations to be performed by the Lessee shall be performed by Lessee or any party claiming under or acting on behalf of Lessee.

(d)  If the curing of any default under this lease is delayed by reason of war, civil commotion, act of God, governmental restrictions, regulations or interferences, fire or other casualty, or any circumstances beyond Lessee's or any mortgagee's control, whether similar or dissimilar to any of those enumerated (financial inability excepted), including any action or inaction of the Lessor, performance by the Lessee or by any mortgagee shall be excused for the period of such delay and the time for curing any such default shall be extended for a period equivalent to such period of delay.

14.  RIGHTS OF SUBTENANTS.  In the event of a default by Lessee and a termination of this lease as herein provided, Lessor agrees that all bona fide subleases on the premises (which have been approved by Lessor) shall remain in full force and effect in accordance with their terms as a direct lease between the Lessor and each such subtenant, or, if requested by any such subtenant, Lessor shall grant to each subtenant a new lease for the balance of the term of its sublease and otherwise on the same terms and conditions as therein contained.  Such subtenants shall thereafter attorn to the Lessor, and Lessor shall be entitled to collect all rents and other amounts thereafter accruing under any such subleases provided that Lessor will perform and observe the agreements and conditions in said subleases to be performed by the landlord thereunder.  Lessor agrees to execute such futher agreements and assurances, including tri-party agreements between Lessor, Lessee and any such subtenant, as may be requested by such subtenants to assure them that their respective subleases will not be terminated in the event of default hereunder by Lessee and that same may be terminated only in the manner provided in said subleases for the landlord thereunder.

15.  QUIET ENJOYMENT.  Lessor covenants with and warrants to Lessee that Lessor has good right and full power and authority to execute this lease

06/28/2001 12:15 FAX 615 231 2869     SHONEY'S REAL ESTATE REPLY 2 3 7 4 PAGE 0 6 3 0 @012

and to grant the estate hereby demised, and that Lessee, upon paying the rent and performing its covenants hereunder, shall peaceably and quietly have, hold and enjoy the premises during the whole term of this lease and any extension thereof, and Lessor agrees to hold harmless and protect the Lessee and its subtenants and mortgagees under this covenant.

16.  ASSIGNMENT AND SUBLEASING.  Lessee may sublease the premises or any part thereof to such subtenants as Lessee, in its sole discretion, shall determine advantageous, and Lessee may assign or otherwise transfer this lease and its rights and interests hereunder.  No such subleasing, assignment or transfer shall relieve Lessee of its obligations hereunder; provided, however, that Lessee's assignee that has been approved by Lessor, after five (5) years from the commencement of the initial term hereof and if such assignee shall expressly assume in writing all of Lessee's obligations hereunder and under any mortgage concerning the premises, then upon any assignment or transfer of this lease and the written approval of said assignee by the Lessor the Lessee shall be relieved of the duties, obligations and liabilities of the Lessee hereunder accruing from and after the date of such assignment or transfer. Any assignee or transferee of the Lessee or other subsequent owner of the leasehold estate may likewise be relieved from the duties and obligations of the Lessee hereunder.

17.  CONDEMNATION.  (a) If the whole or any part of the premises shall be taken or condemned by any competent authority for any public use or purpose, either through any proceeding or by settlement, Lessor shall be entitled to an award based on the taking of or injury to the fee simple estate in the land as covered by and subject to this lease, and Lessee shall be entitled to an award based on any loss or reduction of its leasehold estate, loss of any building or other improvement constructed or placed on the premises by Lessee, loss or interruption of business and the cost of any alterations or restoration resulting from any such taking.  Any single award or settlement shall be allocated between the parties in accordance with the foregoing.  As between Lessor and Lessee, a factor of eleven (11%) percent shall be used in all interest and discount computations, if any, necessary under the terms of this paragraph.

(b)  If the whole of the premises be taken or if such portion thereof be taken that in the good faith judgment of the Lessee the remainder is rendered unsuitable for its purposes, then the Lessee shall be relieved of its obligation to pay the rentals and perform its other covenants hereunder from and after the date of such taking, and the Lessee shall surrender the remaining portion of the

REPY 2 3 7 4 PAGE 0 6 3 1

premises, if any, to the Lessor as of such date; provided that such release and surrender shall in no way prejudice or interfere with Lessee's right to an award for its loss or damage as hereinabove provided. The rent for the last month of the Lessee's possession of the premises shall be prorated and any rentals paid in advance shall be refunded to the Lessee.

(c)  If only a portion of the premises be taken and in the good faith judgment of the Lessee, the remainder is not rendered unsuitable for its purposes, then:  (i) this lease and all its provisions shall continue in full force and effect, (ii) remaining portion of the premises (including necessary grading and land preparation), with such changes in the use of the premises or in the design, type or character of the buildings and improvements as Lessee may deem desirable, to a complete unit or units of quality and value as near as possible to that existing immediately prior to such taking, except that the Lessee shall not be obligated to expend funds beyond the amount of the net condemnation award (after legal expenses) paid to the Lessee, and (iii) there shall be an abatement of rent in the proportion which the value of the land taken bears to the value of the whole of the premises, each such valuation being based on land value only and exclusive of improvements made by Lessee.

(d)  Any leasehold mortgagee is a proper party in interest to any proceeding concerning a taking of all or any portion of the premises and such mortgagee shall be entitled to intervene or participate in any such proceeding either on its own behalf or on behalf of the Lessee.

18.  MORTGAGE OF LEASEHOLD.  (a) In addition to any other right herein granted, Lessee shall at all times have the right, without any consent on the part of the Lessor being required, to convey or encumber by mortgage its leasehold interest in and to the premises or any part thereof, together with its rights and interests in and to all buildings and improvements whether now existing or hereafter constructed or placed thereon, and to assign this lease or any interest therein as collateral for any such mortgage or mortgages; but any and all such conveyances, mortgages, or assignments shall be subject to this lease and the right, title and interest of the Lessor in the premises. If any such leasehold mortgage shall be foreclosed or the leasehold estate sold under any power contained therein, the leasehold mortgagee or other pur-chaser at such sale shall immediately succeed to all rights of the Lessee

hereunder. If Lessee or any leasehold mortgagee shall notify Lessor in writing by certified or registered mail of such mortgagee's interest in the premises and shall at the same time furnish Lessor with the address to which copies of notices are to be sent to the mortgagee, Lessor will thereafter send to such mortgagee at the address so given, by certified or registered mail, a copy of any and all notices which the Lessor may from time to time give to or serve upon the Lessee under and pursuant to the terms and provisions of this lease, and no such notice to the Lessee shall be effective unless a copy thereof is also served upon the mortgagee in such manner. Such mortgagee may at its option at any time before the rights of the Lessee shall have been forfeited to the Lessor, or within the time permitted for curing or commencing to cure defaults as herein provided, pay any of the rents due, pay any taxes, assessments, other governmental charges, or insurance premiums, make any deposits, or do any other act or thing required of the Lessee by the terms of this lease, to prevent the forfeiture hereof; and all payments so made, and all things so done and performed or caused to be done and performed by any such mortgagee shall be as effective to prevent a forfeiture of the rights of the Lessee hereunder as the same would have been if done and performed by the Lessee. Any such mortgage so given by the Lessee may, if the Lessee so desires, be so conditioned as to provide that as between any such mortgagee and the Lessee, said mortgagee on making good and curing any such default or defaults on the part of the Lessee shall be thereby subrogated to any or all of the rights of the Lessee under the terms and provisions of this lease. A leasehold mortgagee shall not become personally liable for any of the Lessee's obligations under this lease unless and until such mortgagee becomes the owner of the leasehold estate by foreclosure, assignment in lieu of foreclosure or otherwise, and thereafter such mortgagee shall remain liable for such obligaions only so long as it remains the owner of the leasehold estate. If the leasehold mortgagee should become the owner of the leasehold estate, such mortgagee may assign the lease without any consent on the part of the Lessor being required, and any purchase money mortgage delivered in connection with any such assignment shall be entitled to the benefit of all the provisions of the lease with respect to a leasehold mortgage.

06/28/2001 12:17 FAX 615 231 2889    SHONEY'S REAL ESTATE    REEL 2 3 7 4 PAGE 0 6 3 3    @015

(b)  In the event any such leasehold mortgage is made by Lessee and Lessor is given notice thereof as above provided, then, so long as any such leasehold mortgage remains outstanding and unsatisfied of record, no modification or amendment hereof, waiver of any right hereunder, or any surrender, acceptance of surrender or cancellation hereof by Lessee shall be of any force or effect unless approved or consented to in writing by the leasehold mortgagees; and all such acts shall be null and void if done during the term of the mortgage without such approval or consent.

(c)  If for any reason this lease should terminate in any manner before its natural expiration date while a leasehold mortgage (of which Lessor has been properly notified) shall remain outstanding and unpaid, Lessor agrees to give written notice of such termination to the leasehold mortgagee which notice shall contain a specific reference to the rights of the mortgagee under this subparagraph together with a statement of all sums then due under this lease and of all other defaults, if any, under this lease then known to Lessor.  The leasehold mortgagee, or such party as shall be designated or nominated by the mortgagee for such purposes, shall thereupon have the option to enter into a new lease of the premises with the Lessor for the remainder of the term of this lease at the same rent and upon all the other terms, conditions and agreements hereof, including any renewal or purchase rights as herein contained, provided:  (i) the leasehold mortgagee shall make written request for such new lease within thirty days after receipt of the aforementioned notice of termination from the Lessor and such request shall contain a tender or offer to pay all amounts then due to the Lessor hereunder, and (ii) at the time of execution and delivery of the new lease, the leasehold mortgagee shall pay or cause to be paid to the Lessor all amounts which are then due hereunder including the reimbursement of all costs and expenses paid or incurred by Lessor in connection with such termination or the execution of the new lease less any net income collected by the Lessor during the interim period.  Any such lease made by and between the Lessor and a leasehold mortgagee shall have and enjoy the same priority as this lease over any intervening liens and encumbrances, and all such liens and encumbrances, if any, shall be subject and subordinate thereto as fully and to the same effect as though such new lease had been dated, executed and recorded at the same time as this instrument or any short form hereof.

(d)  Lessor shall not mortgage its interest in the premises and will

06/28/2001 12:17 FAX 615 231 2099    SHONEY'S REAL ESTATE    REF 2374 PAGE 0634    ☒018

not do or suffer anything to be done whereby any part of the premises may be encumbered by a mortgage or other lien which would be prior to any mortgage on the leasehold estate.

19. STATEMENT OF PERFORMANCE. Lessor agrees, within fifteen days after written request (and receipt of proper notice) shall have been made therefor, to furnish from time to time a written statement of the status of this lease and of the Lessee's performance hereunder including a statement that the lease is in good standing and that there is no default hereunder or, if not, a statement setting forth the nature and particulars of any default; and failure within said period to give such statement shall be conclusively presumed to be a representation that the lease is in good standing without default which statement or representation may be relied upon as being true and correct by any prospective purchaser of Lessee's interest, mortgagee, subtenant or other person having a legitimate interest in the premises.

20. LIENS. Except as may be herein specifically provided, Lessee shall never, under any circumstances, have the power to subject the interest of Lessor in the premises to any mechanics' or materialmen's liens or liens of any kind.

21. RIGHTS AND REMEDIES. The rights and remedies herein given or reserved are separate and cumulative and shall be in addition to all other rights that may be given or provided by law, and no one right or remedy shall operate or be deemed to exclude any other right or remedy available to the parties hereto. Any failure of Lessor or Lessee to enforce rights or seek remedies upon any default of the other party with respect to the obligations of each or either of them shall not prejudice or affect the rights or remedies of each or either of them in the event of any subsequent default, and no waiver by either of the parties hereto of any breach of any term, covenant, or condition shall be considered to be a waiver of any subsequent breach of the same or any other term, covenant or condition.

22. NOTICES. Any notice required or desired to be served by either party hereto upon the other shall be deemed to have been properly given or made if such notice shall be in writing and shall be sent by registered or certified mail with postage prepaid and addressed as follows:

08/28/2001 12:18 FAX 615 231 2889    SHONEY'S REAL ESTATE    2 3 7 4  PAGE 0 6 3 5    ☒017

To the Lessor at:

    Wylie P. Johnson
    R-1 B70, Robins Road
    Pike Road, Alabama 36064

To the Lessee at:

    Shoney's, Inc.
    Real Estate Department
    1727 Elm Hill Pike
    Nashville, Tennessee 37210

In the manner, either party from time to time may change the address to which notices to it are to be sent.

    23. RENTALS UNDER SUBLEASES. During the term of this lease, Lessee shall have the right to collect, recieve and use for its own account and purposes all rentals due under any subleases of all or any part of the premises; provided, however, that in the event of a default hereunder by Lessee which continues unremedied after notice for the period of time as hereinabove provided, then the Lessor may notify the subtenants that it shall thereafter collect and receive such rentals. Lessee hereby authorizes and directs its subtenants, their successors and assigns, to pay such rentals to Lessor upon being notified by Lessor that it has the right to collect the same under the provisions hereof. Any rentals collected by Lessor under this paragraph shall be applied first to the expense of collecting the same, second to the payment of Lessee's obligations hereunder, and third, the balance, if any, shall be held in trust by Lessor, without interest, to discharge any future obligations of Lessee to Lessor under this lease, such trust to be terminated upon termination of this lease and any funds in said trust not required to be paid to Lessor for discharge of Lessee's obligations being thereupon retained by Lessor for its own purposes.

    24. LESSOR S TITLE. (a) Lessor covenants and warrants to Lessee that Lessor has good and marketable title to the premises in fee simple absolute, and that the same are free and clear of all leases, tenancies, liens, encumbrances easements, agreements, restrictions, conditions or any other limitation whatsoever restricting the use, development, or enjoyment thereof except taxes for the current year and as specifically set forth in Article 1, page 1 herein.

    (b) Within thirty (30) days from the date of this lease, Lessee may obtain, at Lessee's expense an interim title insurance binder in an amount equal to One Hundred Twenty Thousand and no/100 ($120,000.00) Dollars, issued by a

06/28/2001 12:19 FAX 615 231 2889    SHONEY'S REAL ESTATE    REEL 2 3 7 4 PAGE 0 6 3 6    @018

title insurance company approved by Lessee, which shall bind said company to issue a title insurance policy in the above mentioned amount, upon payment of the premium (which shall be paid by Lessee), insuring Lessee's marketable title in the leasehold estate created hereunder, that the Lessor's title is as above set out, and indicating no exceptions other than as set forth in Article 1, page 1 herein. Lessor agrees to provide Lessee within thirty (30) days of the date of this lease a boundary survey by a licensed surveyor showing the area, dimensions and location of all recorded easements against or appurtenant to the property, and the legal description of the premises. If such title binder or any survey of the premises obtained by Lessee shall disclose any defect or limitation on title or if there shall be any material variance from the size and dimensions of the premises as herein set out, Lessee shall give notice thereof to Lessor and Lessor shall promptly proceed to correct or remedy the same. If Lessor shall fail to provide such survey or if Lessor shall fail to correct or remedy such defect, limitation or variance within a reasonable time, not to exceed sixty days, Lessee at its option may terminate this lease (in which event all amounts paid Lessor by Lessee under this lease shall be repaid by Lessor) or Lessee may pursue any other remedy to which it may be entitled. In the event Lessor fails to provide the survey as set forth above, Lessee may obtain same at its cost and shall be entitled to reimbursement from Lessor either as a credit against rent or in cash payment.

(c) Lessor represents that, as of the commencement date of the term hereof, the premises will be zoned to permit the construction and operation of a restaurant. If the premises are not so zoned, Lessee may elect to terminate this lease (in which event all amounts paid Lessor by Lessee under this lease shall be repaid by Lessor) or Lessee, at its election, may treat this lease as continuing in full force and effect and grant the Lessor a reasonable time in which to obtain such zoning; provided, however, that the payment of rentals and the performance of the Lessee's other obligations hereunder shall abate until such zoning is obtained. If the Lessee shall elect to so continue this lease in effect, both Lessor and Lessee shall use their best efforts to obtain such zoning.

(d) Lessee, at its own expense, shall obtain all necessary permits, licenses, and governmental approvals for the construction and operation of the restaurant to be located on the premises. If Lessee shall be unable to obtain any and all such permits, licenses, and approvals for the construction and operation of such a facility within one hundred twenty (120) days of the date

06/28/2001 12:19 FAX 615 251 2588        SHONEY'S REAL ESTATE    BOOK 2 3 7 4 PAGE 0 6 3 7        ☑ 018

of this lease, Lessee, at its option, may continue under this lease, or terminate this lease by written notice to the Lessor and thereupon this lease shall terminate with no further liability on either party and all amounts paid Lessor by Lessee under this lease shall be repaid by Lessor.

(8) Lessor warrants that all water, sanitary services, storm sewers, electricity, gas and other required utilities are available for connection and are at the property line.

(f) Lessee shall, within one hundred and twenty (120) days of the date of this lease, determine if the soil substrata of the premises are satisfactory, in Lessee's sole judgment, for the construction of a restaurant or such other improvement which Lessee may intend to construct on the premises. If the soil conditions are not satisfactory, Lessee may elect to terminate this lease (in which event all amounts paid Lessor by Lessee under this lease shall be repaid by Lessor) or Lessee, at its election, may treat this lease as continuing in full force and effect.

25. NON-MERGER. During the term of this lease, the leasehold estate of the Lessee shall not merge with the fee simple or other estate in the premises but shall always remain separate and distinct notwithstanding the union of all or any part of said estates either in Lessor or Lessee, or in a third party by purchase or otherwise, unless and until all persons having an interest therein, including a leasehold mortgagee, shall join in a written instrument consenting to or effecting such merger.

26. UTILITY EASEMENTS. Lessee shall have the right to grant easements over, upon and under the premises for utilities, sewers, ingress and egress, and similar purposes to service the development thereof and the improvements thereon; and Lessor agrees, from time to time upon request by Lessee, without any compensation being paid therefor, to join in the granting of such easements and to take any other action necessary to effectuate the same, all at the expense of Lessee.

27. FIXTURES. At any time prior to the termination of this lease or within thirty (30) days thereafter, Lessee may remove, or allow or cause to be removed, any and all fixtures, equipment, furniture and furnishings which may have been placed on the premises by Lessee or by any party claiming through or under Lessee, provided that Lessee shall repair or cause to be repaired any material damage resulting from such removal.

08/28/2001 12:20 FAX 615 231 2688     SHONEY'S REAL ESTATE 2 3 7 4  PAGE 0 6 3 8  ⊠020

28. PURCHASE OPTION. Upon termination of the initial term or during any renewal term of this lease, the Lessee shall have and the Lessor grants to Lessee the exclusive right and option to purchase the premises upon the following terms and conditions:

(a) The total purchase price shall be whichever is greater $750,000.00 or the appraised value of the land only completely exclusive of the value of any buildings or other improvements thereon. Such appraised value shall be determined as of the date of Lessee's exercise of this option by two appraisers one appointed by Lessor and one by Lessee. If the two appraisers so appointed cannot agree on the valuation, they shall appoint a disinterested person with at least five years experience as a commercial real estate appraiser as a third appaiser. The three appraisers then named shall act promptly to determine a valuation, and the decision of any two as to the proper valuation of such land shall be binding upon all parties hereto. If the two appraisers cannot agree on the selection of a third appraiser, then the third appraiser shall be appointed by the president of the Nashville Real Estate Board.

(b) Lessee may exercise this option during the last three months of the initial term or during any renewal term by giving written notice of its election to Lessor by registered or certified mail addressed to Lessor at the last address of Lessor furnished for the purpose of giving notices hereunder. If mailed, the notice shall be deemed to have been given on the date of the postmark on the envelope containing such notice. Upon the giving of such notice, a contract of purchase and sale of the premises shall be deemed to exist between the parties on the terms and conditions herein set out.

(c) Title to the premises shall be good and marketable and free and clear of all liens and encumbrances except any easements, liens or encumbrances created by the Lessee, taxes for the current year, and any sub-leases or occupancies made or suffered by Lessee. If any title report or binder obtained by or furnished to Lessee shall disclose any defect, Lessee shall give notice of any objection to title and Lessor shall have a reasonable time (not to exceed 90 days) to cure or remove such defect. The time for closing hereof shall be extended if necessary for such purpose.

(d) There shall be no credit of any kind on the purchase price for any of the rents paid by Lessee hereunder. Taxes and other charges against the premises which are the obligation of the Lessee hereunder will not be prorated

08/28/2001 12:21 FAX 615 231 2689    SHONEY'S REAL ESTATE    @021

and the Lessee will take title to the premises subject to the same.

(e)  The purchase and sale transaction shall be closed on a mutually agreeable business day within thirty (30) days following the exercise of this option.  Upon such closing, Lessor will deliver to Lessee a standard form of warranty deed conveying the premises in fee simple and the parties will execute such other documents as may be necessary to carry out the intent hereof.  Lessor shall furnish an up to date abstract of title or cause an owner's title insurance policy in standard form to be furnished to Lessee in the amount of the purchase price.  All recording costs shall be paid by Lessee.

29.  FIRST REFUSAL.  During the term hereof as the same may be extended, Lessor shall not sell its interest in the premises to a third party except conveyance of Lessor's interest to Lessor's heirs unless Lessee is first given the opportunity to purchase the same and declines to do so as hereinafter provided.  In the event Lessor receives a bona fide offer to purchase the premises which is acceptable to Lessor, Lessor shall give Lessee written notice of said offer stating its terms and conditions and indicating that said offer is acceptable to Lessor.  Such notice shall constitute an offer by Lessor to Lessee to sell the Lessor's interest in the premises upon the terms and conditions stated therein.  Upon receipt of such notice, Lessee shall have thirty (30) days within which to accept said offer by written notice to Lessor or to decline the same.  In the event Lessee declines the said offer, or fails to respond thereto within said thirty (30) days, Lessor shall have the right to sell its interest in the premises to the thrid party on such terms and conditions.

30.  LIMITED POWER OF ATTORNEY.  In addition to any other or similar appointment or power that may be herein made or given, Lessor does hereby nominate, appoint and constitute the Lessee to be the Lessor's true and lawful attorney in fact to act in the Lessor's name for the purpose of applying for and securing from any governmental authority having jurisdiction thereover any zoning change or variance or any building permit or other permit or license which may be necessary or desirable in connection with any proposed use or development of the premises or for any building, improvement, alteration, change or repair to be made or constructed thereon, and for the purpose of protesting and contesting in court or otherwise any tax or assessment affecting the premises or any part thereof, and for the further purpose of granting utility

06/28/2001 12:21 FAX 615 231 2889     SHONEY'S REAL ESTATE     ALPY 2 3 7 4 PAGE 0 6 4 8     @022

easements over, upon and under the premises for domestic service thereon,
that would be valid only during the life of this lease. This appointment
and grant of power to the Lessee is coupled with an interest and shall be
irrevocable during the term of this lease as the same may be extended or
renewed. Lessor expressly authorizes Lessee as Lessor's said attorney in
fact to sign Lessor's name to any such application, protest, easement or
other document required or desirable in connection therewith, Lessor hereby
ratifying and affirming any and all actions done by Lessee as Lessor's said
attorney in fact under the power herein granted. Nothing contained in this
grant of power shall be deemed or construed to in any way limit or annul
any agreement or obligation of the Lessor hereunder, and Lessor will at all
times promptly execute or join in the execution of any document or writing as
herein provided notwithstanding this grant of power.

    31. GENERAL. (a) This instrument vests an estate for years in
the Lessee. Nothing herein contained shall cause the parties to be considered
as partners or joint venturers, nor shall either party be deemed to be the
agent of the other except as may be herein specifically provided.

    (b) As used herein, the term "mortgage" shall include deeds of
trust, deeds to secure debt, financing statements, security agreements and
other security instruments of a similar nature, and the term "mortgage"
shall include a beneficiary, grantee, or similar secured party under such
instruments. The term "subtenant" or "sublease" shall include or apply to,
as the case may be, all tenants, subtenants and licensees of the Lessee or
anyone claiming by or under Lessee.

    (c) Whenever either of the parties hereto (Lessor or Lessee) shall
consist of more than one person or entity, then such parties shall designate
one of their number or an agent as the proper party to receive notice for all,
and to execute all instruments or writings that may be required or requested
hereunder; and, in the case of Lessor, such multiple parties shall designate
one of their number or an agent to receive the rents payable hereunder.

    (d) This instrument contains the entire agreement between the parties,
and the execution hereof has not been induced by any representation, promise
or understanding not expressed herein. No modification, release, discharge
or waiver of any provision hereof shall be of any force or effect unless in
writing and signed by the party to be bound thereby.

(e)  Any holding over by the Lessee at the expiration of the original or any renewal term hereof (after having given notice of its intention not to exercise its renewal option without receiving notice from Lessor to vacate the premises) shall in the absence of an agreement to the contrary, create a tenancy from month to month at the last rent then payable and otherwise on all the same terms and conditions hereof.

(f)  Except as may be herein specifically provided, this lease and all of the covenants, conditions, terms and agreements herein contained shall bind and inure to the benefit of the Lessor and the Lessee and their respective heirs, legal representatives, successors and assigns.  As used herein, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders unless the context shall fairly require a different construction.

(g)  This lease shall be construed under the laws of the state wherein the premises are located.

(h)  Upon the request of the other, either party hereto will at any time join in an execution of a short form lease in proper form for recording and setting forth the existence and term of this lease and any other provisions contained herein deemed appropriate for inclusion in such memorandum by the party making such request.  Notwithstanding the foregoing, Lessor or Lessee may at any time record or file this entire lease.

08/28/2001 14:22 FAX 615 231 2009     SHONEY'S REAL ESTATE     REEL 2 3 7 4 PAGE 0 6 4 2     @024

IN WITNESS WHEREOF, this lease has been duly executed by the parties hereto as of the day and year first above written.

LESSOR:

*Wylie P. Johnson*
Wylie P. Johnson

*Lurene H. Johnson*
Lurene H. Johnson

WITNESS:

_____

_____

LESSEE:
Shoney's, Inc.

By: _____
As It's Vice President

Attest:

By: _____
As It's Secretary

06/28/2001 12:23 FAX 615 231 2889        SHONEY'S REAL ESTATE DEPT 2 3 7 4 · PAGE 0 6 4 3 ⓄⒸ025

STATE OF TENNESSEE    )
                      :  SS.
COUNTY OF DAVIDSON    )

I, _May L. Hale_ , a Notary Public, in and
for said State and County, hereby certify that H.S. Tidwell and Jess
S. Shearin, whose names as Vice President and Secretary of Shoney's,
Inc., a Tennessee Corporation, are signed to the foregoing conveyance,
and who are known to me, acknowledged before me on this day that,
being informed of the contents of the conveyance, they, as officers
and with full authority, executed the same voluntarily for me and as
the act of said corporation.

Given under my hand and official seal this the _13_ day
of _April_ , 1979.

_May L. Hale_
Notary Public

My Commission Expires: _May 13, 1979_

SHONEY'S REAL ESTATE BOOK 2374 PAGE 0644
RPY 2329

STATE OF TENNESSEE )

: SS.

COUNTY OF DAVIDSON )

I, *Palmer Smith Ledman*, a Notary Public
in and for said State and County, hereby certify that Wylie P.
Johnson and Lurene H. Johnson, whose names are signed to the fore-
going conveyance and who are known to me, acknowledged before me
on this day that, being informed of the contents of the conveyance,
Wylie P. Johnson and Lurene H. Johnson, executed the same voluntarily
on the day the same bears date.

Given under my hand and official seal this _17th_ day of
_April_, 1979.

_Palmer Smith Ledman_
Notary Public

My Commission Expires: _January 4, 1981_



SERVICE                    ROAD

02/20/2002 11:52 FAX 615 231 2689    SHONEY'S REAL ESTATE    ☒001




# SHONEY'S
Inc.

1727 Elm Hill Pike • Nashville, TN 37210 • (615) 391-5201

December 22, 1998

Certified/Return Receipt Requested

Mr. Wylie P. Johnson
621 Royal Tower Drive
Birmingham, AL 35209-6856

Re: Shoney's #1270
805 Eastern Bypass
Montgomery, AL

Dear Mr. Johnson:

Pursuant to paragraph "3. Renewal" of the Lease dated April 13, 1979, between yourself and Lirene H. Johnson, Lessor and Shoney's, Inc., Lessee, this letter shall serve as written notice that Shoney's, Inc. is hereby exercising the first of four, five year renewal options. The renewal will become effective April 1, 1999. The rent, per our telephone conversation, will increase at that time to $26,400 per year, which is a 125% increase.

Please sign below and return one copy of this letter to my attention indicating your receipt of this notice to renew.

Sincerely,

*Susann Shearn*
Susann B. Shearon
Director of Property Management

*Wylie Pierson Johnson*
Wylie P. Johnson

*31 December 1998*
Date

cc:    Jeff Gordon
       Kaye Couch

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:
Wylie P. Johnson
621 Royal Tower Dr.
Birmingham AL 35209-6856

4a. Article Number
P 372 164 251

4b. Service Type
☐ Registered          ☒ Certified
☐ Express Mail        ☐ Insured
☒ Return Receipt for Merchandise    ☐ COD

7. Date of Delivery

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)
*Wylie P. Johnson*

8. Addressee's Address (Only if requested and fee is paid)
W.P.J., 2-31-98

Thank you for using Return Receipt Service.

! CUSTOMER, EVERY DAY!

REAL 2 3 7 4 PAGE 0 6 4 8

**Exhibit B**

**Lessor's Consent**

G:\Closed Stores\Alabama\1270-Eastern Bypass-Montgomery\K5- Assignment February 18 2002.DOC

RLP# 2 3 7 4 PAGE 0 6 4 9

# LANDLORD CONSENT TO ASSIGNMENT

FOR AND IN CONSIDERATION OF Ten Dollars ($10.00) cash in hand paid, and in consideration of the agreement of Assignor and Assignee as set forth in paragraph (7) hereof, and for other good and valuable consideration, the receipt and sufficiency of all of which are hereby acknowledged, **WYLIE P. JOHNSON**, a widower, resident of the State of Alabama, with an address of 1991 Shades Crest Road, Birmingham, Alabama 35216 (hereinafter, the "Landlord"), in connection with that certain Assignment and Assumption of Lease Agreement (hereinafter the "Assignment") dated _February 20, 2002_ by and between **SHONEY'S, INC.,** a Tennessee corporation, doing business at 1727 Elm Hill Pike, Nashville, Tennessee 37210, (hereinafter, the "Assignor"), and **MAC EAST, LLC,** an Alabama limited liability company, doing business at 2777 Zelda Road, Montgomery, Alabama 36106 (hereinafter, the "Assignee"), hereby certifies, warrants and represents to Assignor and Assignee, as follows:

(1)  Landlord and Assignor are parties to that certain Lease dated April 13, 1979, in which Landlord leases to Assignor the leased premises described therein (hereinafter the "Premises") (the Lease Agreement, together with all amendments, modifications and extensions thereto, is hereinafter collectively referred to as the "Lease");

(2)  The Lease is in full force and effect and Landlord has not previously assigned the Lease;

(3)  To Landlord's knowledge, neither Assignor nor Landlord is in default in the performance of any covenant, agreement, obligation or condition contained in the Lease, and to Landlord's knowledge, there are no events or conditions existing which, with notice or the lapse of time or both, could constitute a monetary or other default by Assignor or Landlord under the Lease;

(4)  Provided Assignor and Assignee execute this agreement hereinbelow and deliver a fully executed duplicate original of this agreement to Landlord at Landlord's notice address, Landlord consents to the assignment by Assignor to Assignee of Assignor's rights and obligations under the Lease and to the terms and provisions of the Assignment;

(5)  Landlord covenants and agrees with Assignor that it shall not enter into any amendment or modification of the Lease that increases, extends or alters any liabilities, duties or obligations of the lessee under the Lease without the prior written consent of Assignor, provided Assignor shall not withhold its consent unreasonably; and

(6)  Landlord agrees with Assignor that any notices required under the terms of the Lease to be given by Landlord shall be sent at the same time and in the same manner to

8953072

1

RLPY 2 3 7 4 PAGE 0 6 5 0

both Assignee and Assignor, to the addresses set forth hereinabove or to such other address that Assignor or Assignee, as the case may be, may designate by written notice to Landlord in the manner set forth in the Lease.

**FOR AND IN CONSIDERATION OF** the agreements of Landlord set forth above, Assignor and Assignee hereby covenant and agree with Landlord as follows:

(7)     Assignee hereby covenants and agrees to pay the rent and all other payments required under the Lease when due and to perform all the obligations, terms, and conditions to be performed by Assignor as lessee thereunder. Assignee hereby expressly assumes all rights, liabilities, and duties of Assignor pursuant to the Lease. Said assumption notwithstanding, Assignor acknowledges and agrees that nothing contained herein shall release Assignor from, and Assignor expressly confirms and ratifies its duty to perform, each and all of its obligations and duties to Landlord pursuant to the Lease, and Assignor expressly acknowledges that it remains fully liable to Landlord thereunder.

**IN WITNESS WHEREOF,** this Landlord Consent to Assignment has been duly executed and delivered by the undersigned as of the _20th_ day of _February_ _____, 2002.

LANDLORD:

*Wylie Pierson Johnson*

WYLIE P. JOHNSON    20 February 2002

ASSIGNOR:
SHONEY'S, INC., a Tennessee corporation

By: _____
Its: _Assistant Secretary_

ASSIGNEE:
MAC EAST, LLC
an Alabama limited liability company

By: _____
Its: _Manager_

STATE OF ALA.
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON

2002 FEB 21 PM 4: 07

REESE MCKINNEY JR.
JUDGE OF PROBATE
895307 2

INDEX                 5.00
REC FEE               1.00
CASH                 97.50
ITEM     3          103.50
02-21-02 THU #15    1 CLERK 1433 16:56

2