```
 1   IN THE UNITED STATES DISTRICT COURT

 2   FOR THE MIDDLE DISTRICT OF ALABAMA

 3

 4   CIVIL ACTION NO:  2:05-CV-1038-MEF

 5

 6   MAC EAST, LLC,

 7   An Alabama Limited Liability

 8   Corporation,

 9            Plaintiff,

10   vs.

11   SHONEY'S INC.,

12   a Tennessee corporation,

13            Defendant.

14

15               DEPOSITION

16                  OF

17              DONNA POWER

18

19   REPORTED BY: Kelly Jackson

20               Registered Professional

21               Reporter

22            and Notary Public

23
```

EXHIBIT B

FREEDOM COURT REPORTING

Page 8

1  requested or suggested to her that they
2  didn't follow suit with what was
3  attached. So she replaced those, and
4  these are the replacement pages.
5     Q.   Some of the pages of Exhibit 3
6  were sent subsequent to the original
7  letter?
8     A.   Right.
9     Q.   But Exhibit 3 and Exhibit 2
10 constitute the materials you received
11 from MAC East that related to the
12 transaction?
13    A.   Yes.
14    Q.   Involving City Cafe?
15    A.   Yes.
16    Q.   Did you request any documents
17 from MAC East that they did not provide
18 you about City Cafe?
19    A.   Not to my recollection.
20    Q.   Who is your employer?
21    A.   Shoney's, L.L.C.
22    Q.   When did you become employed by
23 that entity as opposed to Shoney's,

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

Page 48

1    A.   No.
2    Q.   None of these things were
3  expressed prior to relaying this to MAC
4  East to you?  None of these reasons --
5  none of these reasons were expressed to
6  you prior to the time you relayed the
7  decision to MAC East?
8    A.   They were not expressed to me,
9  no.
10   Q.   Mr. Stetson spent about five
11 minutes on this project before he made
12 that decision?
13   A.   I would think so.
14   Q.   All he had to look at are
15 Exhibits 2, 3, and 5?
16   A.   Right.
17   Q.   Has he ever given you any
18 explanation for the amounts that he gave
19 you during your meeting in Nashville?
20   A.   No.
21   Q.   Do you know where those numbers
22 come from?
23   A.   I do not.

FREEDOM COURT REPORTING

Page 49

```
1      Q.   Do you refer to Mr. Stetson as
2   the owner?
3      A.   No.
4      Q.   Let me go ahead and show you
5   what I will mark as Exhibit 7.
6
7           (Whereupon, Plaintiff's Exhibit
8            7 was marked for
9            identification.)
10
11     Q.   I will represent that this is a
12  transcript of a voice message on a voice
13  messaging system at McClinton Company.
14  Does this refresh your recollection of
15  the message you left when you called?
16     A.   I didn't realize my speech was
17  so awful.  That is basically what I
18  recall.
19     Q.   You used the term owners in
20  there.  Assuming you were using the term
21  owners when you left this message, who
22  does that refer to in that context?
23     A.   In this context it would be Bob
```

1    Q.   Did Mr. Stetson or you have any
2    information at the time this decision
3    was made regarding the sublease to City
4    Cafe that the financial condition of MAC
5    East had in any way changed since it was
6    originally assigned this lease?
7    A.   Not to my knowledge.
8    Q.   In your conversation with
9    Mr. Stetson yesterday, did he mention
10   any concern he had about the financial
11   ability of MAC East to honor the terms
12   of the lease?
13   A.   No.
14   Q.   At the time the assignment was
15   agreed to be made by Shoney's to MAC
16   East, and the date of that was February
17   of 2002, wasn't there a guaranty
18   required, personal guaranty required of
19   the financial capability of MAC East by
20   Mr. McClinton?
21   A.   There was one in the file.  I
22   am not sure if it was required.
23   Q.   In the leasing management

Page 71

1  to them or you just leave that to the
2  judgment of the broker and review it
3  when they come in?
4      A.   We leave it to the judgment of
5  the broker.
6      Q.   Have you rejected any potential
7  subtenants in the last year?
8      A.   No.
9      Q.   Do brokers generally provide
10 you the information you need to make a
11 decision like that?
12     A.   Yes.
13     Q.   What is the information they
14 normally provide you?
15     A.   Financials, existing company's
16 experience.
17     Q.   Is there anything about what
18 Joan Surles provided you that is
19 materially different than what you
20 normally would get when you are looking
21 at a potential subtenant?
22     A.   Not other than what I have
23 already mentioned.

Page 72

1  Q.  Which is that qualification by
2  the accountant?
3  A.  Yes.
4  Q.  And only that?
5  A.  That is the only thing I can
6  think of at the moment.
7  Q.  Isn't it true that most of the
8  financial statements that you review
9  contain similar qualifications?
10      MR. NOLAN:  Objection.
11 A.  I don't review them since I am
12 not the decision maker.
13 Q.  Would you be able to tell me
14 whether or not the paragraph you
15 referenced earlier appears in the
16 materials for tenants you have approved?
17 A.  I have not -- I don't recall
18 ever seeing that.
19 Q.  Are there any brokers in
20 Alabama that you have given the
21 authority to seek subtenants of any of
22 your property?
23 A.  No.  I don't have the authority

1    A.    I didn't see it, no.
2    Q.    One of the things that
Mr. Stetson told you at your meeting in
Nashville was that if Shoney's was
released from the lease, you would
accept seventy thousand; right?
7    A.    Right.
8    Q.    Did you have any understanding
as to how MAC East would have the
ability to release Shoney's from the
lease between Shoney's and the property
owner?
13   A.    Just by contacting the property
owner and convincing them to do that.
15   Q.    Had any effort been made to
your knowledge to obtain Shoney's
release from the ground lease at the
time of the assignment to MAC East in
2002?
20   A.    I don't have specific
information on that.
22   Q.    Have you had any contacts with
the owners of that property?

Page 103

1   East for that cost?
2      A.   First, yes.
3      Q.   As long as MAC East was
4   financially able to bear the
5   responsibilities under the assignment,
6   Shoney's would have no additional
7   exposure from the operations of a
8   subtenant of MAC East; correct?
9      A.   Right.
10     Q.   As we sit here today, Shoney's
11  has no information that indicates that
12  MAC East's financial capabilities are
13  any different than when Shoney's
14  approved MAC East as a subtenant?
15     A.   That's correct, to the best of
16  my knowledge.
17     Q.   In fact, MAC East's financial
18  responsibilities were not even a factor
19  in any decision process relating to City
20  Cafe Diner?
21     A.   Not that I am aware of.
22     Q.   And it is a fact that a
23  commercial structure that remains vacant