IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MAC East, LLC,<br>an Alabama Limited Liability<br>Corporation,<br><br>    PLAINTIFF,<br><br>vs.<br><br>SHONEY'S LLC.,<br>a Tennessee limited<br>liability company,<br><br>    DEFENDANT. | CASE NO. 2:05-cv-1038-MEF |

**PLAINTIFF MAC EAST, LLC'S BRIEF IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

In support of its Motion for Partial Summary Judgment, Plaintiff MAC East, LLC ("Mac") submits the following:

**Introduction**

On September 20, 2005, Plaintiff Mac filed this action in Montgomery County Circuit Court against Defendant Shoney's LLC ("Shoney's")[1] alleging that Defendant breached its contract with the Plaintiff and that Defendant intentionally interfered with the business relations of the Plaintiff. The case was removed to this

---

[1] The original Complaint mistakenly identified the Defendant as "Shoney's Inc., a Tennessee corporation." Mac filed a motion for leave to amend the Complaint with this Court on April 17, 2006, to correct the misidentification. (Doc. 12)

Court on October 28, 2005. The Complaint also seeks a declaratory judgment from this Court that Defendant Shoney's had no right to require payments for assent to subtenants who are otherwise commercially reasonable tenants.

There are no genuine issues of material fact as to liability on these matters, and Plaintiff Mac is entitled to judgment as a matter of law. Therefore, the only remaining issue to be decided is the amount of damages recoverable, an issue to be determined by a jury.

## Statement of Undisputed Facts

In 1979, Shoney's purchased a lease for the premises currently known as 805 Eastern Bypass, Montgomery, Alabama, 36117 (the "Subject Property"). Answer, Doc. 2, ¶3. The original lease term was 20 years, with four successive options to renew for additional terms of 5 years each. Doc. 2, ¶6. The lease is still in effect. *Id*. The lease allowed any lawful use of the Subject Property. Doc. 2, ¶4. Shoney's constructed and operated a restaurant on the Subject Property for several years. Doc. 2, ¶5.

In 2002, Shoney's assigned its right, title, and interest in the lease to Mac. Doc. 2, ¶7; Exh. A. At the closing, the net proceeds paid to Shoney's totaled $140,351.99. Doc. 2, ¶10. Paragraph 19 of the assignment requires the written consent of Shoney's for Mac to enter into any assignment or sublease of the Subject Property. Doc. 2, ¶8.

On April 18, 2005, City Café Diners ("City Café") signed a proposal to sublease the Subject Property from Mac. Exh. C. Prior to May 9, 2005, Mac requested from Shoney's what information Shoney's would require to evaluate City Café as a subtenant of Mac. Doc. 2, ¶15. On May 9, 2005, Mac sent Shoney's a copy of the signed proposal as well as other relevant information regarding City Café, including copies of photographs of similar operations, financial statements, and income statements. Doc. 2, ¶19. Shoney's did not ask for any information from Mac regarding City Café that it did not receive. Exh. B, 8:16-8:19. In addition, Shoney's does not generally require any other information from its brokers regarding prospective tenants that it did not receive from Mac regarding City Café. Exh. B, 71:17-72:6.

At no time did Shoney's communicate to Mac any objection to the suitability of City Café as a suitable subtenant of the subject property. Doc. 2, ¶24. However, on or about July 27, 2005, Shoney's informed Mac that it would consent to the sublease to City Café only on the condition that Mac pay Shoney's an additional $70,000 if Shoney's was released from the lease or $90,000 if Shoney's was not released from its obligations under the lease. Exh. D; Exh. B, 49:4-49:18. No explanation was given as to how these figures were calculated. Exh. B, 48:17-48:23.

Mac did not have the authority to release Shoney's from its obligations under the 1979 lease. Exh. B, 84:8-84:18. In addition, by virtue of the 2002 assignment, Mac would remain responsible for the payment of rental amounts and performance of other obligations under the lease if a subtenant failed to do so. Doc. 2, ¶21.[2] Shoney's did not believe, nor was there any indication, that Mac was in any different financial position in 2005 than it had been when the assignment was originally made between Shoney's and Mac in 2002. Exh. B, 57:1-57:13; 103:10-103:16. Mac's legal counsel communicated to Shoney's that it had no legal or contractual right under the assignment to demand additional payments in exchange for approval of a sublease to a commercially suitable subtenant of Mac. Doc. 2, ¶25. However, Shoney's did not change its position, and Mac filed this suit in September 2005. Complaint, Exh. A to Notice of Removal, Doc. 1.

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the

---

[2] Paragraph 19 of the assignment states, in relevant part, that "in no case shall…an assignment or sublease relieve Assignee of its obligations hereunder, and Assignee and the entity with which Assignee may enter into an assignment or sublease shall be jointly and severally liable for the obligations under this Assignment and the Lease." Exh. A.

motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *see also* Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. *See* Fed. R. Civ. Pro. 56(e).

The court's role at the summary judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 105 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

## Breach of Contract

The Complaint's first cause of action arises out of the 2002 agreement between Mac and Shoney's. Specifically, Mac submits that Shoney's breached the terms of the lease by requiring the payment of additional sums as a condition to approval of City Café as a subtenant.

To establish a prima facie case for breach of contract, a plaintiff must demonstrate: (1) the existence of a valid contract binding the parties in this action, (2) their own performance under the contract, (3) the defendant's nonperformance and (4) damages. *See* Cong. Life Ins. Co. v. Barstow, 799 So. 2d 931, 937 (Ala. 2001). It is undisputed that a valid contract existed between Mac and Shoney's. Doc. 2, ¶7. The only aspect of the contract that is at issue is whether, under the terms of the 2002 assignment, Shoney's could require the payment of additional sums as a condition to approval of a subtenant. The provision pertaining to the approval of a subtenant states as follows:

> Assignee shall not enter into any assignment or sublease of any portion of the Property or the improvements thereon without the prior written consent of Assignor (and Lessor, if required by the Lease), which Assignor may withhold in its sole discretion.

Exh. A, ¶ 19.

It is likely that Shoney's will argue that the "sole discretion" provided under the agreement allows it to withhold approval of a subtenant for any reason (or no reason). As discussed in more detail below, however, Shoney's decision to withhold approval must be reasonable; in addition, the law does not permit Shoney's to condition its approval on the payment of additional money. Moreover, if Shoney's "sole discretion" could be exercised without limitation, Mac's right to sublease the assignment would be "virtually nullified." *See* Logan v. 3750 North

Lake Shore Drive, Inc., 308 N.E.2d 278, 282 (Ill. App. 1974) ("If [lessor] may arbitrarily and unreasonably refuse to approve a sublease, plaintiff's right to sublet is virtually nullified").

Even if Shoney's had a legal right to demand additional payments in exchange for approval of a sublease – which Mac adamantly denies – it did not have a contractual right to do so. The contract provision permits discretion but not payment of additional sums. Thus, Shoney's may, according to the agreement, exercise discretion in determining whether a prospective subtenant would be a suitable candidate. However, the unambiguous terms of the agreement do not provide for the additional payment of money in exchange for approval of a subtenant. This is further evidenced by the fact that Shoney's has provided no basis for how the $70,000 and $90,000 figures were calculated. Power depo., 48:17-48:23. In a strikingly similar case, the Supreme Court of New York stated:

> The plaintiffs entered into a lease with the defendant landlords for a store located in a shopping center which provided that consent of the landlord was required for the assignment of the lease, but the required consent could not be withheld unreasonably. The defendants demanded a fee as a condition precedent to granting their consent. However, the lease did not provide for such a fee. In view of the foregoing, the Supreme Court properly concluded that the defendants unreasonably withheld their consent to the proposed assignment of the lease.

Giordano v. Miller, 733 N.Y.S.2d 94 (App. Div. 2d Dep't 2001).

7

Based on the foregoing, Shoney's breached the terms of the 2002 agreement by requiring the payment of additional sums as a condition to approval of City Café as a subtenant.

### Intentional Interference with Business Relations

Count Two of the Complaint alleges that Shoney's intentionally interfered with the contractual relationship between Mac and City Café. To establish the tort of interference with contractual or business relations under Alabama law, a plaintiff must prove: 1) the existence of a contract or business relation, 2) the defendant's knowledge of the contract or business relation, 3) intentional interference with the contract or business relation, and 4) damage to the plaintiff as a result of the interference.[3] *See* Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc., 990 F.2d 598, 603 n8 (11th Cir. 1993).

It is undisputed that Shoney's knew that there was a relationship (or at least a potential relationship) between Mac and City Café and that Shoney's was furnished the terms of that relationship. This is evidenced by Shoney's

---

[3] In Century 21 Academy Realty, Inc. v. Breland, the Alabama Supreme Court concluded that, although it previously had listed justification as an element of this tort, "we recognize today that it is illogical to continue to list an absence of justification as one of the elements of the plaintiff's cause of action and then place the burden on the defendant to disprove it." 571 So. 2d 296, 298 (Ala. 1990). The Court has reiterated in numerous decisions that justification for the interference is an affirmative defense that has to be pleaded and proved by the defendant. *See*, *e.g.*, Tom's Foods, Inc., v. Carn, 896 So. 2d 443, 454 (Ala. 2004); Parsons v. Aaron, 849 So. 2d 932, 946 (Ala. 2002); BellSouth Mobility, Inc., v. Cellulink, Inc., 814 So. 2d 203, 212 n.5 (Ala. 2001); Pegram v. Hebding, 667 So. 2d 696, 701 (Ala. 1995). Shoney's failed to plead justification as an affirmative defense in either its Answer (Doc. 2) or its Amended Answer (Doc. 11).

acknowledgment that it received the information sent by Mac on May 9, 2005, and Shoney's response that it would approve the City Café sublease in exchange for the payment of additional sums. Exh. D, pgs. 2-3. "Relations protected against intentional interference include any prospective contractual relations, if the potential contract would be of pecuniary value to the plaintiff." Teitel v. Wal-Mart Stores, Inc., 287 F. Supp. 2d 1268, 1280 (M.D. Ala. 2003). Moreover, expressly included within the scope of protected relations are "interferences with the opportunity of selling or buying land." *Id*.

The undisputed evidence also shows that Shoney's intentionally interfered with the relationship between Mac and City Café. Shoney's knew that, under the 2002 agreement, Mac would be required to obtain the written consent of Shoney's before Mac could enter into a sublease of the Subject Property with City Café. Shoney's used this contractual provision as a means for extorting additional payment from Mac.

Based on the foregoing, Shoney's intentionally interfered with the contractual relationship between Mac and City Café.

## Declaratory Judgment

Shoney's contends that the 2002 assignment between itself and Mac allows it to require payment from Mac as a condition for approval of a sublease on the Subject Property by Mac. Doc. 2, ¶39. Mac has requested a declaratory judgment

9

from this Court concerning the ability of Shoney's to require payments from Mac in order to obtain approval for commercially reasonable subtenants of the Subject Property.[4]  Specifically, Mac submits that Shoney's has no contractual or legal right to require payments for assent to subtenants who are otherwise commercially reasonable tenants for the Subject Property.

"Under Alabama law, 'a landlord may not unreasonably and capriciously withhold his consent to a sublease agreement.'"  Chrysler Capital Corp. v. Lavender, 934 F.2d 290, 293 (11th Cir. 1991), *citing* Homa-Goff Interiors, Inc. v. Cowden, 350 So. 2d 1035, 1038 (Ala. 1977).  Homa-Goff Interiors concerned a commercial lease that contained a clause restricting the lessee's power to sublet without the landlord's written consent.  The Court held that, even where the lease included an approval clause, a landlord may not unreasonably and capriciously withhold his consent to a sublease agreement.  The Court added that the landlord's rejection should be judged under a test applying a reasonable commercial standard.  The financial statements and other relevant documents pertaining to City Café, which were evaluated by Mac and sent to Shoney's for its evaluation, show that City Café was a viable entity for a commercial lease of property for the purpose of running a restaurant.  Exh. E, pg. 2.

---

[4] Mac has also requested that this Court award attorneys' fees and costs of suit with respect to its declaratory judgment cause of action.  Complaint, Exh. A to Notice of Removal, Doc. 1.

Numerous courts have held that requiring payment of additional sums as a condition precedent to granting approval of a subtenant is unreasonable. *See*, *e.g.*, Norville v. Carr-Gottstein Foods Co., 84 P.3d 996, 1001 (Alaska 2004) ("It is not reasonable for a landlord to deny consent to a sublease in order to charge a higher rent than he originally contracted for"); Golf Management Co. v. Evening Tides Waterbeds, Inc., 572 N.E.2d 1000, 1004 (Ill. App. 1991) (holding that refusal to consent to sublease was unreasonable based, in part, on evidence that consent was conditioned only upon payment of rent at more than twice the existing rate); Natural Kitchen, Inc. v. American Transworld Corp., 449 So 2d 855 (Fla. App. 1984) (finding that landlord could not reasonably require as condition of its consent that new lessee agree to pay additional amounts for electrical usage under disputed provision of lease); Funk v. Funk, 633 P2d 586 (Ida. 1981) (affirming summary judgment for lessees, noting that lessors' refusal to consent to sublease was based on their desire to enter into an entirely new lease agreement with substantially increased financial benefits to the lessors).

Therefore, Mac requests that this Court enter judgment declaring that Shoney's has no contractual or legal right to require payments for assent to subtenants who are otherwise commercially reasonable tenants for the Subject Property. *See* Logan, *supra*, 308 N.E.2d at 283 (concluding that tenant's evidence established a prima facie cause of action for declaratory relief and for an award of

11

damages since it supported the claim that lessor's refusal to consent to proposed sublease was arbitrary and unreasonable).

## **Conclusion**

The issues presented in this motion are pure questions of law which are ripe for resolution. Based on the foregoing reasons, Plaintiff Mac respectfully requests that the Court GRANT its Motion for Partial Summary Judgment.

                                                 */s/ Bethany L. Bolger*
                                                 Dennis R. Bailey (744845)
                                                 Bethany L. Bolger (6740E60B)
                                                 Attorneys for Plaintiff MAC East, LLC.

Of counsel:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270
(334) 206-3234 (phone)
(334) 481-0031 (fax)
drb@rsjg.com (e-mail)

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing through the ECMF system which will serve a copy of the foregoing document upon the following counsel of record on this the 18th day of April 2006.

>Mr. James N. Nolan
>Mr. Paul O. Woodall, Jr.
>Walston, Wells & Birchall, LLP
>1819 Fifth Avenue North
>Suite 1100
>Birmingham, Alabama   35203

>__/s/ Bethany L. Bolger_____
>Of counsel