## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| MAC EAST, LLC,<br>an Alabama Limited Liability<br>Corporation, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | CIVIL ACTION NO.:<br>2:05-CV-1038(F) |
| SHONEY'S, INC.,<br>a Tennessee Corporation, | ) <br> ) <br> ) <br> ) | |
| Defendant. | ) | |

### DEFENDANT SHONEY'S, LLC'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION TO PLAINTIFF, MAC EAST, LLC

COMES NOW Shoney's, LLC ("Shoney's"), a Tennessee limited liability company, as successor-in-interest to Shoney's, Inc., pursuant to Federal Rules of Civil Procedure 33 and 34, hereby requests Plaintiff **MAC East, LLC**, to respond to the following interrogatories, requests for production and requests for admission, within the time prescribed by law.

### DEFINITIONS

In these interrogatories, requests for production and requests for admission, the following terms shall have the following meanings ascribed to them:

1.     "Assignment" means the Assignment referred to in the Complaint, a copy of which is attached hereto as Exhibit A.

2.     "City Café" has the meaning ascribed to it in your Complaint.

3.    "Communication" means any communication of any nature whatsoever, including, but not limited to, any correspondence, letter, facsimile, email, note, telephone conversation, face-to-face discussion, whether any of the foregoing are oral, written, electronic or in any other medium.

4.    "Documents" is used in its broadest possible sense, and shall include, without limitation, any written, printed, typed, recorded, or other graphic matter of every kind and nature; all mechanical and electrical video and sound recordings and any transcripts thereof; photographs or drawings; and all computer data files in your possession, custody, and/or control, or known by you to exist.   This definition of "document" includes, without limitation, agreements, contracts, writings, correspondence, reports, print-outs, memoranda, summaries, analyses, stenographic or handwritten notes, diaries, newspapers, periodicals, files, minutes or transcripts of proceedings, instructions, orders, reports, records, papers, bills or invoices, books of account, ledgers, checks, receipts, diaries or calendars, journals, data of every description relating to the transaction or event in question and all preliminary drafts of documents, all copies of documents, all marginal or other notes on documents or copies thereof, all file folders, and all labels or markings indicating the manner in which the documents have been maintained.

5.    "Identify" shall mean, when used with respect to an individual, to state his or her full name, address, current or last known place of employment, and telephone number; when used with respect to a document, "identify" shall mean to state the full name of the person who prepared it, the full name of the person(s) to whom it was addressed or for whom it was intended, the date of its preparation, its current location, and the substance of its contents with enough particularity to enable it to be identified.

6.    "MAC" means MAC East, LLC.

7.    "Person" means both an individual or a business entity.

8.    "Shoney's" shall mean Shoney's, Inc., and its successor-in-interest, Shoney's LLC, and their current or former members, managers, officers, directors, employees and agents, including, but not limited to, its and their attorneys.

9.    "Subject Property" shall mean Lot "G" according to the Map of Carol Villa Commercial Subdivision Plat No. 6, as said Map appears of record in the Office of the Judge of Probate of Montgomery County, Alabama in Plat Book 29, at Page 125, and described in your Complaint as the "Subject Property."

10.    "You," "your," and "yours" shall mean MAC, and its current or former members, managers, officers, directors, employees and agents, including, but not limited to, its and their attorneys.

## INSTRUCTIONS

1.    Pursuant to Rule 26(e), Fed. R. Civ. P., these interrogatories, requests for production and requests for admission are to be deemed continuing requests requiring the production of additional information and documents by you if, as, and when any additional or supplemental document relative to any request becomes known or available or comes into the possession, custody, or control of you or your counsel.

2.    If you claim a privilege not to produce information or a document, identify each document as to which the privilege is claimed, the nature of the privilege, and the legal and factual basis for each such claim.

3.    If you refuse to produce a document or documents on the grounds that it is unduly burdensome, identify the documents needed to be searched, the location of the documents, and identify each person that must be consulted.

3

4.    Any items which are requested to be produced, refers to those items which are in your possession, under your control or to which you have access.

## INTERROGATORIES

1.    Identify the individual responding to these interrogatories on MAC's behalf and all individuals from whom information was obtained in responding to these interrogatories.

2.    Identify each individual having any knowledge of any of the matters alleged or described in your Complaint.

3.    Identify the owners of City Café.

4.    Identify each person with whom you have had any communications during the period of time from the date of the Assignment to the present with respect to subleasing the Subject Property, other than City Café.

5.    Identify each individual working for City Café or its affiliates with whom you have had communications.

6.    Identify the full legal name of City Café (i.e., the legal entity to which MAC proposed to sublease the Subject Property).

7.    Identify the State of incorporation or organization of the legal entity described in paragraph 6 just above.

8.    Describe MAC's business, and each of the different lines of business in which it engages, if applicable.

9.    Has the Subject Property ever been occupied for business (whether yours or someone else's) from the date of the Assignment to the present?

10.    If the answer to the previous interrogatory was yes, please identify all such persons who have occupied the Subject Property for business during such period of time.

4

11.    Who is the individual or individuals who at any time has (or have) been primarily responsible for marketing or subleasing the Subject Property on MAC's behalf?

12.    Provide a listing of any other lawsuits that MAC has been involved in within the past five (5) years, whether as a plaintiff or defendant, (including the forum of such suit).

13.    Identify the primary attorney, if any, who represented MAC in the preparation or negotiation of the Assignment.

14.    Please state each and every fact which you claim supports the allegation in the Complaint that "in 2005 MAC reached an agreement with City Café to sublease the Subject Property with the intention of operating a restaurant."

15.    Please state each and every fact which you claim supports your allegation in the Complaint that "the ownership of City Café is comprised of high-quality restaurant operators with an established track record."

16.    Identify the individuals who were party to the communications referred to in Paragraph 23 of the Complaint.

17.    Please state each and every fact which you claim supports your allegation in the Complaint that Shoney's "intentionally interfered with the contractual relationship between Plaintiff and City Café."

18.    Please state each and every fact which you claim supports your allegation in the Complaint that MAC "entered into a contractual relationship with City Café."

19.    Please state each and every fact which you claim supports your allegation in the Complaint that "the leases on the Subject Property allow the prevailing party to recover attorney's fees."

20.     Identify and describe in detail any and all logs, notes, memoranda, or other records produced, generated, kept, or maintained by you and pertaining in any way to your communications with Shoney's from January 1, 2001 to present.

21.     Identify and describe in detail any and all logs, notes, memoranda, or other records produced, generated, kept, or maintained by you and pertaining in any way to your communications with City Café from January 1, 2004 to present.

22.     Identify and describe any and all logs, notes, memoranda, or other records produced, generated, kept, or maintained by you and pertaining in any way to any efforts to sublease the Property to City Café or to any other proposed subtenant.

23.     Identify and describe each and every communication that you had with City Cafe, including its employees, owners, officers, directors, shareholders, partners, members, managers, agents or representatives.

24.     Identify each person you expect to call as an expert witness at the trial of this case and the education and experience that you contend qualifies him or her as an expert.

25.     Please state and describe the subject matter upon which each person named in response to the previous interrogatory is expected to testify at the trial of this case.

## REQUESTS FOR PRODUCTION

1.     Produce all documents that pertain in any way to the allegations in your Complaint.

2.     Produce all documents referring, relating, or pertaining in any way to Shoney's, including, but not limited to, every document pertaining to or reflecting any communication received from or addressed to Shoney's.

3.    Produce all documents which contain, evidence, or pertain in any way to any statement or representation concerning or relating to the facts of this case which has been made to you by Shoney's (or agents or representatives of Shoney's).

4.    Produce all documents which contain, evidence, or pertain in any way to any statement or representation concerning or relating to the facts of this case which has been made to you by any non-party, including, but not limited to, City Café or its employees, owners, officers, directors, shareholders, partners, members, managers, agents or representatives.

5.    Produce copies of every document which contains, evidences, or pertains in any way to any statement or representation concerning or relating to the facts of this case which you have made to any person.

6.    Produce copies of every document pertaining to, referencing, or evidencing any acts or omissions of any person, including, but not limited to, Shoney's, which you contend or believe caused the damages you allege in your Complaint.

7.    Produce copies of every document identified in your responses to the interrogatories propounded by Shoney's in this action.

8.    Produce copies of every document identified in your Initial Disclosures previously delivered to Shoney's in this action.

9.    Produce copies of every document to which you, or your agents, referred or on which you relied in responding to the interrogatories propounded by Shoney's in this action.

10.    Produce copies of every document upon which you rely to support your claims against Shoney's in this case.

11.    Produce a copy or reproduction of any photographs, any audio recording, any video recording and/or any audio/visual recording which in any way depicts or evidences the things and circumstances made the basis of this lawsuit.

12.    Produce a copy of the signed proposal dated April 18, 2005 referred to in Paragraph 11 of the Complaint.

13.    Produce provide copies of all drafts, whether signed or unsigned, of the proposed sublease agreement between MAC and City Café, together with the date submitted or received, as applicable.

14.    Produce a copy of any executed sublease between you and City Café.

15.    Produce any documents that reflect, refer or relate to City Café or its owners, which have not otherwise been provided.

16.    Produce any documents that reflect, refer or relate to the property the subject of this lawsuit, the Assignment or the Lease, which have not otherwise been provided.

17.    Produce a copy of any title commitment, title policy, title search, or abstract of title relating to the Subject Property.

18.    Produce copies of all written communications in any form (whether paper copy, facsimile, email, computer disc or otherwise) to or from City Café or any employee, owner, officer, director, shareholder, partner, member, manager, agent or representative thereof at any time.

19.    Produce copies of any other document, instrument, agreement and/or contract which in any way reflects, refers, relates or evidences the facts and circumstances which form the basis of your Complaint.

20.    Produce copies of all documents in this lawsuit given to or received from Shoney's.

21.    Produce a copy of any recording of the voice of any party or any employee or representative of any party in this lawsuit.

22.    Produce any and all communications between you and Shoney's, between you and City Café Diner, or between you and the primary landlords under the Lease at any time after January 1, 2001.

23.    Produce copies of any and all documents that tend in any way, whether directly or indirectly, to support your allegation in the Complaint that "in 2005 MAC reached an agreement with City Café to sublease the Subject Property with the intention of operating a restaurant."

24.    Produce copies of any and all documents that tend in any way, whether directly or indirectly, to support your allegation in the Complaint that "the ownership of City Café is comprised of high-quality restaurant operators with an established track record."

25.    Produce copies of any and all documents that tend in any way, whether directly or indirectly, to support your allegation in the Complaint that Shoney's "intentionally interfered with the contractual relationship between Plaintiff and City Café."

26.    Produce copies of any and all documents that tend in any way, whether directly or indirectly, to support your allegation in the Complaint that MAC "entered into a contractual relationship with City Café."

27.    Produce copies of any and all documents that tend in any way, whether directly or indirectly, to support your allegation in the Complaint that "the leases on the Subject Property allow the prevailing party to recover attorney's fees."

28.    Produce the curriculum vitae of all persons identified by you as experts who may be called to testify by you at the trial of this action and of all persons identified by you as an expert whose work product was reviewed by or formed the basis for the testimony of any testifying expert.

29.    Produce all documents relating to this action produced by any expert witness you may call to testify at the trial of this action and all documents upon which such expert(s) will rely or that form the basis of any of his or her opinions in this action.

30.    Produce any and all correspondence between each and every expert witness that you expect to call to testify at the trial of this cause and you, your counsel or any other agent or representative of yours.

31.    Produce a copy of MAC's annual report required to be filed with the Alabama Department of Revenue each year to maintain good standing, for the years 2002 through the present.

### REQUESTS FOR ADMISSION

1.    Do you admit that the document attached hereto as Exhibit A is a true and correct copy of the Assignment referred to in your Complaint?

2.    Do you admit that the Assignment, as originally executed, contains the following sentence in Section 19 thereof:

> "Assignee shall not enter into any assignment or sublease of any portion of the Property or the improvements thereon without the prior written consent of Assignor (and Lessor, if required by the Lease), which Assignor may withhold in its sole discretion."

_Paul O. Woodall, Jr._
Paul O. Woodall, Jr.
Middle District I.D. No. ASB-4297-O59P

James N. Nolan
Middle District I.D. No. ASB-6012-N61J

Attorneys for Defendant

OF COUNSEL:
**WALSTON, WELLS & BIRCHALL, LLP**
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone: (205) 244-5200
Telecopier: (205) 244-5400

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2006, a copy of Defendant Shoney's, LLC's First Set of Interrogatories, Requests for Production and Requests for Admission to Plaintiff, Mac East, LLC was forwarded via United States Mail, postage prepaid, to the following:

Dennis R. Bailey, Esq.
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270

_Paul O. Woodall_
OF COUNSEL

11

EXHIBIT A

ORIGINAL    **FILE COPY**

Shoney's #1270
805 Eastern Bypass
Montgomery, Alabama

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (the "Assignment") dated February 20, 2002, (the "Effective Date"), by and between **Shoney's, Inc.** (successor in interest to TPI Restaurants, Inc., formerly known as Shoney's South, Inc.), a Tennessee corporation, doing business at 1727 Elm Hill Pike, Nashville, Tennessee 37210 (the "Assignor"), and **MAC East, LLC**, an Alabama limited liability company, with its principal place of business located at 2777 Zelda Road, Montgomery, Alabama 36106 (the "Assignee").

### WITNESSETH:

**WHEREAS**, Assignor leases certain property municipally known as 805 Eastern Bypass, Montgomery, Alabama (the "Property"), which is more particularly described in that certain Lease dated April 13, 1979 by and between Wylie P. Johnson and wife, Lurene H. Johnson (collectively, the "Landlord") and Assignor, a copy of which is attached hereto as **Exhibit "A"** and incorporated herein by reference (the "Lease"), upon which Assignor formerly operated a restaurant, together with the rights, privileges and easements appurtenant thereto; and

**WHEREAS**, Assignor wishes to assign all of its right, title and interest in and to the Lease to Assignee (except as otherwise provided herein), and Assignee wishes to accept such assignment and to assume the liabilities, duties and obligations of Assignor under the Lease as set forth herein;

**NOW, THEREFORE**, for valuable consideration and the mutual covenants herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1.     (a) Except as otherwise provided herein, Assignor hereby assigns all of its right, title and interest in and to the Lease to Assignee. Assignee hereby accepts such assignment and assumes, effective as of February 20, 2002 (the "Effective Date"), for the benefit of Landlord and Lessee, the payment of the rent payable to Landlordfirst arising from and after the Effective Date, and the performance of all liabilities first arising from and after the Effective Date, and each and every duty and obligation as the lessee under the Lease first arising from and after the Effective Date, and hereby agrees to be bound by all of the covenants, agreements, terms, provisions and conditions of the Lease on the part of the lessee thereunder to be performed or observed first arising from and after the Effective Date, including, without limitation, the restrictions and limitations set forth in the Lease with respect to the permissible uses of the Property.

This Assignment does not include the sale or transfer, or the right of Assignee or the permission of Assignor to use, any of Assignor's names, service marks, trademarks, trade names, logos, symbols, indicia or other forms of advertising used in connection with the operation of a

Shoney's restaurant (collectively, the "Shoney's Identification") or of any goodwill associated therewith.

(b) During the term of the Lease (as described in Paragraph 4 of the Lease), Assignee shall pay, without offset or other deduction, to Landlord as is required pursuant to Paragraph 4 of the Lease (the "Minimum Rent"), each payment of which shall be payable to Landlord on the first day of a month, according to the rent schedule set forth in Paragraph 4 of the Lease. Assignee shall also pay all other sums payable by the lessee under the Lease from and after the Effective Date, including, without limitation, taxes, insurance and all costs and expenses of every kind and nature relating to the use and operation of the Property and the improvements located thereon.

2.    Assignor's leasehold estate established by the Lease is hereby assigned to Assignee, and assumed by Assignee, subject to real estate taxes and assessments, both general and special, for the current year and subsequent years; any state of facts that would be disclosed by an accurate survey or independent inspection of the Property (and the improvements thereon); any and all leases, easements, rights-of-way, encumbrances, conditions, covenants, restrictions, reservations and exceptions affecting the Property; any security interests arising under the Lease or by operation of law; and all applicable building and zoning ordinances, laws, regulations and restrictions by municipal or other governmental authority. EXCEPT AS OTHERWISE SET FORTH IN SECTION 11 OF THE ASSET SALE AGREEMENT DATED September 28, 2001, BETWEEN ASSIGNOR AND ASSIGNEE, ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE CONDITION OF THE PROPERTY (OR THE IMPROVEMENTS LOCATED ON THE PROPERTY), INCLUDING, WITHOUT LIMITATION, THE HABITABILITY, CONDITION OR FITNESS THEREOF FOR ANY PARTICULAR USE OR PURPOSE. ASSIGNEE AGREES THAT THE PROPERTY (AND THE IMPROVEMENTS LOCATED ON THE PROPERTY) ARE ACCEPTED BY ASSIGNEE IN AN "AS-IS, WHERE-IS AND WITH ALL FAULTS" CONDITION. Notwithstanding any reference to acreage or square footage contained in the description of the Property, Assignor hereby expressly disclaims any representation or warranty, express or implied, as to the exact amount of acreage or square footage in the Property. Assignor further expressly disclaims any representation or warranty, express or implied, with respect to the ownership of the oil, gas or other minerals located on, under or within the Property.

3.    Upon the expiration of the term of the Lease, or upon the termination of the Assignee's right to possession of the Property pursuant to the Lease or this Assignment, Assignee will at once surrender and deliver up to the Property and the Leasehold Improvements, together with all improvements thereon, to Landlord or Assignor (at Assignor's direction) in good condition and repair, reasonable wear and tear excepted; conditions existing because of Assignee's failure to perform maintenance, repairs or replacements as required of Assignee under the Lease shall not be deemed "reasonable wear and tear." Said improvements shall include all plumbing, lighting, electrical, heating, cooling and ventilating fixtures and equipment

and other articles of personal property used in the operation of the Property (as distinguished from operations incident to the business of Assignee). Assignee shall surrender to Landlord or Assignor (at Assignor's direction) all keys to the Property and make known to Landlord and Assignor the combination of all combination locks which Assignee is permitted to leave on the Property. All alterations in or upon the Property made by Assignee shall become a part of and shall remain upon the Property upon such termination without compensation, allowance or credit to Assignee; provided, however, that Assignor shall have the right to require Assignee to remove any alterations made by Assignee, or portion thereof. Said right shall be exercisable by Assignor's giving written notice thereof to Assignee on or before thirty (30) days prior to such expiration or on or before twenty (20) days after such termination. Assignee shall also remove any alterations made by Assignee, or portion thereof, which Landlord may require Assignor to remove, pursuant to the terms of the Lease. In any such event, Assignee shall restore the Property to its condition prior to the making of such alteration, repairing any damage occasioned by such removal or restoration. If Assignor or Landlord requires removal of any alteration made by Assignee, or a portion thereof, and Assignee does not make such removal in accordance with this paragraph, Assignor may remove the same (and repair any damage occasioned thereby), and dispose thereof, or at its election, deliver the same to any other place of business of Assignee, or warehouse the same. Assignee shall pay the costs of such removal, repair, delivery and warehousing on demand.

4.     Assignee shall have no right to make any changes, remodelings, refurbishings, additions or alterations in and to the Property or the Leasehold Improvements except in accordance with the Lease and with the prior written consent of Assignor, which Assignor shall not unreasonably withhold. Any such changes shall comply with all applicable laws, rules and regulations, including without limitation, the Americans with Disabilities Act. Assignee shall not, under any circumstances, have the power to subject the Property to any mechanics, or materialmen's liens or other liens of any kind. Except as provided in paragraph 3 above, all changes, remodelings, refurbishings, additions or alterations to the Property shall immediately become the property of Assignor and shall remain upon and be surrendered with the Property as a part thereof at the expiration or earlier termination of the Lease

5.     Assignor, Landlord and their respective agents or representatives shall have the right to enter into and upon any part of the Property during reasonable hours to inspect the same as they may deem necessary or desirable, provided, however, that such inspections shall be performed in a manner so as not to interfere unreasonably with Assignee's conduct of business on the Property. Assignor shall give Assignee twenty-four (24) notice prior to any inspection by Assignor except in an emergency.

6.     Assignee hereby represents, warrants and covenants to Assignor that: (a) Assignee shall not treat, use, store, release or dispose of any Hazardous Material (as defined below) in, on or about the Property; (b) Assignee shall use and occupy the Property in compliance with all Environmental Laws (as hereinafter defined); (c) Assignee shall obtain all

licenses, permits and other governmental or regulatory actions necessary for Assignee's use and occupancy of the Property to comply with all Environmental Laws; and (d) Assignee shall give Assignor and Landlord prompt written notice if Assignee receives any notice with respect to a Hazardous Material (as hereinafter defined) on, from or affecting the Property. Assignee shall indemnify, defend and hold Assignor harmless from and against all losses, expenses (including, but not limited to, reasonable attorneys, fees) and claims of every kind suffered by or asserted against Assignor as a result of the failure by Assignee to comply fully with the terms and provisions of this paragraph 6; provided, however, that Assignee shall have no obligation to indemnify, defend and hold Assignor harmless with respect to any losses, expenses or claims resulting from any condition existing on the Property prior to the Effective Date. For purposes of this Assignment, "Hazardous Material" means polychlorinated biphenyls, petroleum and petroleum products, flammable explosives, radioactive materials, asbestos and any hazardous, toxic or dangerous waste, substance or material defined as such in (or for purposes of) the Environmental Laws or listed as such by the United States Environmental Protection Agency or any comparable state agency or department. "Environmental Laws" means any current or future federal, state or local governmental law, regulation or ruling applicable to environmental conditions on, under or about the Property including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act, the Resource Conservation and Recovery Act, the Superfund Amendment and Reauthorization Act of 1986, the Toxic Substances Control Act, the Clean Air Act and the Clean Water Act. ASSIGNEE ACKNOWLEDGES AND AGREES THAT ASSIGNOR SHALL HAVE NO LIABILITY OR OBLIGATION TO ASSIGNEE WHATSOEVER FOR THE PRESENCE OF ANY HAZARDOUS MATERIAL ON OR WITHIN THE PROPERTY.

7.    Assignee shall comply with all present or future applicable laws, ordinances, rules, regulations and restrictive covenants relating to the use, condition or occupancy of the Property (including, without limitation, the Americans With Disabilities Act), and with any and all easements, rights-of-way, conditions, covenants, restrictions, reservations and exceptions of record. Assignor has made no representations or warranties with respect to the Property's compliance with such matters.

8.    Assignee covenants that in its use and occupancy of the Property, it shall comply with the covenants and restrictions of the Lease that first arise from and after the Effective Date applicable to Assignor as tenant thereunder so as to not cause a default by the lessee under any provision of the Lease (a "Master Lease Default"), or cause to be done any act or thing which would, after the giving of notice or a lapse of time, or both, constitute a Master Lease Default. Assignee shall indemnify, protect, defend and hold harmless Assignor and it's "Affiliates" (as hereinafter defined) and their employees, agents, representatives, successors and assigns from and against any and all loss, cost, liability, damage or expense (including reasonable attorneys' fees) arising as a result of any breach by Assignee of any covenant set forth in this paragraph. In the event of any conflict between the obligations imposed by the Lease and the provisions hereof, as between Assignor and Assignee, the provisions of this Assignment shall govern and

prevail. Assignee's obligations under this paragraph shall survive the expiration or earlier termination of the Lease. For purposes of this Assignment, the term "Affiliate" shall mean, with respect to any person or entity, any person or entity that controls, is controlled by or is under common control with such person or entity, together with its and their respective partners, venturers, members, directors, officers, stockholders, agents and employees.

9.    In the event of a fire or other casualty affecting the Property ("Casualty"), the terms and provisions of the Lease shall control. If the Lease imposes on Assignor the obligation to repair or restore leasehold improvements or alterations, Assignee shall be responsible for repair or restoration of leasehold improvements or alterations; Assignee shall make any insurance proceeds resulting from the loss which Assignor is obligated to repair or restore available to Assignor and shall permit Assignor to enter the Property to perform the same. Assignor shall have the right to exercise the option to terminate the Lease pursuant to paragraph 10 thereof.

10.    Upon the occurrence of a Master Lease Default by Assignee, Assignor shall be entitled to the remedies granted to the Landlord in case of a default included in the Lease. Assignee acknowledges that Assignor may have remained liable under the Lease (notwithstanding this Assignment) and therefore a default under the Lease by Assignee may cause Assignor to be liable to Lessor. Therefore, the parties agree that Assignor shall also be entitled to the following additional remedies:

      i.    Assignor shall have the right to terminate this Assignment by giving written notice of termination to Assignee, in which event Assignee shall immediately surrender the Property and all improvements located thereon (collectively, the "Restaurant") to Assignor. If Assignee fails to so surrender the Restaurant, then Assignor may, without prejudice to any other remedy it has for possession of the Restaurant or arrearages in rent or other damages, re-enter and take possession of the Restaurant and expel or remove Assignee and any other person occupying the Restaurant or any part thereof, in accordance with applicable law;

      ii.    Assignor may re-enter and take possession of the Restaurant without terminating the Lease or the Assignee's obligations under this Assignment in accordance with applicable law, and relet the Restaurant. No such reletting is to be considered an acceptance of Assignee's surrender of the Restaurant unless Assignor so notifies Assignee in writing. Assignee shall be liable for all such expenses incurred in connection with such reletting including alteration and preparation of the Restaurant for new tenants, brokers commissions, attorneys fees and all other expenses incurred by Assignor in connection with same;

iii.    Assignor may cure such default by Assignee and such amount expended by Assignor in connection with such cure shall be added to rent and all other charges due by Assignee hereunder and under the Lease together with interest on such amounts at the rate of eighteen percent (18%) per annum. The self-help option is for the sole protection of Assignor, and its existence shall not release Assignee from its obligation to perform the terms, provisions, covenants and conditions herein provided to be performed by Assignee or deprive Assignor of any legal rights which it may have by reason of any such default by Assignee.

iv.    Assignor shall have any and all other rights and remedies under the law of the jurisdiction in which the Restaurant is located, including without limitation the right to accelerate rent and all other charges payable under the Lease. All remedies of Assignor shall be cumulative and concurrent. In the event of any conflict between the rights and remedies referenced herein and the rights and remedies referenced in the Lease, the rights and remedies herein shall control with respect to Assignee and Assignor. Nothing herein shall modify the rights and remedies between Landlord and Assignor with respect to the Lease.

11.    Assignor shall continue to be responsible for and shall defend, indemnify and hold Assignee harmless from and against any and all losses, liabilities, damages, injuries, penalties, fines, costs, expenses and claims of any and every kind whatsoever (including, without limitation, reasonable attorneys' fees and expenses) paid, incurred or suffered by, or asserted against, Assignee (and his heirs, successors and permitted assigns) that (a) relate to (i) the Lease, (ii) Assignor's occupancy of the Property or the improvements thereon, or (iii) Assignor's use of any appurtenances, easements, rights and privileges belonging to the Property, and (b) relate to events occurring or liabilities or obligations accruing prior to the Effective Date (except for events occurring or liabilities or obligations accruing as a result of inspections of the Property or the improvements thereon by Assignee or its agents or representatives).

12.    Assignee shall be responsible for and shall defend, indemnify and hold Assignor harmless from and against any and all losses, liabilities, damages, injuries, penalties, fines, costs, expenses and claims of any and every kind whatsoever (including, without limitation, reasonable attorneys' fees and expenses) paid, incurred or suffered by, or asserted against, Assignor (and its successors and assigns) that (A) (a) relate to (i) the Lease, (ii) Assignee's occupancy of the Property or the improvements thereon, or (iii) Assignee's use of any appurtenances, easements, rights and privileges belonging to the Property, and (b) relate to events occurring or liabilities or obligations accruing on or after the Effective Date, or (B) relate to events occurring or liabilities or obligations accruing as a result of inspections of the Property or the improvements thereon by Assignee or its agents or representatives.

13. This Assignment shall be construed and interpreted in accordance with the laws of the State in which the Property is located.

14. This Assignment shall inure to the benefit of the heirs, successors and permitted assigns of the parties hereto.

15. Assignee hereby covenants and agrees with Assignor that it shall not enter into any amendment or modification of the Lease that increases, extends or alters any liabilities, duties or obligations of the lessee under the Lease without the prior written consent of Assignor, which consent shall not be unreasonably withheld; provided, however, that if Assignor has been released, in writing, by Lessor, Assignee, and their respective successors in interest under the Lease and the Assignment, from further liability under the Lease, then Assignor's consent shall not be required. Notwithstanding the foregoing, a termination of the Lease may be entered into between Assignee and Landlord without the written consent of Assignor, as long as an effect of the termination is to relieve Assignor from any further liability under the Lease.

16. Assignee hereby covenants and agrees with Assignor that any notices required under the terms of the Lease to be given by Assignee shall be sent to Assignor at the same time and in the same manner to the address of Assignor set forth above or to such other address that Assignor may designate by written notice to Assignee in the manner set forth in the Lease. Assignee hereby covenants and agrees with Assignor to send to Assignor copies of any notices received by Assignee under the terms of the Lease immediately upon Assignee's receipt thereof to the address of Assignor set forth above or to such other address that Assignor may designate by written notice to Assignee in the manner set forth in the Lease.

17. Assignee shall cause Assignor to be named as an additional insured on its liability insurance policies to be maintained by Assignee pursuant to the Lease, and to provide to Assignor insurance certificates demonstrating compliance with the Lease and providing that such liability insurance policies shall not be canceled or modified without not less than thirty (30) days' prior written notice to Assignor. Assignee also shall cause Assignor to be named as a loss payee, as its interest may appear, on the all-risk, fire and casualty insurance policies to be maintained by Assignee pursuant to the Lease, and to provide to Assignor insurance certificates demonstrating compliance with the insurance requirements in the Lease and providing that such all-risk, fire and casualty insurance policies shall not be canceled or modified without not less than thirty (30) days' prior written notice to Assignor.

18. Assignee shall not grant a mortgage, deed of trust or other lien against Assignee's interest in the Lease or against the leasehold estate created under the Lease without the prior written consent of Assignor, which consent shall not be unreasonably withheld; provided, however, that if Assignor has been released, in writing, by Landlord, Assignee (and Lessor, if required by the Lease), and their respective successors in interest under the Lease and the Assignment, from further liability under the Lease, then Assignor's consent shall not be required.

19.    Assignee shall not enter into any assignment or sublease of any portion of the Property or the improvements thereon without the prior written consent of Assignor (and Lessor, if required by the Lease), which Assignor may withhold in its sole discretion.  Notwithstanding the foregoing, Assingee may enter into an assignment or sublease to an entity controlled by Joel D. McClinton without the consent of Assignor thereto; provided, however, that in no case shall such an assignment or sublease relieve Assignee of its obligations hereunder, and Assignee and the entity with which Assignee may enter into an assignment or sublease shall be jointly and severally liable for the obligations under this Assignment and the Lease.

20.    This Assignment may be executed in any number of counterparts, each of which shall be deemed an original hereof and all of which together shall constitute but one Assignment. In the event of any conflict between the terms of this Assignment and the terms of the Lease, the terms of this Assignment shall govern and shall be controlling.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

WITNESSES:

Print Name: _A. L. Schwarz_

Print Name: _GREEN BOGLE_

ASSIGNOR:

SHONEY'S, INC.,
a Tennessee corporation

By: _____
    Jeff Hammers
    Vice President – Real Estate

State of Tennessee
Davidson County

I, Pamela Tidwell, a Notary, in and for said County, in said State, hereby certify that Jeff Hammers whose name as Vice President – Real Estate of Shoney's, Inc., a Tennessee corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me in this day that, being informed of the contents of the conveyance, he/she, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this the 8th day of February, 2002.

Signature of Notary Public

Pamela Tidwell
Print, type or stamp commissioned name of Notary
Public; Personally known to me _____ OR
Produced Identification _____
Type of Identification Produced

_____

G:\Closed Stores\Alabama\1270-Eastern Bypass-Montgomery\K5- Assignment February 18 2002.DOC

WITNESSES:

Print Name: _Letitia R. Henson_

Print Name: _Heather Hutto_

ASSIGNEE:

MAC East, LLC
an Alabama limited liability company

By: _____
      Joel D. McClinton, Manager

State of Alabama
_Montgomery_____ County

I, _Jeffrey W. Blike Notary Public_ in and for said County, in said State, hereby certify that Joel D. McClinton whose name as Manager of MAC East, LLC, an Alabama limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me in this day that, being informed of the contents of the conveyance, he/she, as such ~~officer~~ and with full authority, executed the same voluntarily for and as the act of said ~~corporation.~~

      Given under my hand this the _20th_ day of _February_, 2002.

_____
Signature of Notary Public

_Jeffrey W. Blike_
Print, type or stamp commissioned name of Notary
Public; Personally known to me _____ OR
Produced Identification _____
Type of Identification Produced

_____

G:\Closed Stores\Alabama\1270-Eastern Bypass-Montgomery\K5- Assignment February 18 2002.DOC