## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| MAC EAST, LLC,<br>an Alabama Limited Liability<br>Corporation, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) ) | CIVIL ACTION NO.:<br>2:05-CV-1038(F) |
| | ) | |
| SHONEY'S, INC.,<br>a Tennessee Corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant SHONEY'S, LLC ("Shoney's"), a Tennessee limited

liability company, as successor-in-interest to Shoney's, Inc., and hereby files its Brief in Support

of Motion for Summary Judgment, filed contemporaneously herewith, and sets forth the

following in support thereof:

### I. SUMMARY JUDGMENT STANDARD

Summary judgments are designed to secure the just, speedy and inexpensive

determination of actions. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A party is entitled

to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Turnes v. AmSouth Bank, N.A.,* 36

F.3d 1057, 1061 (11th Cir. 1994).   The movant has the initial burden to show that there are no

genuine issues of material fact. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604,608 (11th Cir. 1991).

It is not necessary for the movant to "negate the elements of the non-movant's case." *Gunaca v. State of Texas*, 65 F.3d 467, 469 (5th Cir. 1995); *Anderson,* 477 U.S. at 256-57. Once the movant meets its burden, the nonmoving party must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. While the trial court must consider all evidence in the light most favorable to the non-movant in considering a motion for summary judgment, the court is only required to resolve reasonable doubts in the non-movant's favor; it is not required to resolve all doubts in its favor. *Earley*, 907 F.2d at 1080; *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

To defeat summary judgment, a plaintiff's evidence must be admissible or reducible to admissible form at trial. *Pritchard v. Southern Co. Services.*, 92 F.3d 1130, 1135 (11th Cir. 1996). Accordingly, a plaintiff cannot use inadmissible hearsay to defeat a motion for summary judgment where the hearsay will not be reducible to admissible form at trial. *Id.* Furthermore, the party who opposes the motion cannot rest on "[m]ere general allegations which do not reveal detailed and precise facts," *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 592 (11th Cir.), mere colorable evidence, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory statements, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), nor conjecture. The non-movant must set forth specific facts showing the existence of a genuine issue for trial. *See Kunin v. Feofanov*, 69 F.3d 59, 61 (5th Cir. 1995).

For a question of fact to be genuine, the party opposing the summary judgment motion "must do more than simply show that there is some *metaphysical doubt* as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Irby*, 44 F.3d at 953. To direct summary judgment in favor of Shoney's, the Court "must merely find that there

2

is not *substantial* evidence opposed to [its] position." *Jones v. Miles Laboratories, Inc.*, 887 F.2d 1576, 1578 (11th Cir. 1989) (emphasis in original). The mere existence of an alleged factual dispute or conflict of evidence will not defeat an otherwise properly supported motion-- instead, the evidence must be of such quality that "a reasonable jury could return a verdict for the non-moving party . . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50; *see also*, *Earley*, 907 F.2d at 1080; *Lechuga v. Southern Pacific Trans. Co.,* 949 F.2d 790, 794 (5th Cir. 1992).

As set forth below, Shoney's will demonstrate that the application of relevant law to the facts in this case supports entry of summary judgment upon all claims asserted against it by the plaintiff.

## II. SUPPORTING EVIDENTIARY DOCUMENTS

The supporting documents attached to Shoney's Motion for Summary Judgment filed contemporaneously herewith, are hereby incorporated herein by reference. Defined terms used therein shall have the same meaning herein.

## III. PLAINTIFF'S ASSERTIONS

The plaintiff, Mac East, LLC ("Mac East"), asserts claims for (i) breach of contract, (ii) intentional interference with contractual relations, and (iii) request for declaratory judgment. *See* Mac East's Complaint, pages 5-7, ¶ 29-40. Specifically, Mac East alleges the following facts:

1)    That Shoney's was a tenant under a lease dated April 13, 1979 (the "Lease") for the property known as 805 Eastern Bypass in Montgomery, Alabama (the "Property"). *See* Mac East's Complaint, page 1, ¶ 3.

2)      That in 2002, Mac East purchased Shoney's interest in the Lease, as evidenced by that certain Assignment and Assumption of Lease Agreement dated February 20, 2002 (the "Assignment"). *See* Mac East's Complaint, page 2, ¶ 7.

3)      That the "Assignment requires the written consent of Shoney's for [Mac East] to enter into any assignment or sublease" with respect to the Property. *See* Mac East's Complaint, page 2, ¶ 8.

4)      That Mac East reached an agreement with City Café Diners ("City Café") to sublease the Property to City Cafe. *See* Mac East's Complaint, page 3, ¶ 12.

5)      That Shoney's informed Mac East that Shoney's would consent to the sublease with City Café, but only upon payment of a cash sum of money to Shoney's. *See* Mac East's Complaint, page 4, ¶ 23.

6)      That "Shoney's failed or refused to grant unconditional approval of City Café solely because [Mac East] refused to pay additional sums to Shoney's for said approval." *See* Mac East's Complaint, page 5, ¶ 27.

In sum, the essence of Mac East's claims is that Shoney's refused to consent to a proposed sublease arrangement between Mac East and City Café. Mac East is claiming that this refusal to consent by Shoney's is both a breach of contract (the contract being the Assignment between Shoney's and Mac East) and an intentional interference in the contractual relationship between Mac East and City Café. Mac East is also asking for a declaratory judgment as to whether Shoney's has a right to require additional payments as a condition to granting approval to sublease the Property.

## IV.  ARGUMENTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### A. Summary of Shoney's Position.

This is a case about freedom of contract.  More specifically, this case is about the meaning and effect given to one clause in a contract.  Mac East has admitted that attached to Shoney's First Discovery Request as Exhibit A is a true and correct copy of the Assignment. *See* Shoney's First Discovery Request, page 10, ¶ 1 (together with Exhibit A attached thereto).  *See also* Mac East's Responses to Discovery, page 19, ¶ 1.  Further, Mac East admitted that the Assignment between Shoney's and Mac East contains the following sentence in Section 19 thereof:

> Assignee shall not enter into any assignment or sublease of any portion of the Property or the improvements thereon without the prior written consent of Assignor (and Lessor, if required by the Lease), which Assignor may withhold in its sole discretion.

*See* Mac East's Responses to Discovery, page 19, ¶ 2.  The reference to Assignee is to Mac East; the reference to Assignor is to Shoney's. *See* Assignment, page 1, initial paragraph, attached as Exhibit A to Shoney's First Discovery Request.

The language from the Assignment quoted just above, **"which Assignor may withhold in its sole discretion,"** provides the basis for Shoney's Motion for Summary Judgment.  That language grants Shoney's the unilateral and sole discretion to withhold consent to any sublease of the Property.  Even if all of the allegations of Mac East are taken as true for the purposes of this Motion for Summary Judgment, Mac East cannot prevail on a breach of contract claim against Shoney's.  Simply put, the language in the Assignment giving Shoney's the sole discretion to withhold consent to the sublease prevents this case from going to the jury and mandates entry of summary judgment in favor of Shoney's.  That is because there is no allegation that Shoney's breached any contractual obligation to Mac East.

Moreover, Shoney's refusal to consent to a sublease cannot constitute an intentional interference with contractual relations. First, Shoney's is not a stranger to the proposed business relationship between Mac East and City Café, which is one of the requirements for prevailing on an intentional interference with contractual relations claim. *Parsons v. Aaron*, 849 So.2d 932, 946 (Ala. 2002). Second, Mac East has not alleged any facts that constitute any intentional act to interfere with any relations between Mac East and City Café. Third, Mac East never had any contractual relationship with City Café with which Shoney's could have interfered.

Finally, Mac East's claim for a declaratory judgment is due to be dismissed because there is no longer a justiciable controversy, in that the Property has now been subleased with the consent of Shoney's. Additionally, the issue for declaratory judgment is dependent upon the Court's ruling with respect to the issues described just above, in that Mac East is asking the Court to rule that Shoney's does not have the right to require additional payments as a condition to consenting to the sublease to City Café. The legal analysis in determining the breach of contract claim is the same legal analysis necessary to decide the request for declaratory judgment. That is, Shoney's had the absolute right to condition its consent to a sublease on anything or nothing (subject to illegality). Accordingly, the Court must dismiss Mac East's request for declaratory judgment, or in the alternative, rule as a matter of law that Shoney's does have the right to require additional payments as a condition to consenting to the sublease to City Café.

## B. Breach of Contract Claim Is Due to Be Dismissed.

Mac East alleges that Shoney's breached the terms of the "lease contracts" applicable to the Property "by requiring the payment of additional sums to consent to [Mac East's] sublease to City Café." *See* Mac East's Complaint, page 5, ¶ 30.

6

The elements of a breach-of-contract claim in Alabama are: (1) a valid contract binding the parties, (2) the plaintiffs' performance under the contract, (3) the defendant's nonperformance, and (4) resulting damages. *State Farm Fire and Casualty Co. v. Williams*, 2005 WL 1995352 (Ala. 2005); *Reynolds Metal Company v. Hill*, 825 So. 2d 100 (Ala. 2002). Mac East has failed to articulate any obligation, promise or covenant that Shoney's was required to perform under any contract with Mac East, including under the Assignment, which Shoney's failed to perform. The Assignment does not require or obligate Shoney's to grant consent to a sublease. Rather, the opposite is true. The Assignment expressly reserves to Shoney's the right to withhold consent in Shoney's sole discretion. *See* Assignment, page 8, Section 19, attached as Exhibit A to Shoney's First Discovery Request. Thus, a critical element of Mac East's breach of contract claim is lacking—that being nonperformance by Shoney's.

Shoney's has the right under the Assignment to withhold consent for any reason or no reason in its sole discretion.[1] That was the agreement of the parties. Thus, even if Shoney's conditioned its consent to Mac East's proposed sublease on the payment of a cash sum, such conduct is perfectly within the rights that Shoney's negotiated in its Assignment with Mac East. In fact, Shoney's has every right to maximize the value of its contractual rights in the Property.

It is clear that Mac East intended to maximize its contractual rights in the Property. Under the sublease that Mac East proposed with City Café, Mac East would have collected annual base rent from City Café in the amount of $77,350, while only being obligated under the Lease to pay an annual rent of $33,000. *See* page 4, ¶ 5(a) to the proposed sublease with City Café attached as Exhibit C to the Power Affidavit. *See also* Power Affidavit, page 2, ¶ 7.

---

[1] Shoney's contends that it acted reasonably with respect to the proposed sublease to City Café. However, it also recognizes that whether it acted reasonably or not is a factual question. The essence of this Motion for Summary Judgment is that Shoney's refusal to consent to the sublease with City Café was within its sole discretion, and thus does not implicate the factual issue of whether Shoney's acted reasonably or not.

Mac East is likely to point to the case of *Homa-Goff Interiors, Inc. v. Cowden*, 350 So.2d 1035 (Ala. 1977) as establishing the proposition that a landlord's consent to a sublease cannot be unreasonably withheld. However, as shown below, *Homa-Goff*'s holding is not binding on this case. *Homa-Goff* involved a lease of a furniture store by Geraldine Cowden, as the landlord, to Homa-Goff Interiors, as the tenant. *Id.* at 1036. Homa-Goff Interiors' business was not doing well, so it desired to sublease the store to another party. *Id.* However, the lease agreement between Homa-Goff Interiors and Ms. Cowden provided that "[t]he Lessee shall not assign or sublease all or any part of the demised premises except by and with the approval of the Lessor in writing." *Id.* at 1037. Homa-Goff Interiors worked out tentative agreements with a couple of proposed subtenants, but Ms. Cowden refused to grant consent, pursuant to the clause in the lease requiring her consent. *Id.* at 1036. After Homa-Goff defaulted on the lease, Ms. Cowden turned around and leased the same property directly to one of the parties that she had just rejected as a proposed subtenant. *Id.* at 1038. The court in *Homa-Goff* held that Ms. Cowden's "rejection should be judged under a test applying a reasonable commercial standard." *Id.*

Clearly, *Homa-Goff* is inapposite to the case at bar. *Homa Goff* contained what is commonly referred to as a "silent consent" clause; that is, a clause that required the prior consent of the landlord to sublease or assign the subject property, but no statement as to the standard under which that consent may be withheld. In other words, in *Homa-Goff*, the parties did not expressly establish a standard by which the landlord's consent could be withheld, and therefore, the court implied such a standard in the lease.

Thus, the distinction between the *Homa-Goff* case and the case here is that the parties here expressly gave Shoney's the sole discretion as to whether Mac East could sublet the Property. This type of distinction is even noted in Justice Beatty's special concurrence in *Homa-*

8

*Goff.* Beatty stated that "as the Restatement recommends, the parties remain completely free to expressly agree to the landlord's absolute right to consent to his own 'satisfaction' with the proposed sublessee." *Id.* at 1041 (Beatty, special concurrence extended).

In discussing the "minority view" of courts on this issue[2], which Alabama falls within, Professor Coskran stated as follows:

> There is no trend of holdings abolishing the part of the common-law and majority rule that leaves the sole discretion standard to the agreement of the parties. The minority view is directed at avoiding unpleasant surprises for the tenant at the time of transfer—the "Silent Consent Standard" surprise. It is directed at encouraging disclosures and clarifying the expectations. It does not override the freedom of contract of the parties, nor does it prohibit a negotiated express sole discretion standard.

William G. Coskran, *Assignment and Sublease Restrictions: The Tribulations of Leasehold Transfers*, 22 Loy. L.A. *405*, 430 (1989). Shoney's failure to consent does not contravene any reasonable expectations that Mac East might have had, as manifested in the express terms of the Assignment that was entered into by Mac East. Thus, the unambiguous terms of Section 19 of the Assignment evidence the reasonable contractual expectations of Mac East and Shoney's, which contains Shoney's unilateral right to withhold consent, in its sole discretion, to any sublease of the Property.

To find that Shoney's had a contractual obligation to grant consent to a sublease with City Café would violate fundamental principles of contract and constitutional law. In upholding a liquidated damages clause, the Alabama Supreme Court stated that "the state constitution protects contractual obligations from impairment by the legislature or the judiciary, and the right

---

[2] The "minority view" is the view that "where a lease provides for assignment only with the prior consent of the lessor, such consent may be withheld only where the lessor has a commercially reasonable objection to the assignment even in the absence of a provision in the lease stating that the consent to assignment will not be unreasonably withheld." William G. Coskran, *Assignment and Sublease Restrictions: The Tribulations of Leasehold Transfers*, 22 Loy. L.A. *405*, 428 (1989).

of freedom of contract is a cherished one that courts are bound to protect." *Sutton v. Epperson*,

631 So.2d 832 (Ala.1993). It then quoted as follows from AmJur.2d:

> The courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain. Since the right of private contract is no small part of the liberty of the citizen, the usual and most important function of courts of justice is to maintain and enforce contracts rather than to enable parties thereto to escape from their obligations on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare. Rules which say that a given agreement is void as being against public policy are not to be extended arbitrarily, because 'if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be enforced by courts of justice.

*Id.* at 835 (quoting 17 Am.Jur.2d *Contracts* § 178 (1991)).

In *Milton Construction Company, Inc. v. State of Alabama Highway Department*, 568

So.2d 784, 787 (Ala. 1990), the court stated:

> We note that the Alabama Constitution of 1901 has a strong preference for the protection of contractual obligations. The Constitution prohibits the impairment of contractual obligations by the legislative and judicial branches of state government.

The Alabama Supreme Court has enunciated its belief in freedom of contract time and again,

stating "[w]e recognize the right of freedom of contract." *Id.* at 788; *State of Alabama v. Cortner*,

893 So.2d 1264, 1271 (Ala. Ct. Crim. App. 2004). This is a fundamental tenet of Alabama law,

and is engrained in the State Constitution. *Homa-Goff* was a case where the parties did not

express a standard in their contract as to the type of discretion that was to be exercised. In the

case at bar, the parties clearly did express such a standard, which standard should be given full

force and effect.

The *Restatement (Second) of Property, Landlord and Tenant*, was published by the American Law Institute the same year as the *Homa-Goff* case. The Restatement's position on this issue is as follows:

> A restraint on alienation without the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, **unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent**.

*Restatement (Second) of Property, Landlord and Tenant* § 15.2(2) (emphasis added). As Professor Coskran noted about the Restatement, this approach "leaves the common-law and majority view intact where the parties have agreed to and have expressly provided for a sole discretion standard." Coskran at 432. It should be noted that Alabama has adopted the *Restatement (Second) of Property, Landlord and Tenant*, and even more specifically Section 15.2 thereof. *Rowley v. City of Mobile*, 676 So.2d 316, 319 (Ala. Civ. App. 1995). While that case, like *Homa-Goff*, involved a "silent consent" clause, the court looked to and cited as authority Section 15.2(2) of the *Restatement (Second) of Property, Landlord and Tenant*. *Id.* at 319.

The "sole discretion" for consent to a sublease was freely negotiated by the parties. Mac East was represented by counsel in the negotiation and preparation of the Assignment. *See* Mac East's Responses to Discovery, page 5, ¶ 13. Further, it is evident from a reading of the Assignment that the parties recognized the difference between standards of consent. In three (3) other instances throughout the Assignment, Shoney's consent is required, but the parties provided that such consent would not be unreasonably withheld. *See* Assignment, page 3, Section 4 (consent to alterations); Assignment, page 7, Section 15 (certain Amendments to the Lease); and Assignment, page 7, Section 18 (granting a leasehold mortgage). There was only

one (1) use of the phrase "sole discretion" in the Assignment, and that was in relation to Shoney's right to withhold consent to any sublease or assignment by Mac East. The parties clearly wished to distinguish the right of Mac East to sublease or assign the Lease from other matters which required the consent of Shoney's.

In sum, in *Homa-Goff*, the court implied a standard in the absence of an express one agreed to by the parties. That was a situation of interpreting a contract, but not changing one. In the case at bar, the parties clearly established their own standard. For the court to modify that express contractual provision would be to change a fundamental "deal point" to which the parties agreed. That would involve actually striking down a contractual provision as being void as against public policy. Given the strong judicial and constitutional predilection for freedom of contract, it is clear that Alabama law gives effect to the parties' language in the Assignment.

Shoney's has no burden to show that it did not wrongfully or unreasonably withhold consent because the language of the contract unambiguously confers on Shoney's the unilateral, unrestricted exercise of discretion with respect to any subleasing of the Property. Mac East has wholly failed to articulate any contractual provision that was breached by Shoney's. Under Alabama law, the parties have the right to contractually agree to give Shoney's the sole discretion over selection of the party who is to be entrusted with the Property and who is obligated to perform covenants under the Lease and under the Assignment. Thus, Mac East's claim for breach of contract is due to be dismissed.

## C.  Allegations in Breach of Contract Claim Does Not Support Award of Damages.

As set forth above, Shoney's vigorously maintains that, based on the facts alleged, it cannot have breached the Assignment. If the Assignment had provided that Shoney's would not unreasonably withhold its consent, and the court found that Shoney's refusal to grant consent

was unreasonable, then that could constitute a breach of contract, the reason being that such refusal would have contravened a contractual covenant of Shoney's.

Even in the cases with "silent consent" clauses where the courts have implied a reasonableness standard (in the absence of an express standard), the remedy to the tenant is simply the right to alienate its interest in the property; however, there is no right to damages for breach of contract. If the court is going to strike down a freely negotiated provision of a contract as being against public policy, then the effect of such action is to remove that provision from the contract. Thus, a tenant would have a right to alienate its interest in the property, but not a right to seek damages. *See Restatement (Second) of Property, Landlord and Tenant* Section 15.2, Illustration h.[3] Thus, if the Court overrides the parties' express negotiated contract (despite Shoney's vigorous arguments to the contrary), there nonetheless can be no damages for breach of contract, because Shoney's cannot breach a contractual provision that is not there.

### D. Claim for Intentional Interference with Contractual Relations Is Due to Be Dismissed.

In Shoney's First Discovery Request, Mac East was requested to "state each and every fact which you claim supports your allegation in the Complaint that Shoney's 'intentionally interfered with the contractual relationship between Plaintiff and City Café.'" *See* Shoney's First Discovery Request, page 5, ¶ 17. Mac East responded as follows:

> Shoney's was aware of the existence of the contract and knew that City Café was an acceptable subtenant but nevertheless simply tried to force an additional payment—over and above what they obtained as part of the original sublease agreement—in exchange for its consent of a qualified tenant.

---

[3] "When a party to the lease must rely solely on the rule of this section, he is simply free to alienate if the other party withholds consent unreasonably, but cannot obtain damages." *Restatement (Second) of Property, Landlord and Tenant, Section 15.2* Illustration h.

That sentence constitutes Mac East's entire response to that Interrogatory propounded by Shoney's. *See* Mac East's Responses to Discovery, page 6, ¶ 17.

Thus, Mac East is claiming that, by Shoney's refusal to grant consent to the sublease, Shoney's intentionally interfered with Mac East's contractual relations with City Café. This claim is absolutely untenable under Alabama law on multiple grounds.

First, to prevail on a claim of tortious interference with contract or business relation, a plaintiff must show: "1) the existence of a contract or business relation; 2) the defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant's interference; and 5) damage to the plaintiff as a result of the defendant's interference." *Toms Foods, Inc. v. Carn*, 896 So.2d 443, 453 (Ala. 2003).

However, the Alabama Supreme Court has made it abundantly clear that there can be no tortious interference unless the alleged tortfeasor is **independent** of the relation or contract. In *Toms Foods, Inc.*, the Court quoted its prior holding, stating that "it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a 'third party,' i.e., a 'stranger' to the contract with which the defendant allegedly interfered." *Id.* at 454 (quoting *Parsons v. Aaron,* 849 So. 2d 932, 946-947 (Ala. 2002). The burden of establishing that the defendant is a stranger is on the plaintiff. *Waddell & Reed, Inc. v. United Investors Life Ins. Co.,* 875 So.2d 1143, 1154 (Ala. 2003).

In *Harrell v. Reynolds Metals Co.*, 495 So. 2d 1381 (Ala. 1986) the Court explained:

> Although the torts of interference with contractual relations . . . , and interference with business relations . . . , are recognized under Alabama law, the alleged tortfeasor, by definition, must be independent of, or a third party to, the particular relation. Restatement (Second) of Torts §766 (1979). It is well settled that a party to a "relation" cannot be held liable for interference with that relation.

14

*Harrell,* 495 So. 2d at 1387-88; *see also Bama Budweiser,* 611 So. 2d at 247 (citing *Lolley v. Howell,* 504 So. 2d 253 (Ala. 1987)).

The federal courts sitting in Alabama have likewise held that "[a]s a matter of law, a party to a contract cannot tortiously interfere with that contract. In order to interfere with a contract, one must be 'a stranger' to the contract." *Patterson v. Powell, Goldstein, Frazer & Murphy, LLP,* 332 B.R. 450 (N.D Ala. 2005).

In *Waddell & Reed, Inc. v. United Investors Life Ins. Co.,* 875 So.2d 1143, 1154 (Ala. 2003), the Alabama Supreme Court set forth clear legal principals that compel the conclusion that Shoney's was not a stranger to, but instead was involved with Mac East's business relationship with City Cafe. In that case, United Investors Life Insurance Company ("United Investors"), issued variable life insurance policies to insureds. The policies were sold and serviced by Waddell & Reed ("Waddell").[4] United Investors and Waddell had a contract for the sale and servicing of the policies. Waddell then converted certain of the insured's policies to another insurance company, and United Investors claimed that such actions constituted tortious interference with United Investors' contracts with the insureds.

In reversing the judgment in favor of United Investors on the tortious interference claim, the Alabama Supreme Court found that Waddell was not a stranger to the policies that United Investors had with its insureds. *Id.* at 1159. In so finding, the Court adopted a four part test for determining whether a party is a stranger to a contract:

> A defendant is not a 'stranger' to a contract or business relationship when:
> (1) the defendant is an essential entity to the purported injured relations;
> (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both

---

[4] There were several different Waddell entities named in the Complaint. The Alabama Supreme Court referred to all defendants as "W & R."

> the defendant and the plaintiff are parties to a comprehensive interwoven
> set of contracts or relations. (citations omitted).

*Id.* at 1156 (quoting *Britt/Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc.*, 952 F.

Supp. 1575, 1584) (N.D. Ga. 1996), *aff'd*, 137 F.3d 1356 (11th Cir. 1998) (finding that an

insurance carrier is not a stranger to the contract between two agencies authorized to market its

insurance policies).

In addition, the Alabama Supreme Court cited and adopted the following guidance from

another Georgia case regarding the issue involved here:

> In order to be liable for interference with a contract, a defendant must be a
> stranger to both the contract and the business relationship giving rise to
> and underpinning the contract. One is not a stranger to the contract just
> because he is not a party to the contract. A tortious interference claim
> requires, among other things, wrongful conduct by the defendant without
> privilege; 'privilege' means legitimate economic interests of the defendant
> or a legitimate relationship of the defendant to the contract, so that he is
> not considered a stranger, interloper, or meddler. **A person with a direct
> economic interest in the contract is not a stranger to the contract.
> Parties to an interwoven contractual arrangement are not liable for
> tortious interference with any of the contracts or business
> relationships.**

*Waddell & Reed,* at 1157 (emphasis added) (citing *Lasonde v. Chase Mortgage Co.,* 259

Ga. App. 772, 577 S.E.2d 822 (Ga. Ct. App. 2003).

Taking all of the statements of law together, the Alabama Supreme Court concluded:

> For the sake of clarity, we adopt the term 'participant' to describe an
> individual or entity who is not a party, but who is essential, to the
> allegedly injured relationship and who cannot be described as a stranger.
> One cannot be guilty of interference with a contract even if one is not a
> party to the contract so long as one is a participant in a business
> relationship arising from interwoven contractual arrangements that include
> the contract. In such an instance, the participant is not a stranger to the
> business relationship and the interwoven contractual arrangements define
> the participant's rights and duties with respect to the other individuals or
> entities in the relationship. If a participant has a legitimate economic
> interest in and a legitimate relationship to the contract, then the participant
> enjoys a privilege of becoming involved without being accused of
> interfering with the contract.

*Id.* at 1157

In making these statements of law as to the claim of intentional interference, the Alabama

Supreme Court relied on its earlier decisions in *BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814

So. 2d 203, 214 (Ala. 2001) (holding that where a contract would not have been consummated

without the participation of a certain party, that party is "anything but a stranger to the

relationship.") and *Parsons v. Aaron,* 849 So. 2d 932 (Ala. 2002). It is clear that under Alabama

law, one of the requirements for prevailing on an intentional interference with contractual

relations claim is that the defendant be a stranger to the contract. *Parsons v. Aaron*, 849 So.2d

932, 946 (Ala. 2002).

When Shoney's assigned certain rights and obligations under the Lease to Mac East,

Shoney's reserved a number of continuing rights with respect to its interest in the Property. For

example, the Assignment contains the following provisions:

> Assignee [Mac East] shall have no right to make any changes,
> remodelings, refurbishings, additions or alterations in and to the Property
> or the Leasehold Improvements except in accordance with the Lease and
> with the prior written consent of Assignor [Shoney's], which Assignor
> [Shoney's] shall not unreasonably withhold.

> Except as provided in paragraph 3 above, all changes, remodelings,
> refurbishings, additions or alterations to the Property shall immediately
> become the property of Assignor [Shoney's] and shall remain upon and be
> surrendered with the Property as a part thereof at the expiration or earlier
> termination of the Lease

*See* Assignment, page 3, Section 4. Further, Shoney's is still obligated for the covenants

on the Lease. *See* Power Affidavit, page 1, ¶ 3. The effect of the proposed sublease with City

Café would have been to force Shoney's into an ongoing business relationship with City Café.

Shoney's simply cannot be considered a stranger to that relationship.

Here, the Assignment required Shoney's prior consent in order for Mac East to sublet the Property. The sublease between Mac East and City Café could not even be consummated without Shoney's prior consent. Thus, under the holding in *BellSouth Mobility* and subsequent Alabama case law, Shoney's is certainly not a stranger to the proposed relationship between Mac East and City Café.

The legal analysis set forth above mandates that summary judgment as to the claim of tortious interference be granted. First, Shoney's is an essential party to the purported injured relations. Without Shoney's consent, the proposed contract between Mac East and City Café cannot even come into existence or be consummated. Second, the allegedly injured relations are inextricably a part of or dependent upon Shoney's contractual or business relations. Finally, both Shoney's and Mac East are parties to a comprehensive interwoven set of contracts or relations that are fundamental to the case at bar. The proposed sublease of the Property to City Café would have had the effect of forcing Shoney's into a business relationship with City Café.

The test lists a series of four (4) factors in the disjunctive. At least three (3) of the factors clearly apply to the situation at hand. These facts dictate that Shoney's is not a stranger to the proposed relationship between Mac East and City Café.

Second, Shoney's failure to grant consent is not an intentional interference. Under Alabama law, "in addition to the five elements that a plaintiff must establish for the tort of interference with contracts or business relationship, the plaintiff "must [also] produce substantial evidence of fraud, force, or coercion, on the defendant's part." *Teitel v. Wal Mart Stores* 287 F.Supp.2d 1268, 1282 (M.D.Ala., 2003), quoting *Barber v. Bus. Prods. Ctr., Inc.*, 677 So.2d 223, 227 (Ala.1996). The Court went on to state that [a]lthough Alabama law no longer requires such threats, it, nevertheless, requires fraud, force, or coercion." Teitel at 1282. Shoney's has merely

refrained from taking an action under a contract, which Shoney's had the express and unilateral right to refrain from taking. Every discretionary action or inaction taken by a party to a contract could have some indirect effect on the other party's relations with others; but, this is not the sort of intentional action that is necessary to support a claim for intentional interference with contractual relations. The Alabama Supreme Court has evidenced this intent in stating that "[t]he tort of intentional interference with business relations was intended to provide a remedy for situations where a third party intentionally interferes with the relationship of two contracting parties, not as a remedy for situations where an allegedly breached contract between two parties." *Cahaba Seafood, Inc. v. Central Bank of the South*, 567 So.2d 1304 (Ala.,1990).

Third, Mac East did not have any contractual relationship with City Café. When asked to "state each and every fact which you claim supports your allegation in the complaint that [Mac East] 'entered into a contractual relationship with City Café,'" the sole response from Mac East was "[s]ee documents produced herewith and mentioned above." *See* Mac East's Responses to Discovery, page 6, ¶ 18. In all of the thousands of pages that Mac East produced in documents, it did not produce a single document representing any contractual relationship with City Café. When asked to produce "copies of any and all documents that tend in any way, whether directly or indirectly, to support your allegation in the complaint that 'in 2005 [Mac East] reached an agreement with City Café to sublease the Subject Property with the intention of operating a restaurant," Mac East responded "none".

The closest document that Mac East has ever produced evidencing any kind of arrangement with City Café was a proposal dated April 18, 2005, which stated as follows:

> This proposal is not intended to create any legal rights or obligations, but rather to summarize the basic business terms of a proposed lease agreed upon to date. All of the legal rights and obligations of the parties will be set forth in the lease agreement and no such rights or obligations shall take

19

> effect unless or until the lease agreement has been fully executed by both Tenant and Landlord. Until the lease agreement is fully executed by both parties, the Landlord reserves the right to negotiate with other parties concerning the leasing of this space.

*See* Proposal to Sub-Lease attached to the Power Affidavit as Exhibit B thereto. Further, when requested to identify the full legal name of City Café (the proposed subtenant), Mac East responded "[a]n entity was to have been named for this operation." *See* Mac East's Responses to Discovery, page 3, ¶ 6. Thus, there was not even an individual or legal entity which was proposed as a subtenant, and Mac East had no contract with any proposed subtenant. The federal district Court sitting in Alabama has recently held that:

> [t]he Court finds that Plaintiff's claim does not survive summary judgment. Under Alabama law, the first requirement necessary to support a claim of tortious interference with a business relationship **is the existence of a contract**.

*Taylor v. City of Demopolis*, WL 3320735 (S.D. Ala., 2005) (emphasis added). Mac East has failed to produce any evidence of any contract between itself and City Café.

Further, Mac East could not legally enter into a sublease with City Café Diners without the consent of Shoney's. As mentioned above, the Assignment itself clearly prohibited this. The Assignment is the instrument by which Mac East derived its rights. Therefore, there could be no contractual relationship between Mac East and City Café for the lease of the Property without the consent of Shoney's.

Based upon binding precedent of the Alabama Supreme Court, Shoney's is entitled to summary judgment in its favor as to Mac East's claim for tortious interference.

### E. Claim for Declaratory Judgment Is Due to Be Dismissed.

Mac East has asked this Court to issue a declaratory judgment that Shoney's "has no right to require payments for assent to sub-tenants who are otherwise commercially reasonable tenants

for the Subject Property." *See* Mac East's Complaint, page 7, ¶ 40.

First, this issue is now a moot point. Subsequent to the filing of this lawsuit, Mac East entered into a sublease of the Property with Shorest 1115, LLC, which sublease was consented to by Shoney's. *See* Power Affidavit, page 2, ¶ 6.

The law of Alabama is that "[t]here must be a bona fide justiciable controversy in order to grant declaratory relief." Durham v. Community Bank of Marshall County, 584 So.2d 834, 835 (Ala.1991) (citations omitted).    Further, "[t]he Declaratory Judgment Act does not "empower courts to decide abstract propositions, or to give *advisory opinions*, however convenient it might be to have these questions decided for the government of future cases." *Bruner v. Geneva County Forestry Dep't*, 865 So.2d 1167, 1175 (Ala.2003) (quoting *Stamps v. Jefferson County Bd. of Educ.*, 642 So.2d 941, 944 (Ala.1994), quoting in turn *Town of Warrior v. Blaylock*, 275 Ala. 113, 114, 152 So.2d 661, 662 (1963)) (emphasis added in *Stamps*).

With respect to issuing declaratory judgment actions after a controversy has become a moot point, the Alabama Supreme Court has stated as follows:

> This Court has often said that, as a general rule, it will not decide questions after a decision has become useless or moot. *Ex parte McFry*, 219 Ala. 492, 122 So. 641 (1929); *Byrd v. Sorrells*, 265 Ala. 589, 93 So.2d 146 (1957); *Chisolm v. Crook*, 272 Ala. 192, 130 So.2d 191 (1961); *Jacobs Banking Company v. Campbell*, 406 So.2d 834 (Ala.1981). **Alabama courts do not give opinions in which there is no longer a justiciable controversy.**

*Arrington v. State ex rel. Parsons*, 422 So.2d 759, 760 (Ala. 1982) (emphasis added).  In a case just released, the Alabama Supreme Court stated that [a]n action that originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised in it have become moot by subsequent acts or events." *Case v. Alabama State Bar*, WL 833065 (Ala., 2006).

In that the Property is now subleased with an initial term lasting until March 30, 2014, Shoney's is no longer being requested to grant consent to a sublease of the Property.  Therefore,

Mac East's request for a declaratory judgment has become moot, as there is no longer a justiciable controversy with respect to that issue.

Additionally, for the same reasons outlined above with respect to the law of Alabama on giving effect to a "sole discretion" clause, Shoney's does have the right to require payments or any other consideration that is not otherwise illegal in exchange for such consent.

Therefore, Shoney's requests that Mac East's request for a declaratory judgment be dismissed, or in the alternative, that the court rule as a matter of law that Shoney's does have the right to require additional payments as a condition to consenting to the sublease to City Café.

## V. CONCLUSION

For the reasons discussed above, Shoney's requests that the Court grant its motion for summary judgment in its entirety and dismiss Mac East's claims.


Respectfully submitted,

James N. Nolan
Middle District I.D. No. ASB-6012-N61J

Paul O. Woodall, Jr.
Middle District I.D. No. ASB-4297-O59P

Attorneys for defendant Shoney's, LLC

OF COUNSEL
WALSTON, WELLS & BIRCHALL, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone: (205) 244-5200
Telecopier: (205) 244-5400

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to the following:

Dennis R. Bailey, Esq.
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270

s/ Paul O. Woodall, Jr.
OF COUNSEL