**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **MAC EAST, LLC,** | ) | |
| **an Alabama Limited Liability** | ) | |
| **Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **2:05-CV-1038(F)** |
| | ) | |
| **SHONEY'S, LLC,** | ) | |
| **a Tennessee limited liability company,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Defendant SHONEY'S, LLC ("Shoney's"), a Tennessee limited liability company, and hereby files its Opposition to Motion for Partial Summary Judgment filed by plaintiff, Mac East, LLC ("Mac East"), and sets forth the following in support thereof:

**I.     RESPONSE TO STATEMENT OF UNDISPUTED FACTS**

Shoney's generally concurs with the Statement of Undisputed Facts submitted by Mac East in Mac East's Brief in Support of Motion for Partial Summary Judgment (the "Mac East Brief")[1], subject to the following exceptions.  First, Shoney's disputes the allegation by Mac East that the financial statements and income statements that were submitted to Shoney's were "regarding City Café", as alleged by Mac East.  Mac East sent financial statements to Shoney's that Mac East purported to be of the proposed subtenant, but which in fact were of other entities

---

[1]  Mac East has submitted a Motion for Partial Summary Judgment and a Brief in Support of Motion for Partial Summary Judgment in this action; however, Mac East has only provided evidentiary cites to its factual statements set forth in its Brief, and therefore, Shoney's will respond to the facts and legal arguments contained in the Brief filed by Mac East, rather than the summary of facts and summary argument contained in Mac East's Motion.

and an individual, with no explanation of how they related to the proposed subtenant. *See* Plaintiff's Exh. 3 to Exh. A hereto. Also, Shoney's disputes the allegation by Mac East that "Shoney's does not generally require any other information from its brokers regarding prospective tenants that it did not receive from Mac regarding City Café." For its proposition in this regard, Mac East cites to the deposition by Donna Power. However, she did not state that. In fact, she said that the financial statements that were submitted were materially different from what Shoney's normally receives when looking at a potential subtenant—namely, the financial statements submitted by Mac East contained wording that "management has elected to omit [many] items of disclosure." *See* Exh. A hereto,71:17-72:18; 46:6-47:2.

## II.    SHONEY'S POSITION GENERALLY

As described in the Mac East Brief, Shoney's was a tenant under a lease dated April 13, 1979 (the "Master Lease") for the property known as 805 Eastern Bypass in Montgomery, Alabama (the "Subject Property"). *See* Complaint, page 1, ¶ 3. In 2002, Shoney's assigned its rights in the Master Lease to Mac East, as evidenced by that certain Assignment and Assumption of Lease Agreement dated February 20, 2002 (the "Assignment"). *See* Mac East Brief, Statement of Undisputed Facts. A copy of the Assignment is attached as Exhibit A to Mac East's Motion for Partial Summary Judgment.

The essence of Mac East's claims is that Shoney's refused to consent to a proposed sublease arrangement between Mac East and a business that Mac East refers to as City Café Diners. Mac East is claiming that this refusal to consent by Shoney's is both a breach of contract (the contract being the Assignment between Shoney's and Mac East) and an intentional interference in the contractual relationship between Mac East and City Café. Mac East is also

2

asking for a declaratory judgment as to whether Shoney's has a right to require additional payments as a condition to granting approval to sublease the Subject Property.

Shoney's has filed its own Motion for Summary Judgment and Brief in Support of Motion for Summary Judgment (collectively, "Shoney's Motion for Summary Judgment"), which is currently pending before this Court.  In Shoney's Motion for Summary Judgment, Shoney's maintains that it is entitled to summary judgment on each of the three counts claimed by Mac East.  Therein, Shoney's vigorously maintains that it has the unilateral and sole right and discretion to withhold consent to any sublease of the Subject Property.  The language in the Assignment between Shoney's and Mac East expressly provides as follows in Section 19 thereof:

> Assignee shall not enter into any assignment or sublease of any portion of the Property or the improvements thereon without the prior written consent of Assignor (and Lessor, if required by the Lease), **which Assignor may withhold in its sole discretion**.

(bold language added).  *See* Section 19 of Assignment, Exhibit A to Mac East's Motion.  There is no factual dispute that this is the language in the Assignment between Shoney's and Mac East; Mac East quotes this same language in the Mac East Brief.

Thus, Shoney's maintains that its refusal to grant consent in the instance of City Café Diners does not implicate the factual issue of whether Shoney's acted reasonably or not.

Shoney's agrees and acknowledges that under Alabama law, when a lease requires the landlord's consent to a sublease, but fails to express a standard by which such consent may be granted or withheld (what is typically referred to as a "silent consent" clause), the courts have implied a standard of commercial reasonableness into the landlord's determination of whether or not to grant such consent. See *Homa-Goff Interiors, Inc., v. Cowden*, 350 So.2d 1035, 1038 (Ala. 1977).  Also, Shoney's recognizes that if a lease requires the landlord's consent to a sublease,

and expressly provides that such consent will not be unreasonably withheld, that this would create a contractual obligation on the part of a landlord not to unreasonably withhold consent.

However, those two situations are very different from the case here. The parties could not have been more clear in their commercially negotiated language that Shoney's was to maintain the unilateral and sole right to determine whether Mac East could sublease the Subject Property or not. It should be noted that this language in Section 19 of the Assignment requires the written consent of Shoney's not just to approve a subtenant—rather the parties negotiated that Shoney's would have the right to approve, in its sole discretion, whether or not the Subject Property could be sublet or not. Now, Mac East is arguing that the contract it signed, and which it negotiated, doesn't mean what it says.

However, if the Court finds that a standard of reasonableness is infused into Section 19 of the Assignment, which Shoney's strenuously opposes as set forth in Shoney's Motion for Summary Judgment, then the question of whether Shoney's acted reasonably or not is a question of material fact for the jury.

In *Homa-Goff Interiors, Inc., v. Cowden*, 350 So.2d 1035, 1038 (Ala. 1977), a case involving a "silent consent" clause, the Alabama Supreme Court stated that "[t]he landlord's rejection should be judged under a test applying a reasonable commercial standard. This question, of course, becomes a question of fact to be determined by the jury." The federal courts sitting in Alabama have likewise held that "[t]he issue of commercial reasonableness is a jury question." *Chrysler Capital Corp. v. Lavender*, 934 F.2d 290 (11th Cir. 1991).

While Shoney's maintains that whether it acted reasonably or not is not germane to a determination of Mac East's Motion, Shoney's does contend that it acted reasonably with respect to the proposed sublease to City Café Diners. First, Mac East sent financial statements to

Shoney's that it purported to be of the proposed subtenant, but which in fact were of other entities, with no explanation of how they related to the proposed subtenant.  *See* Plaintiff's Exh. 3 to Exh. A hereto.  Second, the financial statements provided by Mac East contained a statement that "[m]anagement has elected to omit many of the disclosures required by generally accepted accounting principles."  *See* Plaintiff's Exh. 3 to Exh. A hereto.  Third, the proposed subtenant that Mac East refers to sometimes as City Café Diners, but which was named "Pam Enterprises, Inc." in the proposed form of sublease that was submitted to Shoney's, is not a legal individual or business entity.  *See* Exh C to Exh. C hereto for name of entity in proposed sublease.  When requested to identify the full legal name of City Café Diners (the proposed subtenant), Mac East responded "[a]n entity was to have been named for this operation."  *See* page 3, ¶ 6, Exh. B hereto.

Thus, there is no individual or business entity named City Café Diners (or Pam Enterprises, Inc.).  Additionally, there is simply no evidence that has been put forth by Mac East that it and the purported business that it refers to as City Café Diners ever even reached agreement on the terms of a sublease.  When asked to produce "copies of any and all documents that tend in any way, whether directly or indirectly, to support your allegation in the complaint that 'in 2005 [Mac East] reached an agreement with City Café to sublease the Subject Property with the intention of operating a restaurant," Mac East responded "none". *See* page 17, ¶ 26 and Answer 26 at the end, Exh. B hereto.

Additionally, it was the belief of Shoney's that City Café Diners was not a strong candidate for the location.  See Exh. A hereto, 40:19-41:11.  This is important to Shoney's, because when Shoney's assigned certain rights and obligations under the Master Lease to Mac

East, Shoney's reserved a number of continuing rights and obligations with respect to its interest in the Subject Property.  For example, the Assignment contains the following provisions:

> Assignee [Mac East] shall have no right to make any changes, remodelings, refurbishings, additions or alterations in and to the Property or the Leasehold Improvements except in accordance with the Lease and with the prior written consent of Assignor [Shoney's], which Assignor [Shoney's] shall not unreasonably withhold.

> Except as provided in paragraph 3 above, all changes, remodelings, refurbishings, additions or alterations to the Property shall immediately become the property of Assignor [Shoney's] and shall remain upon and be surrendered with the Property as a part thereof at the expiration or earlier termination of the Lease

*See* Assignment, page 3, Section 4, Exh. A to Mac East's Motion.  Further, Shoney's is still obligated for the covenants on the Master Lease.  *See* page 1, ¶ 3 Exh. C hereto.  Thus, the effect of the proposed sublease with City Café Diners would have been to force Shoney's into an ongoing business relationship with City Café Diners, a relationship it could avoid if it chose to do so by force of rights in Section 19 of the Assignment.

Mac East points out that Shoney's did not communicate to Mac East any particular objection as to the suitability of City Café Diners. *See* Mac East Brief.  However, whether Shoney's communicated the concerns that it had over City Café Diners to Mac East or not, does not speak to whether Shoney's was reasonable in conditioning its approval of City Café Diners as a subtenant or not.

Thus, while Shoney's strenuously maintains that its pending Motion for Summary Judgment is due to be granted with respect to the fact that it had the unilateral right to refuse consent to a sublease of the Subject Property, without regard to commercial standards, if the Court finds that there is an obligation of reasonableness infused in Section 19 of the Assignment, despite express language to the contrary, Shoney's contends that it did act reasonably, as

6

evidenced by the facts and materials set forth above.  The question of whether a party acted reasonably or not with respect to withholding consent to a sublease is clearly a question for the jury, as has been stated by the Alabama courts described above.  Thus, Mac East's Motion for Summary Judgment is due to be denied.

## III.  RESPONSE TO MAC EAST'S BREACH OF CONTRACT ARGUMENT

In the Mac East Brief, Mac East alleges that "Shoney's breached the terms of the lease by requiring the payment of additional sums as a condition to approval of City Café as a subtenant." Presumably, Mac East means that Shoney's breached the terms of the Assignment (and not the lease), as that is the contract between Shoney's and Mac East which requires Shoney's approval to any sublease.  Shoney's concurs with Mac East's assertion in the Mac East Brief as to the four elements of a breach of contract claim in Alabama.

One of the elements for breach of contract listed by Mac East is "the defendant's nonperformance." *See* Mac East Brief.  That is the key element in this case, and that is ultimately where Mac East fails to allege any valid breach of contract claim against Shoney's.  Mac East has utterly failed to articulate any obligation that Shoney's was contractually required to perform, and which it failed to perform.

As set out in more detail in Shoney's pending Motion for Summary Judgment, Shoney's had the absolute and sole right to withhold consent to the proposed sublease with City Café Diners.  *See* Shoney's Motion for Summary Judgment.  The Assignment does not in any way require or obligate Shoney's to grant consent to a sublease.  Rather, the opposite is true.  The Assignment expressly reserves to Shoney's the right to withhold consent in Shoney's sole discretion. *See* Assignment, page 8, Section 19, attached as Exhibit A to Mac East's Motion.

Thus, a critical element of Mac East's breach of contract claim is lacking—that being nonperformance by Shoney's.

Mac East argues in the Mac East Brief that because the language of the Assignment did not provide for the payment of a cash sum in exchange for granting consent to a sublease, that Shoney's had no contractual right to demand payment in exchange for granting such consent. The flaw in Mac East's argument is that Mac East is the party seeking a modification to the Assignment. The Assignment, as negotiated, has a prohibition on subleasing, absent Shoney's consent; Mac East seems to contend that it has a right to sublease. Rather, the Assignment contains a general prohibition on subleasing, absent Shoney's agreement to the contrary. It is Mac East that came to Shoney's and said that it wanted Shoney's to agree to modify the prohibition on subleasing contained in the parties' agreement. Mac East did not have a contractual right to require that Shoney's consent to a sublease. In other words, Mac East came to Shoney's and asked Shoney's to do something that Shoney's was not contractually required to do. Shoney's had every right to negotiate the terms under which it would do something that it was not contractually obligated to do.

In the Mac East Brief, Mac East states that "the unambiguous terms of the agreement do not provide for the additional payment of money in exchange for approval of a subtenant." However, the unambiguous terms of the agreement provide that the Subject Property may not be sublet without Shoney's prior written consent; additionally, the unambiguous terms of the agreement provide that Shoney's consent may be withheld in its sole discretion.

Mac East then quotes from the case of *Giordano v. Miller*, 733 N.Y.S.2d 94 (App. Div. 2d Dep't 2001), and describes it as a "strikingly similar case." *See* Mac East Brief. Such a statement underscores Mac East's utter failure to recognize the difference between the various

types of consent clauses contained in lease agreements. The very language that Mac East quotes in the *Giordano* case states that the lease in question provided "that consent of the landlord was required for the assignment of the lease, but the required consent could not be withheld unreasonably." *Id.* at 95. In that case, the landlord demanded a fee in exchange for granting consent, and the court rightfully held that such demand was a breach of contract by the landlord. *Id.* Shoney's would not disagree that in a situation where the lease in question expressly provides that the consent of the landlord will not be unreasonably withheld, that a failure to exercise reasonable discretion by the landlord would be grounds for a claim of breach of contract.

However, the case here involves language that is materially different from the *Giordano* case cited by Mac East. The case here expressly provides that Shoney's can withhold its consent in its sole discretion. To say that a case which has a clause stating that consent will not be unreasonably withheld is strikingly similar to a situation where consent can be withheld in a party's sole discretion, is an attempt to compare apples and oranges, and it evidences a failure to recognize the fundamental issue in this case.

It appears that the sole basis for Mac East's breach of contract claim is Mac East's allegation that Shoney's demanded an additional payment before Shoney's would consent to a sublease of the Subject Property. That allegation simply fails to satisfy the third element of a breach of contract claim—namely, the defendant's nonperformance. Shoney's was not contractually obligated to grant consent to a sublease. Thus, Shoney's has not failed to perform any obligation under the Assignment that it was obligated to perform.

Mac East's Motion for Summary Judgment on the breach of contract claim is thus due to be denied.

## IV. RESPONSE TO MAC EAST'S INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS ARGUMENT

In the Mac East Brief, Mac East very summarily addresses its claim for intentional interference with business relations against Shoney's.[2]  In Shoney's Motion for Summary Judgment, Shoney's has fully briefed the issue of why its Motion for Summary Judgment with respect to this claim is due to be granted.  *See* Shoney's Motion for Summary Judgment.

In support of its claim for tortious interference with business relations, Mac East cites the case of *Teitel v. Wal-Mart Stores, Inc.*, 287 F. Supp. 2d 1268 (M.D. Ala. 2003).  However, that case strongly supports Shoney's position that it did not commit any such tort.  The Court in *Teitel*, in quoting the Alabama Supreme Court, stated as follows:

> The Alabama Supreme Court indicated that 'the tort of intentional interference with business relations was intended to provide a remedy for situations where a third party intentionally interferes with the relationship of two contracting parties, not as a remedy for situations where an allegedly breached contract between two parties…affects the relationship of one of the parties with a third party.' (quoting *Cahaba Seafood, Inc. v. Central Bank of the South*, 567 So.2d 1304, 1306 (Ala. 1990).

*Teitel* at 1279.

In *Tom's Foods, Inc. v. Carn*, 896 So.2d 443, 453 (Ala. 2003), the Alabama Supreme Court quoted a prior holding, stating that "it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a 'third party,' i.e., a 'stranger' to the contract with which the defendant allegedly interfered." *Id*. at 454 (quoting *Parsons v. Aaron,* 849 So. 2d 932, 946-947 (Ala. 2002).  The burden of establishing that the

---

[2] Mac East begins its argument in this regard by attempting to state the elements of this tort.  However, courts in Alabama are still holding that the absence of justification is still an element of this tort.  *Teitel v. Wal-Mart Stores, Inc.*, 287 F. Supp. 2d 1268, 1279 (M.D. Ala. 2003).  However, such issue is not relevant, because Shoney's contends that there was no interference in the first place.

defendant is a stranger is on the plaintiff. *Waddell & Reed, Inc. v. United Investors Life Ins. Co.,* 875 So.2d 1143, 1154 (Ala. 2003). Shoney's clearly is not a stranger to the proposed tripartite relationship between Shoney's, Mac East as its assignee, and City Café Diners as the proposed subtenant. Shoney's has fully briefed this issue in its Motion for Summary Judgment.

In *Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.*, the Alabama Supreme Court faced an analogous situation in which the owner of Bama Budweiser [Schilleci] sued Anheuser-Busch, alleging the tort of intentional interference with business relations. 611 So.2d 238 (Ala. 1992). The case involved a dispute between two separate wholesale beer distributors, "Horn" and "Bama," over the right to sell products supplied to them by Anheuser-Busch in certain territories throughout Alabama. *Id.* Prior to owning "Bama," Schilleci had originally approached one of Anheuser-Busch's wholesalers [Daniel] regarding the purchase of that distributorship; the two came to an agreement regarding the sale, however contingent upon Anheuser-Busch's approval of Schilleci as a wholesaler. *Id.*

After acquiring his distributorship, Schilleci soon discovered that Anheuser-Busch had formally extended permission to Horn, in an attempt to honor a long-standing oral agreement, to distribute in a territory which had been given to Schilleci in the signing of his original agreement. *Id.* After an unsuccessful request that Anheuser-Busch rectify the situation, Schilleci sued Anheuser-Busch on the grounds that it had interfered with the contract between Schilleci and Daniel by allowing Horn to distribute in the territory given to Bama. *Id.* The Court entered summary judgment in favor of Anheuser-Busch, holding that Anheuser-Busch was a party to the contract between Daniel and Schilleci because without Anheuser Busch's approval, the transfer could not have been completed and neither Schilleci nor Daniel could market or sell their products. *Id.* at 247. That is just like the situation here, where Mac East and City Café Diners

11

could not complete the sublease without the approval of Shoney's.   Shoney's was an indispensable party to that relationship, and certainly was no stranger to it.

The Alabama Supreme Court later faced a similar situation in *BellSouth Mobility, Inc. v. Cellulink, Inc.*, in which BellSouth originally contracted with and appointed Cellulink to be a "nonexclusive agent of Bellsouth to solicit and contract on behalf of BellSouth with Subscribers for [cellular telephone service] in the Area [serviced by BellSouth]."  814 So.2d 203, 206 (Ala. 2001).   Such agreement also provided that Cellulink could sell services and equipment at "additional or substitute sales facilities which [BellSouth] approves in writing from time to time during the term of this Agreement."  *Id*. at 207.   In accordance with this agreement, later discussions led to the execution of a "Letter Agreement" between the two, under which Cellulink was to operate booths, or kiosks, in Wal-Mart stores within BellSouth's servicing area, and expressly authorizing Cellulink to sign leases with Wal-Mart.  *Id.* at 208.

However, in response to the conclusion of agreements between Alltel and Wal-Mart, BellSouth and Wal-Mart later executed a "Wireless Communication Retail Distribution Agreement" giving BellSouth the right to sell cellular telephone equipment and solicit air-time subscriptions at kiosks in Wal-Mart stores throughout the southeast, but requiring BellSouth to staff the kiosks with its *own* employees.  *Id*. at 210.  As a result, Wal-Mart served Cellulink a 90-day termination notice of the lease agreements which it had executed a year earlier, and Cellulink was forced to vacate its existing kiosk.  *Id*.  Cellulink responded by suing BellSouth on several counts, one being "tortious interference with business or contractual relations."  *Id*.

 The Court concluded that Cellulink was not entitled to recover on this claim, stating that: "[t]his case is analogous to *Bama Budweiser* in that, absent BellSouth's 'affiliation and

approval,' Cellulink and Wal-Mart could not have consummated the lease agreement." *Id*. at 214. The Court continued by holding as follows:

> The undisputed facts compel the conclusion that BellSouth was anything but a stranger to the relationship between Cellulink and Wal-Mart. Consequently, it is immaterial whether, as Cellulink contends, BellSouth played a clandestine role in the negotiations between Wal-Mart and Alltel that eventually led to Cellulink's eviction from the Inverness Wal-Mart store.

*Id*. Here, the Assignment required Shoney's prior consent in order for Mac East to sublet the Subject Property. As mentioned, the sublease between Mac East and City Café Diners could not even have been consummated without Shoney's prior consent. Thus, under the holding in *BellSouth Mobility* and subsequent Alabama case law, Shoney's is certainly not a stranger to the proposed relationship between Mac East and City Café Diners.

These decisions clearly reflect that "a defendant is a party in interest to a relationship if the defendant has **any** *beneficial or economic interest* in, or control over, that relationship." *Tom's Foods, Inc. v. Carn*, 896 So.2d 443, 454 (Ala. 2004) (quoting *Waddell & Reed Inc. v. United Investors Life Ins. Co.*, 875 So.2d 1143, 1155 (Ala. 2003)). *See, e.g.*, *BellSouth*, 814 So.2d at 214 (court held that defendant in *BellSouth* was not liable where its permission was required before the plaintiff could enter into the contractual relationship and where the contract itself defined certain rights and obligations of the defendant); *Bama Budweiser*, 611 So.2d at 247 (court held the defendant was not a stranger to the contract where contract performance required defendant's approval); *Colonial Bank v. Patterson*, 788 So.2d 134, 138 (Ala. 2000) (court held that the defendant was not a stranger to the contract between the plaintiff and a third party where the defendant's action was authorized by its own contract with the plaintiff and the third party). *Waddell*, 875 So.2d at 1143.

As set forth above, when Shoney's assigned certain rights and obligations under the Master Lease to Mac East, Shoney's reserved a number of continuing rights with respect to its interest in the Subject Property. For example, the Assignment contains the following provisions:

> Assignee [Mac East] shall have no right to make any changes, remodelings, refurbishings, additions or alterations in and to the Property or the Leasehold Improvements except in accordance with the Lease and with the prior written consent of Assignor [Shoney's], which Assignor [Shoney's] shall not unreasonably withhold.
>
> Except as provided in paragraph 3 above, all changes, remodelings, refurbishings, additions or alterations to the Property shall immediately become the property of Assignor [Shoney's] and shall remain upon and be surrendered with the Property as a part thereof at the expiration or earlier termination of the Lease

*See* Assignment, page 3, Section 4. Further, Shoney's is still obligated for the covenants on the Lease. *See* page 1, ¶ 3, Exh. C hereto. The effect of the proposed sublease with City Café Diners would have been to force Shoney's into an ongoing business relationship with City Café Diners. Shoney's simply cannot be considered a stranger to that proposed relationship.

Under Alabama law, "in addition to the five elements that a plaintiff must establish for the tort of interference with contracts or business relationship, the plaintiff "must [also] produce substantial evidence of fraud, force, or coercion, on the defendant's part." *Teitel v. Wal-Mart Stores* 287 F.Supp.2d 1268, 1282 (M.D. Ala., 2003), quoting *Barber v. Bus. Prods. Ctr., Inc.*, 677 So.2d 223, 227 (Ala.1996). The Court went on to state that [a]lthough Alabama law no longer requires such threats, it, nevertheless, requires fraud, force, or coercion." Teitel at 1282. Shoney's has merely refrained from taking an action under a contract, which Shoney's had the express and unilateral right to refrain from taking. Every discretionary action or inaction taken by a party to a contract could have some indirect effect on the other party's relations with others;

but, this is not the sort of intentional action that is necessary to support a claim for intentional interference with contractual relations.

Finally, Mac East did not have any contractual relationship with City Café Diners. When asked to "state each and every fact which you claim supports your allegation in the complaint that [Mac East] 'entered into a contractual relationship with City Café,'" the sole response from Mac East was "[s]ee documents produced herewith and mentioned above." *See* page 6, ¶ 18, Exh. B hereto. In all of the thousands of pages that Mac East produced in documents, it did not produce a single document representing any contractual relationship with City Café Diners. When asked to produce "copies of any and all documents that tend in any way, whether directly or indirectly, to support your allegation in the complaint that 'in 2005 [Mac East] reached an agreement with City Café to sublease the Subject Property with the intention of operating a restaurant," Mac East responded "none". *See* page 17, ¶ 26 and Answer 26 at the end, Exh. B hereto.

The closest document that Mac East has ever produced evidencing any kind of arrangement with City Café Diners was a proposal dated April 18, 2005, which stated as follows:

> This proposal is not intended to create any legal rights or obligations, but rather to summarize the basic business terms of a proposed lease agreed upon to date. All of the legal rights and obligations of the parties will be set forth in the lease agreement and no such rights or obligations shall take effect unless or until the lease agreement has been fully executed by both Tenant and Landlord. Until the lease agreement is fully executed by both parties, the Landlord reserves the right to negotiate with other parties concerning the leasing of this space.

*See* Proposal to Sub-Lease attached as Exh. B to Exh. C hereto. Further, when requested to identify the full legal name of City Café Diners (the proposed subtenant), Mac East responded "[a]n entity was to have been named for this operation." *See* page 3, ¶ 6, Exh. B hereto. Thus, there was not even an individual or legal entity which was proposed as a subtenant, and Mac East

had no contract with any proposed subtenant.  The federal district Court sitting in Alabama has recently held that:

> [t]he Court finds that Plaintiff's claim does not survive summary judgment.  Under Alabama law, the first requirement necessary to support a claim of tortious interference with a business relationship **is the existence of a contract**.

*Taylor v. City of Demopolis*, WL 3320735 (S.D. Ala., 2005) (emphasis added).  Mac East has failed to produce any evidence of any contract between itself and City Café Diners, or that City Café Diners was in any way ready, willing or able to enter into a sublease with Mac East.

The legal analysis set forth above mandates that Mac East's Motion for Summary Judgment as to the claim of tortious interference with business relations be denied.  First, Shoney's is an essential party to the purported injured relations.  Without Shoney's consent, the proposed contract between Mac East and City Café Diners cannot even come into existence or be consummated.  Second, the allegedly injured relations are inextricably a part of or dependent upon Shoney's contractual or business relations.  Shoney's and Mac East are parties to a comprehensive interwoven set of contracts or relations that are fundamental to this case.  There is no evidence of any fraud, force or coercion by Shoney's with respect to City Café Diners.  Finally, there was no contract between Mac East and City Café Diners with which to interfere.

Therefore, Mac East's Motion for Summary Judgment on the issue of tortious interference with business relations is due to be denied.

## IV.    RESPONSE TO MAC EAST'S REQUEST FOR DECLARATORY JUDGMENT

Mac East has asked this Court to issue a declaratory judgment concerning the ability of Shoney's to require payments from Mac East in order to obtain approval for commercially reasonable subtenants of the Subject Property.  However, counsel for Shoney's has just received Mac East's Opposition to Shoney's Motion for Summary Judgment, wherein it has agreed with

Shoney's position that declaratory judgment is now a moot point, and such claim should be dismissed. Therefore, Shoney's will not address the issue of declaratory judgment.

However, in that Mac East's legal arguments on the issue of whether a "sole discretion" clause is to be given effect are contained in the section of the Mac East Brief on Declaratory Judgment, Shoney's will nonetheless address the legal arguments contained therein, insofar as they relate to the issue of whether Shoney's breached the Assignment or not. This issue is more fully briefed in Shoney's Motion for Summary Judgment, but Shoney's will nonetheless respond to the specific arguments of Mac East contained in the Mac East Brief.

First, Mac East cites the obvious cases of *Homa-Goff* and *Chrysler Capital Corp. v. Lavender*, 934, F. 2d 290 (11th Cir. 1991) for Mac East's proposition that a landlord cannot unreasonably withhold consent to a sublease. However, as set out in great detail in Shoney's Motion for Summary Judgment, those cases are inapposite to the case at bar. Each of *Homa Goff* and *Chrysler Capital* contained what is commonly referred to as a "silent consent" clause; that is, a clause that required the prior consent of the landlord to sublease or assign the subject property, but no statement as to the standard under which that consent may be withheld. In other words, in those cases, the parties did not expressly establish a standard by which the landlord's consent could be withheld, and therefore, the court implied such a standard in the lease. The issue in those cases was an interpretation of a contractual clause when the parties failed to provide a standard. What Mac East seems to be asking for is that the Court rewrite the parties' contract, which is a wholly different issue, and which is anathema to Alabama's strong predilection for upholding contracts.[3]

---

[3] Shoney's has fully briefed the issue of Alabama law on freedom of contract in its Motion for Summary Judgment.

Mac East then cites a series of out-of-state cases applying the laws of states other than Alabama, in its attempt to establish that it is unreasonable to require payment of additional money as a condition to granting approval of a subtenant.  First of all, none of those cases are applying Alabama law, so they are not applicable to this case.  Second, and perhaps even more importantly, those cases involve clauses whereby the lease in question expressly provided that consent could not be unreasonably withheld, or involved "silent consent" clauses where the court implied a standard of reasonableness.  None of the cases cited by Mac East involve language reserving the right to the landlord's "sole discretion" over its determination of approving a sublease.  Again, Shoney's admits that if a clause says that the landlord will not unreasonably withhold consent, then the landlord would be obligated to act reasonably in whether it granted or withheld consent.  Similarly, in those states which imply a standard of reasonableness where the contract merely requires the landlord's consent, but does not express a standard, the landlord would be obligated to act reasonably.  However, as noted, that is not the case here where the parties expressly and contractually provided that Shoney's had the sole discretion to withhold consent.

In the first such case cited by Mac East, *Norville V. Carr-Gottstein Foods Co.*, 84 P.3d 996 (Alaska 2004), the clause prohibiting subleases stated that the tenant could not assign or sublease the premises "without the prior written consent of Landlord in each instance, which consent will not be withheld unreasonably." *Id*. at 1000.  Thus, that case is obviously distinguishable from the case here because the lease in that case expressly provided that the landlord would not unreasonably withhold consent—a contractual obligation.  However, it should be noted that in that case, the landlord was demanding a payment in order to grant consent, but also proffered other reasons for not granting consent.  The Court held that whether

the landlord's reasons "are genuine and reasonable under the circumstances of this case are questions of fact that remain to be litigated." *Id.* at 1002. Thus, that case is consistent with Shoney's position that if reasonableness is either expressly provided in a contract, or implied by law into a contract, then whether the landlord acted reasonably or not in refusing or conditioning consent is question of material fact, and is not proper for summary judgment. However, as noted above, Shoney's strenuously opposes any notion that it had an obligation in this case to not unreasonably withhold consent.

In the next such case cited by Mac East, *Golf Management Co. v. Evening Tides Waterbeds, Inc.* 572 N.E.2d 1000 (Ill. App. 1991), the lease in question required the landlord's consent to a sublease, but did not express a standard by which that consent could be granted or withheld. *Id.* at 1001. In that case, the court applying Illinois law, implied a reasonableness standard on withholding consent, where the lease merely required the consent of the landlord for any sublease. *Id.* at 1003. It should also be noted that the court found that as a condition precedent "before a landlord can be held liable for failure to consent to a transfer of a lease, a tenant must meet its burden of proving that it tendered a subtenant who was ready, willing, and able to take over the lease and who, at the very least, met reasonable commercial standards." *Id.* In the case here, Mac East has not put forth any evidence that City Café Diners was ready, willing and able to take over the lease. There was not even an entity formed or individual that constituted City Café Diners, as set forth above. It should also be noted that in the *Golf Management Co.* case, the issue of reasonableness went to the jury, and the court was merely determining if there was enough evidence from which the jury could have determined that the landlord's conduct was unreasonable. *Id.* at 1004-1005.

In the next case cited by Mac East, *Natural Kitchen, Inc. v. American Transworld Corp.*, 449 So.2d 855 (Fla. App. 1984), this again involved a "silent consent" clause ("the lease contained a provision that the lessee could not assign the lease without the prior written consent of the lessor." *Id*. at 856-857).   That case is not only irrelevant in that regard, but the Court clearly states that "[a]t the outset it should be noted that the unreasonableness of Transworld in refusing consent to the assignment of the lease is not an issue on this appeal." *Id*. at 858.   Thus, this case does not provide support for Mac East's position in any respect.

In each of the cases cited by Mac East, none of them have a clause whereby the landlord was given sole discretion to refuse consent to a sublease.   Shoney's is unaware of any case, and Mac East has cited none, in which a landlord was given sole discretion to refuse a sublease, and whereby the court rewrote the contract to imply a standard of reasonableness, despite the parties' expressly negotiated language.   As described above, Alabama law provides that in situations where there is an express "reasonableness" clause or a "silent consent" clause", with respect to a landlord's right to refuse consent to a sublease, the question of whether any such refusal is reasonable or not is a question for the jury.   It is unclear why Mac East has cited a string of cases from other jurisdictions, applying the law of such other jurisdictions, when Alabama law requires that the issue of reasonableness be a question for a jury.

Shoney's requests that Mac East's Motion for Summary Judgment with respect to its claim for declaratory judgment be denied.

## V.      **CONCLUSION**

For the reasons discussed above, Shoney's requests that the Court deny Mac East's

Motion for Partial Summary Judgment in its entirety.

Respectfully submitted,

s/ Paul O. Woodall, Jr.
Paul O. Woodall, Jr.
Middle District I.D. No. ASB-4297-O59P


s/ James N. Nolan
James N. Nolan
Middle District I.D. No. ASB-6012-N61J


Attorneys for Defendant, Shoney's, LLC

OF COUNSEL
WALSTON, WELLS & BIRCHALL, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone: (205) 244-5200
Telecopier: (205) 244-5400

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to the following:

Dennis R. Bailey, Esq.
Bethany L. Bolger, Esq.
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270


_s/ Paul O. Woodall, Jr.
OF COUNSEL