**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | |
|---|---|
| **MAC EAST, LLC,** ) <br> **an Alabama Limited Liability** ) <br> **Corporation,** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ) <br> **SHONEY'S, LLC,** ) <br> **a Tennessee limited liability company,** ) <br> ) <br>     **Defendant.** ) | **CIVIL ACTION NO.:** <br> **2:05-CV-1038(F)** |

**DEFENDANT SHONEY'S, LLC'S REPLY TO PLAINTIFF MAC EAST, LLC'S**

**RESPONSE IN OPPOSITION TO DEFENDANT SHONEY'S, LLC'S**

**MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant SHONEY'S, LLC ("Shoney's"), a Tennessee limited liability company, and hereby files its Reply to Plaintiff Mac East, LLC's Response in Opposition to Shoney's Motion for Summary Judgment, and sets forth the following in reply thereto:

**I.     REPLY TO MAC EAST'S BREACH OF CONTRACT ARGUMENT**

Mac East has admitted, and there is no dispute, that the Assignment entered into between Mac East and Shoney's contains the following language:

> Assignee [Mac East] shall not enter into any assignment or sublease of any portion of the Property or the improvements thereon without the prior written consent of Assignor [Shoney's] (and Lessor, if required by the Lease), which Assignor [Shoney's] may withhold in its sole discretion.

*See* Mac East's Responses to Discovery, page 19, ¶ 2, Exh. 2 to Doc. 16. A copy of the full Assignment (the "Assignment") is attached as Exhibit A to Shoney's First Discovery Request, Exh. 1 to Doc. 16. *See also* Mac East's Responses to Discovery, page 19, ¶ 1, Exh. 2 to Doc. 16.

Yet, Mac East fails to recognize that this language <u>prohibits</u> any subleasing of the subject property absent Shoney's consent. Mac East, in its Response in Opposition, states "[t]he contract provides that Mac East has a right to sublet the property." *See* Doc. 27, p.3. This statement is completely antithetical to the express language of the Assignment itself. The language in the Assignment, as quoted above, provides that Mac East "shall not enter into any assignment or sublease of any portion of the Property…" This attempt to turn the language of the Assignment on its head underscores Mac East's continued failure to acknowledge that it entered into a contract which contained a general prohibition on subleasing. That was the deal that was struck. The language is what it is. Mac East is inexplicably trying to make it something that it is not.

Mac East again points to the case of *Homa-Goff Interiors, Inc. v. Cowden*, 350 So.2d 1035 (Ala. 1977) as supporting its position. However, Shoney's has fully set forth, in its Brief in Support of Motion for Summary Judgment, the distinction between that case and the case here. *See* Doc. 17, p. 8-12. *Homa Goff* contained what is commonly referred to as a "silent consent" clause; that is, a clause that required the prior consent of the landlord to sublease or assign the subject property, but no statement as to the standard under which that consent may be withheld. In other words, in *Homa-Goff*, the parties did not expressly establish a standard by which the landlord's consent could be withheld, and therefore, the court implied such a standard in the lease. Thus, the distinction between the *Homa-Goff* case and the case here is that the parties here

2

expressly gave Shoney's the sole discretion as to whether Mac East could sublet the subject property.

Shoney's also fully set forth Alabama's strong predilection for upholding the doctrine of freedom of contract. *See* Doc. 17, p. 9-10. The Alabama Supreme Court has held as follows in this regard:

> We note that the Alabama Constitution of 1901 has a strong preference for the protection of contractual obligations. The Constitution prohibits the impairment of contractual obligations by the legislative and judicial branches of state government.

*Milton Construction Company, Inc. v. State of Alabama Highway Department*, 568 So.2d 784, 787 (Ala. 1990). Any reading of the Assignment would lead to the conclusion that it was the parties' express intent that the property not be sublet unless Shoney's agreed to it, and further that it was in Shoney's' sole discretion as to whether or not to agree to any such subletting.

What Mac East is essentially asking the Court to do is to judicially modify the express written terms of an agreement to which it is a party. *Homa-Goff* and the other litany of cases cited by Mac East involved situations whereby the parties did not express a standard by which consent could be withheld, and in the absence of such expression, the court implied an obligation of reasonableness. That is not a change to the contract, but merely an interpretation of the language of it, i.e., a "gap-filler." Mac East is now asking this Court to rewrite the language of the contract, which is a wholly different situation, and which is anathema to Alabama jurisprudence.

The *Restatement (Second) of Property, Landlord and Tenant*, states as follows:

> A restraint on alienation without the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, **unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent**.

*Restatement (Second) of Property, Landlord and Tenant* § 15.2(2) (emphasis added).  As Professor Coskran noted about the Restatement, this approach "leaves the common-law and majority view intact where the parties have agreed to and have expressly provided for a sole discretion standard." Coskran at 432.  It should be noted that Alabama has adopted the *Restatement (Second) of Property, Landlord and Tenant*, and even more specifically Section 15.2 thereof.  *Rowley v. City of Mobile*, 676 So.2d 316, 319 (Ala. Civ. App. 1995).

The effect of the decision which Mac East is asking this Court to render would disrupt leases throughout Alabama which have express reservations of sole discretion of the landlord to a sublease, and would have the effect of rewriting all of those leases.  It would also overturn Alabama's adoption of the *Restatement (Second) of Property, Landlord and Tenant*, which allows the parties to freely negotiate a "sole discretion" standard into their leases.  Even Justice Beatty's special concurrence in *Homa-Goff,* provides that "as the Restatement recommends, the parties remain completely free to expressly agree to the landlord's absolute right to consent to his own 'satisfaction' with the proposed sublessee." *Homa-Goff* at 1041 (Beatty, special concurrence extended).

The "sole discretion" for consent to a sublease was freely negotiated by the parties.  Mac East was represented by counsel in the negotiation and preparation of the Assignment.  *See* Mac East's Responses to Discovery, page 5, ¶ 13, Exh. 2 to Doc. 16.  Further, it is evident from a reading of the Assignment that the parties recognized the difference between standards of consent.  In three (3) other instances throughout the Assignment, Shoney's consent is required, but the parties provided that such consent would not be unreasonably withheld.  *See* Assignment, page 3, Section 4 (consent to alterations); Assignment, page 7, Section 15 (certain Amendments to the Lease); and Assignment, page 7, Section 18 (granting a leasehold mortgage).  There was

only one (1) use of the phrase "sole discretion" in the Assignment, and that was in relation to Shoney's right to withhold consent to any sublease or assignment by Mac East. The parties clearly wished to distinguish the right of Mac East to sublease or assign the Lease from other matters which required the consent of Shoney's.

Another point that Mac East seems to misconstrue is that the language in the Assignment between Shoney's and Mac East did not require the approval by Shoney's of a subtenant. It is the act of subleasing by Mac East which required Shoney's consent. Within that concept is included the right to approve a subtenant, but the parties' agreement was that there would be no subleasing without Shoney's consent. Thus, the parties contracted that Mac East would be the tenant and possessor of the subject property; to change that required Shoney's consent. Mac East states in its Response in Opposition as follows:

> Moreover, even if Shoney's had the sole discretion to withhold consent of City Café for any reason, the undisputed facts show that Shoney's did approve the subtenant in its sole discretion. The breach of contract occurred when Shoney's then conditioned its consent upon the payment of additional money.

*See* Doc. 27, p. 2-3. The consent that was required, and the only consent that mattered, was the consent to the subleasing. It is clear even from Mac East's allegations that Shoney's did not consent to Mac East's proposed sublease to City Café Diners. Mac East's strained attempt to bifurcate the approval of the subtenant versus the consent to the sublease is misplaced; if such consent was so conditioned, as alleged by Mac East, then clearly the consent to the sublease was not given.

One of the elements of a breach of contract claim is "the defendant's nonperformance." *State Farm Fire and Casualty Co. v. Williams*, 2005 WL 1995352 (Ala. 2005). Mac East simply has failed to show what obligation Shoney's failed to perform. Shoney's was not obligated to

5

consent to a sublease, as dictated by the very language in the Assignment between Shoney's and Mac East, which required Shoney's consent, "which Assignor [Shoney's] may withhold in its sole discretion." *See* Assignment, Section 19. It is untenable that a party should be held liable for breach of contract where there is no obligation articulated in the contract that such party failed to perform.

Mac East cites the California case of *Schweiso v. Williams*, 150 Cal. App.3d 883 (1984), for the proposition that a demand for a payment as a condition to consent "is a violation of fundamental principles of contract and constitutional law." *See* Doc. 27, page 3. First, the applicable clause in *Schweiso* was a "silent consent" clause, just as in *Homa-Goff*. The lease language in *Schweiso* stated that "the lessee was precluded from assigning the premises without the written consent of the lessor." *Id*. at 885. In the absence of the parties' having provided any standard by which such consent should be granted or withheld, the court found that there was an implied obligation of reasonableness, and that there was "a triable issue of fact as to whether respondents unreasonably withheld their consent to the assignments." *Id*. at 887.

Shoney's acknowledges that if this Court were to infuse an obligation of reasonableness with respect to a refusal to consent to a sublease, despite Shoney's strenuous contentions to the contrary, there would exist a triable issue of material fact over whether Shoney's alleged demand for payment as a condition to consent was reasonable to compensate it for the additional risks that it would bear by having a questionable tenant operating on the premises, and for whose actions Shoney's could bear liability to the ground lessor.

However, cases such as *Schweiso* do not address the issue in this case because in *Schweiso* there was only a "silent consent" clause; the parties did not express a standard. In the

6

case here, the parties expressly provided their standard by which a refusal to consent to a sublease could be withheld.

Mac East cites *Chrysler Capital Corp. v. Lavender*, 934 F.2d 290 (11th Cir. 1991) for the proposition that a landlord that conditions its consent upon a new agreement changing the terms of the lease may be considered unreasonable. However, that was another case involving a "silent consent" clause, whereby the lease in question provided that the lessee "agreed not to sublease the Press or assign its rights under the lease without the prior approval from Chrysler." *Id*. at 292. Again, Mac East has cited a case whereby the parties to a lease did not agree to a standard by which consent could be withheld or denied, and in the absence of such a designation, the Court implied a standard of reasonableness. *Id*. at 293. The Court stated that "the issue of commercial reasonableness is a jury question." *Id*. Thus, the issue was sent to the jury to determine if Chrysler's imposing an additional condition that was not in the original agreement to its granting consent to a sublease was reasonable or not. *Id*. In that case, the Court noted that under those particular facts, that Chrysler's arguments with respect to reasonableness "are not implausible, but they are not strong enough to preclude reasonable jurors from reaching a contrary conclusion." *Id*. at 294. That case is entirely consistent with Shoney's position. That is, Shoney's contends that if the Assignment between it and Mac East had been silent with respect to the standard by which consent to a sublease could be withheld, then there would be a reasonableness requirement implied, and it would be a factual question as to whether Shoney's conduct was reasonable under the circumstances. However, in this case, as repeatedly stressed by Shoney's, the parties not only expressly agreed that there could be no subleasing of the property in question without Shoney's consent, but the parties expressly provided that such consent could be withheld in Shoney's sole discretion.

Mac East argues, in various ways, in its Response in Opposition that because the language of the Assignment did not provide for the payment of a cash sum as a condition to granting consent to a sublease, that Shoney's had no contractual right to demand payment in exchange for granting such consent. The flaw in Mac East's argument is that Mac East is the party that was seeking a modification to the Assignment. As set forth above, the Assignment, as negotiated, has a prohibition on subleasing, absent Shoney's consent. It was Mac East that requested that Shoney's do something that Shoney's was not contractually required to do. Shoney's had every right to negotiate the terms under which it would do something that it was not contractually obligated to do.

## II.    REPLY TO MAC EAST'S TORTIOUS INTERFERENCE ARGUMENT

Mac East labels Shoney's actions as "extortion" and an act of "force and coercion." *See* Doc. 27, p. 6. However, all that Mac East alleges in support of these claims of force, coercion and extortion is that Shoney's refused to consent to a sublease. None of the pleadings, and no other evidence has been put forth by Mac East to suggest that Shoney's did anything to communicate with or make any contact with City Café Diners. *See* pleadings and Doc. 27. The whole basis of Mac East's claim of tortious interference is that Shoney's refused to consent to a sublease unless Mac East paid an additional sum of money. *See* Doc. 17, p.13-14. That is simply insufficient to constitute the level of force and coercion necessary to support a tortious interference claim.

In the case of *Barber v. Business Products Center, Inc.*, 677 So. 2d 223 (Ala. 1996), a typewriter repair company named QOE procured a U.S. governmental contract with the General Services Administration ("GSA"), providing that QOE would have the right to repair the government's typewriters in Jefferson County. *Id*. at 226. Around that same time, GSA entered

into contracts with Panasonic and Canon providing the terms and conditions under which Panasonic and Canon would sell typewriters to the GSA. *Id*. Those contracts expressly provided that Panasonic and Canon were required to make their parts and service manuals available to local repair companies at reasonable prices. *Id*. Despite that provision in the contracts, each of Panasonic and Canon, as well as their respective dealers, refused to make any parts available to QOE, thus making it nearly impossible for QOE to perform maintenance and repair on the GSA's Panasonic and Canon typewriters located in Jefferson County. *Id*.

QOE sued Panasonic and Canon for tortious interference with business or contractual relations for their failure to make parts available to it. *Id*. at 227. In addition to the four primary elements of such a claim,[1] the Court stated that "[a]dditionally, plaintiffs must produce substantial evidence of fraud, force, or coercion on the defendant's part." *Id*. The Court found that Panasonic's and Canon's refusal to deal with QOE did not constitute an intentional interference claim, stating that "[t]his Court has consistently held that a mere refusal to deal is not an intentional interference with contractual relations." *Id*. at 228. The Court went on to state:

> The defendants have the right to do business with whomever they choose and, although their refusal to deal may be actionable as a breach of contract, it is not actionable in tort.

*Id*. In that case, the contract to which Panasonic and Canon had entered with GSA expressly obligated them to deal with and sell parts to QOE. They each clearly ignored their contractual obligations and refused to sell parts to QOE in derogation of their express contractual obligations. Nonetheless, the Court still found that this refusal to deal was not actionable in tort. *Id*.

---

[1] The elements of tortious interference with business relations and applicability to the facts of this case are fully briefed in Shoney's Brief in Support of Motion for Summary Judgment filed in this case. *See* Doc. 26, p. 13.

Mac East cites the case of *Peacock v. Merrill*, 2005 WL 2739138 (S.D. Ala.) in support of its outrageous claim that Shoney's actions constitute "civil extortion." *See* Doc. 27, p.5, fn1. First of all, that case does not mention or discuss "extort" or "extortion", and thus that case provides no support for Mac East. Second, that recent case makes abundantly clear that beyond the five elements of a claim of tortious interference, "plaintiffs must also establish that defendants are third parties or 'strangers' to the relationship." *Id*. at 1. Thus, the burden is on Mac East to establish that Shoney's is a stranger to the proposed relationship between Mac East and City Café Diners. The Court set forth the general rule as follows:

> A third-party may be a party in interest to the relationship 'if the defendant has any beneficial or economic interest in, or control over, that relationship.' *Waddell & Reed*, 875 So.2d at 1154. It is the burden of the Plaintiff to prove that defendants are, in fact, strangers to the relationship. *Id*.

*Peacock* at 1 (quoting in part *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143 (Ala. 2003). The Court then went on to list the four factors that the Alabama Supreme Court applies to determine if a defendant is a stranger to the relationship or not, those being as follows:

1) the defendant is an essential entity to the purported injured relations;

2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations;

3) the defendant would benefit economically from the alleged injured relations; and

4) both the defendant and the plaintiff are parties to the comprehensive interwoven set of contracts or relations.

*Id*. at 2.

In the Assignment, Shoney's reserved a number of continuing rights with respect to its interest in the subject property, such as the right to approve changes to the property; even more

importantly, the Assignment provided that, except with limited exception, "all changes, remodelings, refurbishings, additions or alterations to the Property shall immediately become the property of Assignor [Shoney's] and shall remain upon and be surrendered with the Property as a part thereof at the expiration or earlier termination of the Lease." *See* Assignment, page 3, Section 4.  Thus, any improvements made to the subject property by Mac East, or in the case of a sublease to City Café Diners, would become the property of Shoney's.  Additionally, Shoney's is still obligated for the primary covenants on the Lease.  *See* Power Affidavit, page 1, ¶ 3, Exh. 3 to Doc. 16.  The effect of the proposed sublease with City Café Diners would have been to force Shoney's into an ongoing tripartite business relationship with City Café Diners.

With respect to the application of the four-factor test to the facts of this case, the sublease between Mac East and City Café could not even be consummated without Shoney's prior consent.  Thus, Shoney's is an essential entity to the purported injured relations.  Second, the allegedly injured relations are inextricably a part of and dependent upon Shoney's because it is through Shoney's master lease that any of the rights with respect to the proposed sublease would be derived.  Finally, both Shoney's and Mac East are parties to a comprehensive interwoven set of contracts or relations.  They are parties to the very contract of Assignment from which the rights thereunder were being requested to be subleased.

Mac East has claimed that it is a circular argument by Shoney's to say that Shoney's is not a stranger to the relationship between the parties, and then also claiming that Mac East did not have a contractual relationship with City Café Diners.  *See* Doc. 27, page 5.  However, the very fact that in order for Mac East to enter into a valid sublease with City Café Diners required Shoney's consent, clearly evidences that Shoney's was not a stranger to that proposed tripartite relationship between Mac East and City Café Diners.

### III.    CONCLUSION

For the reasons set forth above, Shoney's requests that the Court grant its Motion for Summary Judgment in its entirety and dismiss Mac East's claims with prejudice.

        Respectfully submitted,

        s/ Paul O. Woodall, Jr.
        Paul O. Woodall, Jr.
        Middle District I.D. No. ASB-4297-O59P

        s/ James N. Nolan
        James N. Nolan
        Middle District I.D. No. ASB-6012-N61J

        Attorneys for Defendant, Shoney's, LLC

OF COUNSEL
WALSTON, WELLS & BIRCHALL, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone: (205) 244-5200
Telecopier: (205) 244-5400

## CERTIFICATE OF SERVICE

      I hereby certify that on July 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to the following:

Dennis R. Bailey, Esq.
Bethany L. Bolger, Esq.
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, Alabama   36101-0270


                                 _s/ Paul O. Woodall, Jr.
                                 OF COUNSEL