IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MAC EAST, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05-cv-1038-MEF |
| | ) | (WO) |
| SHONEY'S LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

In this case, MAC East, LLC ("Mac East"), an assignee of a commercial lease, brought suit against its assignor, Shoney's LLC ("Shoney's), for failing to approve a proposed sublease. Shoney's argues that the approval clause in the assignment with Mac East provided it with the sole right and discretion to withhold consent to any sublease of the subject property. Mac East asserts that Shoney's request for additional funds as a condition of approval of the sublease agreement constituted a breach of the contract between Mac East and Shoney's and also amounted to an intentional interference with the business relationship Mac East had with the proposed third-party subleasee, City Café Diners (City Café).[1] This cause

---

[1] In the third count of its Amended Complaint, Mac East seeks a declaratory judgment as to whether Shoney's has a right to require additional payments as a condition to granting an approval to sublease the subject property. By the admissions of both parties, this cause of action is now moot given that Shoney's has subsequently allowed another tenant, Sho-Rest, to sublease the subject property without requiring additional payment from Mac East.

is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. # 14) and Defendant's Motion for Summary Judgment (Doc. # 16). The Plaintiff's Motion for Partial Summary Judgment is due to be GRANTED. Consequently, the Defendant's Motion for Summary Judgment is due to be DENIED.

## II.  JURISDICTION

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## III.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV. FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted

in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

In April of 1979, Shoney's leased a parcel of property ("the Property") at 805 Eastern Bypass in Montgomery, Alabama. Soon thereafter, Shoney's constructed and operated a restaurant on the Property. The lease, which is still in effect, had a term of twenty years and contained options for Shoney's to renew its tenancy for an additional five year terms.

In February of 2002, Mac East entered into an assignment (the "Assignment") with Shoney's whereby Shoney's assigned its right, title and interest in the master lease to Mac East. The net consideration paid to Shoney's for the assignment as well as for the purchase of Shoney's leasehold improvements totaled $140,351.99. The Assignment contained a provision by which Mac East could assign or sublease the Property upon Shoney's approval. Paragraph 19 of the Mac East assignment stated:

> Assignee shall not enter into any assignment or sublease of any portion of the Property or the improvements thereon without the prior written consent of Assignor ..., which Assignor may withhold in its sole discretion.

On April 18, 2005, Mac East entered into an agreement with City Café, the ownership of which Mac East describes as "comprised of high-quality restaurant operators with an established track record." Amend. Compl. at ¶ 14. Encompassed in the Proposal to Sub-Lease (Doc. 14-7), City Café agreed to sublease the Property for the purpose of operating a restaurant and would, in turn, pay Mac East a guaranteed minimum rental price of $77,350 per year for the first five years of the sublease and $84,175 per year for the next three years

4

of the sublease.

Mac East requested from Shoney's what information it would need to evaluate City Café as a potential subtenant. On May 9, 2005, Mac East "sent to Shoney's a copy of the signed proposal as well as other relevant information regarding City Café, including copies of photographs of similar operations, financial statements, and income statements." Doc. 15 at 3. Shoney's disputes that the information submitted to it for approval was "regarding City Café" particularly given the fact that City Café was not a legal entity. Shoney's contends that what "Mac East purported to be of the proposed subtenant ... were [instead] of other entities and an individual, with no explanation of how they related to the proposed subtenant." Doc. 28-1 at 2.

Indeed, City Café was a collection of restaurants owned by Jimmy Tselios, who, according to the Proposal to Sublease, would personally guarantee the sublease for the first five years. In the package sent to Shoney's on May 9, 2005, Mac East submitted the following:

> 1. A Copy of the Guarantor's Statement of Assets, Liabilities, and Net Worth dated October 31, 2004
> 2. Income Statements dated October 2004 for two similar operations owned by the same partners.
> 3. Example of menu to be offered.
> 4. Copies of photographs for similar operations.
> 5. A Copy of the Assignment, including the Ground Lease as an exhibit.

Doc. 28-2 at 9. The Statement of Assets, Liabilities, and Net Worth indicated the

guarantor's net worth at $4,552,000.00. On the Statement of Assets, Liabilities, and Net Worth were listed four assets called "City Café," located in Alabama, Georgia, and New York. Although Mac East referred to its agreement with "City Café," at no time did Mac East indicate that City Café was a legal entity. Shoney's did not request any more documents or information.

On June 17, 2005, Mac East received a voicemail message from Donna Power, a Shoney's representative, that Shoney's would approve the sublease only under the condition that Mac East pay Shoney's an additional $70,000 if Shoney's was released from the master lease or $90,000 in the event Shoney's is not released from the master lease. Shoney's provided Mac East no basis for these figures and did not explain how Mac East could release them from the master lease signed in 1979.

On September 20, 2005, Mac East filed the instant action in the Circuit Court of Montgomery County, Alabama. Shoney's removed the case to this Court on October 28, 2005 pursuant to 28 U.S.C. § 1332 (diversity). Mac East did not oppose this removal. Mac East a filed its Motion for Partial Summary Judgment (Doc. # 14)[2] on April 18, 2006 and Shoney's countered with its Motion for Summary Judgment (Doc. # 16) that same day.

---

[2] Mac East's Motion for Partial Summary Judgment (Doc. # 14) is "partial" because it moves for judgment on the issue of liability, but not on damages.

## V. DISCUSSION

### A. Plaintiff's Claims for Breach of Contract

Mac East is entitled to summary judgment on its breach of contract claim because Shoney's breached the underlying agreement by conditioning its acceptance of the proposed sublease on the payment of additional sums.  Under Alabama law, the elements of a breach-of-contract claim are: (1) the existence of a valid contract binding upon the parties in the action, (2) the plaintiffs' own performance; (3) the defendant's nonperformance, or breach; and (4) damage.  *See, e.g., Teitel v. Wal-Mart Stores, Inc.*, 287 F. Supp. 2d 1268, 1285 (M.D. Ala. 2003) (Albritton, J.).  Both parties agree that the Assignment constitutes a valid contract.  Likewise, Mac East's own performance or damage are not in dispute, and the Court finds a sufficient evidentiary basis establishing them.[3]  The issue before the Court is whether Shoney's breached the contract by violating Paragraph 19 of the Assignment pertaining to assignments and subleases.  Shoney's claims that because the Assignment provides it with the "sole discretion" to consent to an assignment, Shoney's could condition any such consent and "such conduct is perfectly within the rights that Shoney's negotiated in its Assignment with Mac East."  Doc. 17 at 7.

Alabama law, which this Court must apply, is straightforward on this point.  As the Alabama Supreme Court held, "even where the lease provides an approval clause, a landlord

---

[3] Because only the fact of damage has been established but not the amount, a damages hearing will be set at a later date.

may not unreasonably and capriciously withhold his consent to a sublease agreement." *Homa-Goff Interiors, Inc. v. Cowden*, 350 So. 2d 1035, 1038 (Ala. 1977); *see Chrysler Capital Corp. v. Lavender*, 934 F.2d 290, 293 (11th Cir. 1991) "The landlord's rejection should be judged under a test applying a reasonable commercial standard." *Homa-Goff*, 350 So. 2d at 1038.

While Shoney's spends significant effort attempting to distinguish the instant approval clause with the approval clause discussed in *Homa-Goff*, the fact that the Assignment gives Shoney's "sole discretion" does not necessarily mean that this gives them the right to arbitrarily and capriciously reject a proposed sublease or add new conditions. Shoney's argues the following:

> *Homa-Goff* is inapposite to the case at bar. *Homa-Goff* contained what is commonly referred to as a "silent consent" clause; that is, a clause that required the prior consent of the landlord to sublease or assign the subject property, but no statement as to the standard under which that consent may be withheld. ...
>
> Thus, the distinction between the Homa-Goff case and the case here is that the parties here expressly gave Shoney's the sole discretion as to whether Mac East could sublet the property.

Doc. 17 at 8. Shoney's argument fails because "sole discretion" is not necessarily equivalent to a standard allowing it to arbitrarily and capriciously reject a proposed sublease. Further, and perhaps most telling, Shoney's cites *no* controlling case law to indicate otherwise.[4]

---

[4] Indeed, the Alabama Supreme Court held that, in the context of a contract reserving the right of a party to amend a restrictive covenant in its "sole discretion," that party maintained the right to amend so long as it was exercised in a "reasonable manner." *Wright v. Cypress Shores Dev. Co.*, 413 So. 2d 1115 (Ala. 1982). Other jurisdictions have interpreted "sole discretion" in the same manner. For example, in *Guntert v. City of*

8

Shoney's also tries employing a textualist approach to ciphering the meaning of "sole discretion."  In other places in the Assignment, where Shoney's consent is required, the Assignment provides that such consent would not be unreasonably withheld.[5]  Therefore, according to Shoney's, since there "was only one (1) use of the phrase 'sole discretion in Assignment ... [t]he parties clearly wished to distinguish the right of Mac East to sublease or assign the [Assignment] from other matters which required the consent of Shoney's."  Doc. 17 at 11-12.  There is some merit to this approach, but it is not convincing to this Court.  Given Shoney's insistence its briefs on  the freedom of contract, this Court concludes that if the parties truly intended "sole discretion" to mean what Shoney's claims it to mean – that Shoney's held the power to unreasonably or arbitrarily withhold its consent – the parties would have explicitly written  such a standard of discretion into the contract.

This Court will not speculate whether the public policy of Alabama would permit an

---

*Stockton*, 43 Cal. App. 3d 203 (1974), a California appeals court examined a termination clause in a lease that gave the lessor, the City of Stockton, the right to terminate the lease when the City received and agreed to accept a "bona fide offer or proposal to develop the demised premises."  The termination clause afforded the City Council the "sole discretion"of the "determination as to the validity of said offer or proposal and the economic feasibility and the ability to adequately finance said development."  *Id.* at 207 n.2 (quoting the lease).  The court there held that "the phrase 'sole discretion' does not necessarily imply arbitrary power, unfettered by the demand for reasonableness."  *Id.* at 213 (also noting that "the 'sole discretion' phrase [in the termination clause] was designed to *identify the city council as the decision maker*, not to arm it with arbitrary power") (emphasis added).

[5] *See* Doc. 14-2 at ¶¶ 4 (no alterations without consent of Assignor, "which Assignor shall not unreasonably withhold"), 15 (no amendments without prior written consent, "which consent shall not be unreasonably withheld"), 18 (no mortgages without consent, "which consent shall not be unreasonably withheld").

approval clause that gives the assignor the right to arbitrarily and capriciously refuse consent because Paragraph 19 of the Assignment does not explicitly express such a standard of discretion.   Shoney's should therefore held to a commercially reasonable standard.[6]

The undisputed evidence before this Court establishes as a matter of law that Shoney's demand for additional payment,  which was an additional term not included in Paragraph 19, was unreasonable and Mac East is therefore entitled to summary judgment on its breach of contract claim.  *See Chrysler Capital Corp.*, 934 F.2d at 294 (upholding a jury's finding that a refusal to sublease was unreasonable because "a refusal to consent may be considered arbitrary and unreasonable if the landlord conditions his consent upon approval of a new agreement that changes the terms of the original lease").  Therefore, Mac East's Motion for Partial Summary Judgment (Doc. # 14) on its claim of breach of contract is due to be GRANTED.  Moreover, in light of the absence of any genuine issue as to the material facts, and its finding regarding the applicable law, the Court also finds that Shoney's Motion for Summary Judgment (Doc. # 16) is due to be DENIED as to this claim.

**B.  Plaintiff's Claims for Intentional Interference with a Business Relationship**

Mac East is also entitled to summary judgment on its claims for intentional interference with a business relationship.   Under Alabama law, to establish the tort of intentional interference with contractual or business relations, a plaintiff must prove the following: (1)

---

[6] In this regard, it is important to note that *Homa-Goff* does not imply that its holding – that even where a lease provides an approval clause for sublease agreements, a landlord may not unreasonably and capriciously withhold its consent – is limited to any specific set of circumstances.  *See generally* 350 So. 2d 1035.

the existence of a contract or business relation; (2) the defendant's knowledge of the contract

or business relation[7]; (3) intentional interference with the contract or business relation; and

(4) damage to the plaintiff as a result of the interference.[8]  *Century 21 Acad. Realty, Inc. v.*

*Breland*, 571 So. 2d 296, 297 (Ala. 1990).[9]  In addition, to demonstrate that the interference

was "intentional," a plaintiff "must [also] produce substantial evidence of fraud, force, or

coercion, on the defendant's part."  *Teitel v. Wal-Mart Stores, Inc.*, 287 F. Supp. 2d 1268,

1282 (M.D. Ala. 2003) (Albritton, J.) (quoting *Barber v. Bus. Prods. Ctr.*, 677 So. 2d 223,

227 (Ala. 1996)); *see also Joe Cooper & Assocs., Inc. v. Cent. Life Assur. Co.*, 614 So. 2d

---

[7] Although Shoney's disputes whether a contract existed between Mac East and City Café, there is no dispute as to Shoney's knowledge of such a business relation and the Court finds a sufficient evidentiary basis establishing this element.

[8] This element is not disputed by the parties and the Court finds a sufficient evidentiary basis establishing damage to Mac East as a result of the interference.  Because only the fact of damage has been established but not the amount, a damages hearing will be set at a later date.

[9] There is some confusion in recent federal court decisions applying Alabama law over whether "absence of justification" is an element of the tort itself or whether "justification" is simply an affirmative defense to be raised by the defendant.  *See, e.g.*, *Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC*, 307 F. Supp. 2d 1249, 1268 (M.D. Ala. 2004) (Albritton, J.) (listing "absence of justification" as an element to be proved by the plaintiff); *Teitel v. Wal-Mart Stores, Inc.*, 287 F. Supp. 2d 1268, 1279 (M.D. Ala. 2003) (Albritton, J.) (same).  The Alabama Supreme Court in *Century 21 Academy Realty, Inc.* recognized "that it is illogical to continue to list an absence of justification as one of the elements of the plaintiff's cause of action and then to place the burden on the defendant to disprove it."  571 So. 2d at 298.  More recently, in *Parsons v Aaron*, the Alabama Court "reiterate[d] that justification for interference with contractual or business relations is an affirmative defense to be pleaded and proved by the defendant."  849 So. 2d 932, 946 (Ala. 2002).  For this Court's purposes, it will leave justification as an affirmative defense to be pled and proved by the defendant.

982, 986 (Ala. 1992)). Further, "[a]fter proving the existence of a contract, it is essential to

a claim of tortious interference with contractual relations that the plaintiff establish that the

defendant is a 'third party,' i.e., a 'stranger' to the contract with which the defendant allegedly

interfered." *Parsons v. Aaron*, 849 So. 2d 932, 946 (Ala. 2002) (quotations and citations

omitted).

Shoney's disputes whether Mac East can prove a contractual relationship at all with

City Café, because the closest thing Mac East had to a contract--the Proposal to

SubLease–was not a contract. *See* Doc 14-7 ("This proposal is not intended to create any

legal rights or obligations."). This argument is specious because it ignores the fact that an

existence of a "business relation" would suffice. As the Alabama Supreme Court noted

recently in *Ex Parte Alabama Department of Transportation*, "[d]efining this cause of action

to apply to a 'business relation' as well as a 'contractual relation' allows a plaintiff a remedy

in the situation where a defendant has intentionally interfered with a *prospective contract* as

well as when he has interfered with an existing contract." 764 So. 2d 1263, 1270 (Ala. 2000)

(emphasis added).[10]   Mac East had a prospective contract with City Café (or an entity to be

named at a later date), for which Jimmy Tselios was the guarantor. Whether or not the

Proposal to Sub-lease was legally binding and regardless of whether City Café was a legal

---

[10] "The historical development and rationale of this tort ... points towards a broad
understanding of what constitutes a business relation." *Teitel*, 287 F. Supp. 2d at 1280. In
*Teitel*, the court was "unprepared to find as a matter of law that the relationship between the
Plaintiffs and [the third-party] did not constitute a business relationship." *Id.* at 1281. The
business relation between Mac East and City Café was even more concrete than the
relationship in *Teitel*. *Teitel* involved only a potential bidder on a parcel of property.

entity unto itself, there was a reasonable expectancy that a contract would develop from their proposal.

Shoney's also contends that its failure to grant consent is not an intentional interference because Mac East must show fraud, force, or coercion on Shoney's part. Shoney's claims that it "has merely refrained from taking an action under a contract, which Shoney's had the express and unilateral right to refrain from taking." Doc. 17 at 18-19. Perhaps Shoney's could make this argument if it had not actually demanded additional sums for "refraining" to approve the sublease. This Court finds that evidence that Shoney's demanded further payments in exchange for its consent constitutes, at the very least, coercion. Mac East has satisfied this Court that Shoney's interference with its business relation was intentional.

The question also arises whether Shoney's is a third-party or stranger to the relationship between Mac East and City Café. The reason for this requirement is that a "party to a contract cannot, as a matter of law, be liable for tortious interference with the contract." *Bama Budweiser v. Anheuser-Busch*, 611 So. 2d 238, 247 (Ala. 1992).

Shoney's analogizes several cases here to show that it could not be a stranger to the relationship between Mac East and City Café. In *Bama Budweiser*, the Alabama Supreme Court held that the defendant was not a stranger to a contract because the contract the plaintiff had with a third party was not possible without the defendant's approval. In *BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814 So. 2d 203 (Ala. 2001), the Alabama Court held BellSouth not liable for intentional interference when, absent its "affiliation and approval, the

plaintiff and the third-party could not have consummated the [contract]." *Id*. at 214. Also supporting the conclusion that BellSouth was not a stranger to the contract, the contract between the plaintiff and the third-party "expressly defined certain rights and obligations of BellSouth vis-a-vis [the third party]." *Id.* (particularly, that Bell-South would have to pay the third-party $1,000.00 per month for the use of floor space). Additionally, in *Colonial Bank v. Patterson*, 788 So.2d 134 (Ala. 2000), the Alabama court held "when tripartite relationships exist and disputes arise between two of the three parties, then a claim alleging interference by the third party that arises from conduct by the third party *that is appropriate under its contract* with the other two parties is not recognized. *Id.* at 138 (emphasis added).

The cases cited by Shoney's for the proposition that it was not a stranger to the business relations between Mac East and City Café are all distinguishable on the fact that Shoney's request for additional sums was not authorized by the Assignment. Therefore, by requiring additional sums of money, an action not authorized by the contract, Shoney's effectively became a non-party or stranger to the business relation between Mac East and City Café. Additionally, the proposed sub-lease between Mac East and City Diners did not enumerate affirmative obligations that Shoney's would owe to City Diners. Instead, the proposed sublease only enumerated affirmative obligations City Café would owe to the Shoney's through the master lease and the Assignment between Mac East and Shoney's. Given these distinctions, it is reasonable to conclude that Shoney's acted as a stranger to the business relationship between Mac East and City Café. Based on the foregoing, the Court is

14

satisfied that no genuine issues exist as to any fact material to Mac East's claim of intentional interference with a business relation. The Court finds that Mac East, rather than Shoney's, is entitled to judgment as a matter of law. Accordingly, Mac East's Motion for Partial Summary Judgment (Doc. # 14) is due to be GRANTED as to this claim. Additionally, Shoney's Motion for Summary Judgment (Doc. # 16) is due to be DENIED as to this claim.

## VI.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

(1) Plaintiff Mac East, LLC's Motion for Partial Summary Judgment (Doc # 14) is GRANTED.

(2) Defendant Shoney's LLC's Motion for Summary Judgment (Doc. # 16) is DENIED.

(3) As to counts one and two of the Amended Complaint, a damages hearing will be set by order of this Court at a later date.

(4) Count three of the Amended Complaint is DISMISSED AS MOOT.

DONE this the 8th day of January, 2007.

_____
      /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE